UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 11-CV-755 |
| v. | Hon. Charles N. Clevert, Jr. |
| STIFEL, NICOLAUS & COMPANY, INCORPORATED and DAVID W. NOACK, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF STIFEL, NICOLAUS & COMPANY, INCORPORATED'S MOTION TO COMPEL PLAINTIFF TO IDENTIFY SPECIFIC BATES RANGES AND PRODUCE DOCUMENTS RESPONSIVE TO STIFEL'S FIRST REQUESTS FOR PRODUCTION**

Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") submits this Memorandum of Law in Support of its Motion to Compel Plaintiff to Identify Specific Bates Ranges and Produce Documents Responsive to Stifel's First Requests for Production. Despite diligent, good faith efforts, the United States Securities and Exchange Commission ("SEC") and Stifel were unable to resolve these matters.[1]

**BACKGROUND OF THE CASE**

The SEC initiated this case on August 10, 2011 on the heels of an investigation of RBC Capital Markets, LLC ("RBC") and Stifel. The SEC settled with RBC, resulting in

---

[1] In accordance with Civil L. R. 37 and Fed. R. Civ. P. 37(a)(1), the parties have made good faith efforts to confer and resolve the parties' differences without resorting to court intervention. *See* Richard H. Kuhlman Declaration in Support of Stifel, Nicolaus & Company, Incorporated's Motion to Compel Plaintiff to Identify Specific Bates Ranges and Produce Documents Responsive to Stifel's First Requests for Production at ¶¶ 7-11.

1

the issuance of a Cease-and-Desist Order and RBC's payment of fines and penalties in excess of $30,000,000. (*See* Cease-and-Desist Order, attached as Ex. A to Declaration of Richard H. Kuhlman). The SEC's claims against Stifel are before this Court for adjudication. The investigation and related litigation stem from the failure of $200 million in synthetic collateralized debt obligations ("CDOs") manufactured and sold by RBC (or a related entity) and purchased by trusts formed by five Wisconsin school districts. Stifel served as a Placement Agent for the debt issued by the trusts and as a broker for the CDOs. The CDOs all failed and are thus worthless.

The SEC commenced the investigation referenced above in mid-2008. Over the subsequent three years, the SEC gathered testimony, statements and sworn affidavits from over sixty individuals and entities and compiled over 2.5 million pages of documents (the "Investigative File").

In its amended complaint against Stifel, the SEC alleges violations of various provisions of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) *et seq.* and the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a). Stifel contends that it did not make any alleged misrepresentations or omissions regarding the investments, and that any representations or omissions it did make were true and/or were based on representations and omissions made by RBC and/or one of its affiliated entities (thus refuting allegations of scienter and materiality).

## **BASIS FOR THE INSTANT MOTION**

In responding to the majority of Stifel's Requests for Production (the "Requests"), the SEC simply referred Stifel to documents allegedly previously produced by the SEC. (*See, e.g.,* Responses 11-13 and 15-78 of the SEC's Response to Stifel's Requests for

2

Case 2:11-cv-00755-JPS   Filed 01/28/14   Page 2 of 10   Document 54

the issuance of a Cease-and-Desist Order and RBC's payment of fines and penalties in excess of $30,000,000. (*See* Cease-and-Desist Order, attached as Ex. A to Declaration of Richard H. Kuhlman). The SEC's claims against Stifel are before this Court for adjudication. The investigation and related litigation stem from the failure of $200 million in synthetic collateralized debt obligations ("CDOs") manufactured and sold by RBC (or a related entity) and purchased by trusts formed by five Wisconsin school districts. Stifel served as a Placement Agent for the debt issued by the trusts and as a broker for the CDOs. The CDOs all failed and are thus worthless.

The SEC commenced the investigation referenced above in mid-2008. Over the subsequent three years, the SEC gathered testimony, statements and sworn affidavits from over sixty individuals and entities and compiled over 2.5 million pages of documents (the "Investigative File").

In its amended complaint against Stifel, the SEC alleges violations of various provisions of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) *et seq.* and the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a). Stifel contends that it did not make any alleged misrepresentations or omissions regarding the investments, and that any representations or omissions it did make were true and/or were based on representations and omissions made by RBC and/or one of its affiliated entities (thus refuting allegations of scienter and materiality).

## **BASIS FOR THE INSTANT MOTION**

In responding to the majority of Stifel's Requests for Production (the "Requests"), the SEC simply referred Stifel to documents allegedly previously produced by the SEC. (*See, e.g.,* Responses 11-13 and 15-78 of the SEC's Response to Stifel's Requests for

Production, attached as Ex. B to Declaration of Richard H. Kuhlman). Stifel understands this generic reference to previously produced documents to refer to the SEC's entire Investigative File. The SEC's responses compel Stifel to sift through this voluminous material to identify those documents from the SEC's Investigative File that are responsive to Stifel's specific Requests. In the face of this task, Stifel requested that the SEC specifically identify by Bates ranges documents responsive to particular Requests, in accordance with what Stifel contends the rules and applicable precedent require. The SEC declined.

In addition, the SEC is withholding 137 pages of documents (Bates numbered RBC-SEC 02192427-564) that were voluntarily provided to the SEC by RBC. In this regard, the SEC notes that "[i]n addition to the documents previously produced by the SEC, RBC also provided copies of certain privileged documents under a confidentiality agreement dated May 12, 2011." (*See* Response 3 of the SEC's Response to Stifel's Requests for Production, attached as Ex. B to Declaration of Richard H. Kuhlman). To Stifel's knowledge, the SEC produced all other documents provided to the SEC by RBC, except for RBC's Wells materials.[2] The SEC is apparently withholding these 137 pages of documents based on the above-referenced confidentiality agreement. However, that agreement clearly provides for the production of these RBC documents as "required by law." (*See* May 12, 2011 Letter from RBC to the SEC, attached as Ex. C to Declaration of Richard H. Kuhlman). Stifel's request made pursuant to Federal Rule of Civil Procedure 34 satisfies this provision. Furthermore, to the extent that RBC refuses to permit production of the documents on the basis of privilege, it is not the SEC's privilege

---

[2] Stifel is not requesting that RBC's Wells materials be produced.

to assert – even assuming that RBC has not already waived the privilege by producing the materials to the SEC.

## ARGUMENT

### I. The SEC's reference to its Investigative File does not satisfy Rule 34.

Rule 34 requires that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). The SEC's Investigative File does not constitute "documents kept in the usual course of business." Consequently, the SEC is obligated to "organize and label [its documents] to correspond to the categories in the request."

In *SEC v. Collins & Aikman Corp.,* the United States District Court for the Southern District of New York considered "how a government agency – acting in its investigative capacity – must respond to a request for the production of documents." 256 F.R.D. 403, 407 (S.D.N.Y. 2009). In *Collins & Aikman,* the SEC "dumped" 1.7 million potentially responsive documents on the defendant and suggested he was "capable of searching them to locate those that are relevant." *Id.* The SEC contended that it had "the option of producing the complete, unfiltered, and unorganized investigatory file, as this is how the documents are maintained in the usual course of its business." *Id.* at 411.

The court held that "conducting an investigation – which is by its very nature not routine or repetitive – cannot fall within the scope of the 'usual course of business.'" *Id.* at 413. The agency's general reference to a large number of documents compiled in the course of an investigation did not satisfy Rule 34. *Id.* Instead, the court compelled

the agency to provide documents "in a useful manner" which required "the agency [to] organize[] or label[] them to correspond to each demand," thereby providing the defendant "with the documents that respond to [his] requests." *Id.*

Here, the SEC merely "dumped" its entire Investigative File on Stifel, just as it did on the defendant in *Collins & Aikman*. The SEC's Investigative File is not a file maintained in the "usual course of business." As *Collins & Aikman* makes clear, the SEC must provide defendants with documents "in a useful manner" – even if that requires "the agency [to] organize[] or label[] them to correspond to each demand." *Id.*

### A. Even if the SEC's Investigative File was maintained in the "the usual course of business," the SEC's responses still do not satisfy Rule 34.

Regardless of whether the SEC's Investigative File qualifies as documents produced in the usual course of business, the SEC's generic reference to previously produced documents is contrary to the basic purpose behind Federal Rule of Civil Procedure 34(b)(2)(E)(i). In *S.E.C. v. Kovzan*, the United States District Court for the District of Kansas found that "[t]he option to produce documents as they are kept in the usual course of business was added to Rule 34(b) to prevent the evasive discovery practice of mixing critical documents with other documents in an effort to obscure their significance." *See* 2012 WL 3111729, at *9 (D. Kan. July 31, 2012) (*rev'd in part on other grounds by* 2012 WL 4819011 (D. Kan. Oct. 10, 2012)). The SEC's production of its entire Investigative File without specific citation violates this underlying principle.

In *Kovzan*, the defendant sought an order compelling the SEC to "identify specific documents in its production that [were] responsive to each request." *Id.* at *7. The SEC refused, believing "that production of its entire investigative file should be sufficient." *Id.*

5

The court held that "[i]n terms of production of an entire SEC investigative file, the discovering party is not in a position to determine what documents support the allegations appearing in the SEC's own pleadings." *Id.* at *8. Although defendant Kovzan advanced the argument that the SEC's investigative file did not qualify as documents produced in the usual course of business, the court found that determination of that question was unnecessary, as "even if the SEC's investigative file qualifies as documents produced in the usual course of business, the court finds good reason to order the SEC to identify the responsive documents." *Id.* at *9.

The *Kovzan* court further found that allowing the SEC to merely produce its entire investigative file would have the opposite effect of what is intended by Rule 34(b), since "simply allowing the SEC to produce its entire investigative file in a collective response to the requests would actually **obscure relevant information**." *Id.* (emphasis added). *See also In re Sulfuric Acid Antitrust Litig.,* 231 F.R.D. 351, 362-64 (N.D. Ill. 2005) (finding that the unorganized production of documents kept in storage could not satisfy the "usual course of business" provision of Rule 34(b) and noting that producing parties "are not at liberty under federal discovery rules to dump massive amounts of documents…on their adversaries and demand that they try to find what they are looking for"). Thus, the *Kovzan* court ordered the SEC to do exactly what Stifel is requesting here: "supplement its responses by providing separately the Bates numbers of the documents responsive to each of these requests." *Kovzan*, 2012 WL 3111729 at *9.

Moreover, Stifel already endeavored to provide the SEC with the same level of detail in responding to document requests as Stifel is requesting of the SEC. To clarify, Stifel is not requesting that the SEC re-organize its production and label its documents
6

in response to individual Requests. Rather, Stifel is requesting that the SEC list Bates ranges of documents that are responsive to each Request. When the SEC created its Complaint against Stifel, the SEC was required to "have evidentiary support" for its factual contentions. Fed. R. Civ. P. 11(b)(3). Stifel's discovery is directed at discovering the specific factual basis for each of the SEC's allegations (and in particular, the alleged misrepresentations and omissions). Presumably, the SEC had this information when it prepared its Complaint.

For the reasons outlined above, Stifel respectfully requests that this Court compel the SEC to identify Bates ranges of documents responsive to the specific Requests previously mentioned.

## II. The SEC lacks any legitimate basis for withholding the RBC documents.

In response to Stifel's Requests for Production, the SEC declined to produce certain documents received from RBC on the basis that those documents are subject to a confidentiality agreement and because RBC opposes production based on an alleged privilege. Neither argument justifies withholding these documents.

### A. The "confidentiality agreement" relied upon by the SEC contemplates production of the requested documents.

The confidentiality agreement between the SEC and RBC allows the SEC to disclose RBC documents "to the extent the Staff determines that disclosure is otherwise required by law." (*See* May 12, 2011 Letter from RBC to the SEC, attached as Ex. C to Declaration of Richard H. Kuhlman). Stifel's Request for these RBC documents pursuant to Federal Rule of Civil Procedure 34 satisfies the "required by law" condition. *See Chaplaincy of Full Gospel Churches v. England,* 234 F.R.D. 7, 12 (D.D.C. 2006) (finding that discovery pursuant to the Federal Rules fell within the "'required by law'

7

exception to non-disclosure" in a statute); *ICG Commc'ns, Inc. v. Allegiance Telecom*, 211 F.R.D. 610, 612 (N.D. Cal. 2002) (same). Therefore, Stifel's Request made pursuant to the Federal Rules is sufficient to mandate production of the requested documents.

### B. RBC waived any privilege it may have had.

The SEC has no privilege applicable to these documents – nor does it even attempt to assert one. Rather, the "confidentiality agreement" reflects **RBC's** contention that the documents are "protected by, at a minimum, the attorney work product doctrine and the attorney-client privilege." (*See* May 12, 2011 Letter from RBC to the SEC, attached as Ex. C to Declaration of Richard H. Kuhlman). While RBC may refuse to permit production of these documents based on alleged privilege, it is not the SEC's privilege to assert – any privilege that may have existed over the documents belonged to RBC alone.

Moreover, RBC waived any privilege by producing the documents to the SEC. As the Seventh Circuit has made clear, a "[k]nowing disclosure to a third party almost invariably surrenders [a] privilege with respect to the world at large; selective disclosure is not an option." *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). *See also Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997) (noting that "the cases…generally reject a right of 'selective' waiver, where, having voluntarily disclosed privileged information to one person, the party who made the disclosure asserts the privilege against another person who wants the information."); *Rivera v. Allstate Ins. Co.,* 2013 U.S. Dist. LEXIS 83761, at *5, 7 (N.D. Ill. June 14, 2013) (noting that "the Seventh Circuit would likely adopt the majority view" of finding that disclosure to a

8

Case 2:11-cv-00755-JPS   Filed 01/28/14   Page 8 of 10   Document 54

regulatory body waives any privilege as to third parties). Therefore, any privilege RBC may have had was lost when RBC voluntarily produced the documents to the SEC.

In light of the foregoing, Stifel respectfully requests this Court enter an order compelling the SEC to produce the documents it received from RBC.

## CONCLUSION

In the words of the United States District Court for the Southern District of New York, "[l]ike any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *Collins & Aikman Corp.*, 256 F.R.D. at 414. Through this motion, Stifel is simply asking that the SEC comply with its obligations under the applicable Federal Rules of Civil Procedure.

Stifel respectfully requests that the Court enter an order compelling the SEC to 1) identify specific Bates ranges responsive to Stifel's Requests for Production and 2) produce the RBC documents withheld pursuant to an alleged confidentiality agreement.

Dated: January 28, 2014

By: s/ Richard H. Kuhlman
Jeffrey J. Kalinowski
Richard H. Kuhlman
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
jeff.kalinowski@bryancave.com
rick.kuhlman@bryancave.com

9

Brian G. Cahill
David J. Turek
GASS WEBER MULLINS LLC
309 N. Water Street, Suite 700
Milwaukee, Wisconsin 53202
Telephone: (414) 223-3300
Facsimile: (414) 224-6116
cahill@gasswebermullins.com
turek@gasswebermullins.com

*Counsel for Defendant Stifel, Nicolaus & Company, Incorporated*

### **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was filed using the Court's CM/ECF Filing System on all counsel of record.

    /s/ Richard H. Kuhlman
    Richard H. Kuhlman