UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

----------------------------------------------------------------

UNITED STATES SECURITIES AND          )
EXCHANGE COMMISSION,                   )
                                       )
                    Plaintiff,         )   Case No. CV 11-755
                                       )   Milwaukee, Wisconsin
        vs.                            )
                                       )   August 19, 2014
STIFEL, NICOLAUS & CO., INC. and       )   3:08 p.m.
DAVID W. NOACK,                        )
                                       )
                    Defendants.        )

----------------------------------------------------------------

**TRANSCRIPT OF MOTIONS HEARING**
BEFORE THE HONORABLE CHARLES N. CLEVERT, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          Steven C Seeger
                            United States Securities and
                            Exchange Commission
                            175 W Jackson Blvd - 9th Fl
                            Chicago, IL 60604
                            312-886-2247
                            Fax: 312-886-8514
                            Email: seegers@sec.gov

                            Robert MacDonald Moye
                            United States Securities and
                            Exchange Commission
                            175 W Jackson Blvd - 9th Fl
                            Chicago, IL 60604
                            312-353-1051
                            Fax: 312-353-7398
                            Email: moyer@sec.gov


U.S. Official Transcriber:   JOHN T. SCHINDHELM, RMR, CRR,
Transcript Orders:           WWW.JOHNSCHINDHELM.COM

Proceedings recorded by electronic recording,
transcript produced by computer aided transcription.

APPEARANCES CONT'D:

                              Susan M Knepel
                              United States Department of
                              Justice (ED-WI)
                              Office of the US Attorney
                              517 E Wisconsin Ave - Rm 530
                              Milwaukee, WI 53202
                              414-297-1723
                              Fax: 414-297-4394
                              Email: susan.knepel@usdoj.gov

For Defendant Stifel:         Richard H Kuhlman
                              Bryan Cave LLP
                              1 Metropolitan Sq
                              211 N Broadway - Ste 3600
                              St Louis, MO 63102-2750
                              314-259-2820
                              Fax: 314-552-8820
                              Email: rick.kuhlman@bryancave.com

                              David J Turek
                              Gass Weber Mullins LLC
                              309 N Water St - Ste 700
                              Milwaukee, WI 53202
                              414-224-3445
                              Fax: 414-224-3016
                              Email: turek@gasswebermullins.com

For Defendant Noack:          Ronald P Kane
                              Kane & Fischer Ltd
                              208 S LaSalle St - Ste 1800
                              Chicago, IL 60604
                              312-422-7200
                              Fax: 312-422-7217
                              Email: rkane@kfltd.com

For Intervenor Defendant
RBC Capital Markets LLC:      Jennifer L Conn
                              Gibson Dunn & Crutcher LLP
                              200 Park Ave
                              New York, NY 10166
                              212-351-4086
                              Fax: 212-351-5353
                              Email: JConn@gibsondunn.com

                              Michael J Wirth
                              Peterson Johnson & Murray SC
                              788 N Jefferson St - Ste 500
                              Milwaukee, WI 53202-4700
                              414-278-8800 Fax: 414-278-0920
                              Email: Mwirth@pjmlaw.com

2

1                   TRANSCRIPT OF PROCEEDINGS

2                 Transcribed From Audio Recording

3                         *     *     *

4          THE BAILIFF:  Be seated, come to order.

5          THE CLERK:  Case No. 2011-C-755, SEC vs. Stifel

6   Nicolaus & Company, et al.  This matter is before the Court for

7   a motions hearing.  May we have the appearances, please?

8          MR. SEEGER:  Good afternoon, Your Honor.  My name is

9   Steve Seeger, I'm an attorney for the SEC.

10         THE COURT:  Good afternoon.

11         MR. MOYE:  Robert Moye also on behalf of the SEC.

12         MS. KNEPEL:  Assistant United States Attorney Susan

13  Knepel appears on behalf of as local counsel for the SEC.

14         THE COURT:  Good afternoon to all of you.

15         MR. KUHLMAN:  Your Honor, Rick Kuhlman on behalf of

16  the Stifel defendants.

17         MR. TUREK:  David Turek, also for the Stifel

18  defendants.

19         MR. KANE:  Good afternoon, Your Honor.  Ronald Kane on

20  behalf of David Noack.

21         THE COURT:  Good afternoon to all of you.

22         MS. CONN:  Good afternoon, Your Honor.  Jennifer Conn

23  from Gibson Dunn & Crutcher on behalf of the intervenor here,

24  RBC Capital Markets, LLC.

25         THE COURT:  Good afternoon.

1          MS. CONN:  Good afternoon.

2          MR. WIRTH:  Good afternoon, Your Honor.  I'm Attorney

3     Michael Wirth with the local firm of Peterson Johnson & Murray,

4     here also on behalf of RBC.

5          THE COURT:  Greetings.  I'd like to begin by sharing a

6     couple of thoughts that may be helpful as we proceed.

7          Number 1, I appreciate candor.

8          Number 2, I appreciate directness.

9          And Number 3, it has been said that talk is cheap.

10    Sometimes a failure to talk can be very costly.

11         In light of the last remark the Court inquires whether

12    or not the parties are prepared to engage in further discussion

13    respecting the pending matters before going on the record with

14    regard to the two motions that appear to involve some, let's

15    call it, dynamic tension.

16         The Court will take up the last matter, that is the

17    matter of scheduling, after we have concluded any discussions

18    respecting the first two matters.

19         In referring to the first two matters I'm specifically

20    talking about the motion to compel plaintiff to identify

21    specific dates ranges and produce documents responsive to

22    Stifel's first request for production, as well as the motion to

23    compel the SEC to compel complete answers to interrogatories

24    concerning RBC.

25         Is there anyone who believes that further discussion

1  among the parties and without the involvement of the Court would

2  be futile?

3          MR. SEEGER:  Your Honor, it's Steve Seeger for the

4  SEC, if I may.  The parties have had a number of discussions

5  about the pending motions.  I would say candidly in the last few

6  days we have not, but we have had back-and-forth over them.  If

7  the Court would like to stand in recess we can certainly see --

8  I'm always happy to talk if the Court thinks it would be helpful

9  to talk it over.

10         To put it in perspective, Your Honor, I would say that

11 there have been a number of discovery disputes in this case, and

12 I think the good news is we've been able to resolve a lot of

13 them.  There are I think a couple of motions where we

14 unfortunately thought we needed to, you know, bring the matter

15 before the Court, but, you know, I'm certainly happy to talk one

16 last time if parties would think it would be effective.

17         THE COURT:  Is there anyone who believes that it would

18 not be worthwhile to have further discussions before we go on

19 the record?

20         (No response.)

21         THE COURT:  All right.  It appears to be unanimous.

22 In order to encourage your discussions I will make the jury room

23 available to you.  And if you need to meet separately the

24 attorney conference room is available outside of the door to the

25 rear.  Please notify the clerk when you're ready to proceed.

1          THE BAILIFF:  All rise.

2          (Proceedings recessed at 3:13:51 p.m., until 4:31:35

3    p.m.)

4          THE BAILIFF:  Please be seated.

5          THE COURT:  Do the parties have anything to report at

6    this time?

7          MR. SEEGER:  Yes, Your Honor.  This is Steve Seeger

8    for the SEC.  I'm pleased to report that after having further

9    dialog between the parties, I believe that we have amicably

10   resolved two out of the three remaining issues.  We were joking

11   a moment ago that two out of three is a pretty good baseball

12   average, so we're pretty pleased with the progress that we made.

13         What I thought we would do, Your Honor, for the three

14   issues, is briefly just -- and I don't want to belabor the

15   point, Your Honor, but we think it's in everyone's interest just

16   to put on the record what I think we've agreed to.  So I'll

17   endeavor to do that.  If I get anything wrong I'm sure the

18   defendants will correct me.  But I do --

19         The other thing I want to say, Your Honor, I don't

20   want the Court to have the misimpression that we didn't talk

21   ahead of time.  We actually had quite a bit of cooperative

22   discussion beforehand.

23         THE COURT:  I assumed from the filings that there had

24   been discussion.

25         MR. SEEGER:  Yeah, there had, Your Honor.  It's --

6

1    I -- it's always a good thing when people work things out.

2         So the two issues, Your Honor, I think we've resolved

3    are: the SEC's motion on the interrogatories.  I'll address that

4    first.

5         The second issue that we've resolved amicably,

6    Your Honor, is the Stifel motion with respect to the SEC

7    identifying documents in response to document requests.

8         The third issue that I do believe is still a live

9    issue, Your Honor, is the motion to compel with respect to the

10   privileged documents for RBC.  I think that's really the only

11   live issue today that will require the Court's decision.

12        So with that overview, Your Honor, I think I'll start

13   with the SEC motion to compel.  Again, Your Honor, this was a

14   motion asking the defendants to supplement their

15   interrogatories.  I think we've agreed to the following:

16        The defendants will supplement their interrogatory

17   responses.

18        They will state under oath that they do not recall any

19   other statements that Noack made to the school districts.

20        Their supplement obviously will be subject to their

21   right to supplement their responses down the road -- their

22   right, and their duty I should say, if they do have another

23   supplement -- if they do have information down the road they

24   will supplement so it's -- it's not at all prejudicial to that,

25   they'll retain the right to supplement.

7

1          And in their supplement if there are additional

2    documents or additional statements that they know about that

3    they would like to disclose at this time, they'll supplement.

4          THE COURT:  Does this require supplementation at the

5    earliest possible time prior to any proceedings such as trial

6    and/or summary judgment motions?

7          MR. SEEGER:  I think from where I sit, Your Honor, I

8    sure would like to see a supplement before summary judgment to

9    the extent possible.  I think nobody likes to be surprised,

10   certainly.  Certainly well before trial I think there ought to

11   be a supplement.  But typically I would like to see a supplement

12   during fact discovery if at all possible, subject to the

13   possibility that there may be something new learned down the

14   road.

15         And I don't want to speak for the parties, but I think

16   the spirit of the parties is if they learn information they'll

17   disclose it.

18         MR. KUHLMAN:  Your Honor, Rick Kuhlman for at least

19   the Stifel defendant.  I think we're in agreement with what

20   Mr. Seeger has said.

21         With respect to supplementation, we did specifically

22   talk about the summary judgment stage and agreed that we will do

23   it as timely as possible, but neither one of us wanted to be

24   precluded from supplementing at summary judgment should

25   something come to light for the very first time.  I don't think

8

1   anyone anticipates that happening, but we did cover that

2   eventuality.  We certainly don't anticipate a supplementation on

3   the eve of trial.

4           THE COURT:  All right.

5           MR. KANE:  Your Honor, Ronald Kane on behalf of David

6   Noack.  We concur in the statements Mr. Seeger made.

7           THE COURT:  All right.

8           MR. SEEGER:  So I believe that's progress, Your Honor.

9   Unless the Court would like to hear anything else on Number 1,

10  we'll go to the second motion?

11          THE COURT:  Let's move to Number 2.

12          MR. SEEGER:  The second motion was the plaintiff's

13  motion to compel the SEC to identify with particularity

14  documents that were responsive to their 78 document requests.

15          We've agreed as follows:

16          For Document Requests 11 through 78 -- so again, the

17  subset of the 78 requests is 11 through 78 -- Stifel will select

18  20 of those 78 document requests.  For those 20 requests the SEC

19  will give its best effort and identify specifically documents

20  that it believes are responsive in its production to the

21  defendant's document requests.  It will be the same level of

22  particularity that Stifel provided in their responses.  They,

23  Your Honor, did a CEG cite, it was intended to be

24  illustrative -- not exhaustive but illustrative -- but the SEC

25  will give its good faith best shot at identifying documents that

9

1    it believes are responsive to those 20 requests.

2          We've also agreed, Your Honor, that the intent of this

3    agreement is not to set up some sort of preclusion motion down

4    the road.  And this cuts both ways.  Nobody's gonna say "gotcha"

5    at trial, you know, you didn't identify this document in

6    response to this document request therefore it's not in the

7    case.  That's not at all what this is intended to do.  It's not

8    intended to set up a motion in limine or motion to preclude down

9    the road, but rather it's intended to be some type of a guiding

10   light as the parties progress through discovery.

11         So I think we've agreed for those 20 -- 20 requests --

12   even though candidly, Your Honor, we don't think it's required

13   by the federal rules, but we're putting that issue aside in the

14   interest of just resolving a discovery dispute -- we'll go ahead

15   and do that.

16         THE COURT:  Does this stipulation address the

17   possibility of claiming surprise if there is any material that

18   was not produced during discovery but revealed at trial or

19   during the course of motions for summary judgment?

20         MR. SEEGER:  You know, we didn't really talk,

21   Your Honor, about what if there's something else that's not in

22   the universe.  In other words, we did a very large production at

23   the outset of the case, 2 1/2 million pages.  I will say in

24   general the point of discovery is not to have surprises.  So

25   it's better to disclose.

1      I don't know if that's responsive to the Court's

2  question, but --

3      THE COURT:  Well, it is responsive, but I asked the

4  question because I've had motions raised at trial by parties who

5  have claimed surprise.

6      MR. SEEGER:  Yeah.

7      THE COURT:  And in those instances where a document or

8  a set of materials have been revealed for the first time during

9  trial and there are motions to exclude I have, with regularity,

10 excluded such documents.  So I don't want anybody to be shocked

11 if that sort of thing were to occur here.

12     MR. SEEGER:  And that's certainly true, Your Honor.

13 I've filed those motions too, and a lot of times those motions

14 frankly are appropriate.  The point that we just wanted to make

15 here is: we're talking about a response to a document request.

16 And when we identify documents in response to a document request

17 that's not the purpose of this exercise.  Neither side is trying

18 to set up the other.  It's not going to give birth to a

19 preclusion motion down the road.  That's not the intent.  The

20 intent is to provide some guidance to the other side so that

21 they can consider the documents as the parties progress through

22 discovery.

23     THE COURT:  Is there any challenge to the

24 representations that were just made?

25     MR. KUHLMAN:  Your Honor, Rick Kuhlman on behalf of

1    Stifel Nicolaus.

2            Just to be clear, the parties have made best efforts

3    to identify by Bates number documents within the current

4    production.  There will be no argument to the Court that the

5    failure to identify a document within the existing production

6    would justify preclusion.  But certainly something that comes up

7    for the very first time outside of the production will raise

8    different issues that we did not talk about.

9            We also did agree that when the parties make their

10   representations, even though they are using the CEG designation,

11   they are not knowingly withholding anything from the other side.

12   I think we've both gotten along pretty well and have worked

13   through the issues and certainly don't intend to withhold

14   intentionally from each other.

15           MR. SEEGER:  And I agree with that, Your Honor, for

16   the SEC.  That's what we're trying to convey.

17           THE COURT:  Is there any further clarification

18   warranted?

19           MR. KUHLMAN:  Not on behalf of Stifel, Your Honor.

20           THE COURT:  All right.  It would appear that the

21   stipulation of the parties is -- I should say the stipulations

22   of the parties are fairly clear.

23           Is it your intention to have these reduced to writing

24   other than as set forth in a transcript that may be produced for

25   today's hearing?

1          MR. SEEGER:  Personally, Your Honor, I think the

2     transcript probably should suffice.  I don't know if the

3     defendants feel differently, but I think it's reasonably clear.

4          MR. KUHLMAN:  I agree, Your Honor.  I don't anticipate

5     that being a problem.

6          MR. KANE:  On behalf of Mr. Noack I also don't agree

7     -- it would be a problem, just the transcript.

8          THE COURT:  Excellent.  Well, we can therefore save a

9     few trees or at least a couple of leaves on trees.

10          Let's now talk about RBC.

11          MR. KUHLMAN:  Your Honor, Rick Kuhlman on behalf of

12     Stifel Nicolaus.  This issue I guess tangentially involves the

13     SEC.  At the end of the day, I don't really have anything more

14     to add than what is in our papers.  It's Stifel's position that

15     by producing the documents to the SEC and knowing that they, in

16     fact, were privileged documents when they did it, that the Royal

17     Bank of Canada has waived any privilege that would otherwise

18     attach.

19          They've argued that they should be entitled to a

20     limited waiver here and they will rely upon the existence of a

21     confidentiality agreement as evidence of their entitlement to a

22     limited waiver.  It's our position that the Seventh Circuit has

23     said point blank that's not an option in this circuit, and for

24     that reason we think they've waived the privilege and that the

25     document should be ordered produced.

13

1    And unless the Court has specific questions I don't

2 belabor the point.  It's in our papers.

3    THE COURT:  RBC has been given leave to intervene in

4 this matter and I'm not certain who wants to be on first.  This

5 is not an Abbott and Costello routine, but I will ask:  who is

6 on first?

7    MR. SEEGER:  Your Honor, Steve Seeger for the SEC.

8 Given that the privilege belongs to RBC, I think that RBC is

9 really the appropriate party to address it.  I may have a

10 comment or two at the end, but I do think it's appropriate for

11 RBC to carry the mantle.

12    THE COURT:  Who is going to speak on behalf of RBC?

13    MS. CONN:  I will, Your Honor.  And thank you for

14 allowing us to intervene on this motion.

15    I also think our arguments are set forth in our papers

16 and happy to answer any questions.

17    I do want to note, going back to your comment

18 earlier --

19    THE COURT:  I would therefore say you are fighting an

20 uphill battle here.  I am not -- I really find it difficult to

21 conclude that there is an ongoing privilege that you're entitled

22 to invoke given the disclosure that was made here.

23    MS. CONN:  Your Honor, I appreciate that.  I would say

24 that we do disagree with Stifel's analysis of the *Delwood Farms*

25 case.  We think that the *Delwood Farm* case in the Seventh

14

1  Circuit in that case actually allowed selective waiver for a law

2  enforcement privilege.  And actually Judge Posner stated that

3  the absence or existence of a confidentiality agreement is a

4  relevant factor.

5       A number of cases, both in circuits that have rejected

6  selective waiver and cases that Stifel has cited and cases

7  within the Eighth Circuit, the Northern District of Illinois,

8  have acknowledged that the *Delwood Farms* case actually left open

9  the door to selective waiver in circumstances where there is the

10  existence of a confidentiality agreement.

11       And there are a number of cases around the country,

12  including the Eighth Circuit and the Second Circuit, that have

13  found that the doctrine of selective waiver does exist.

14       In those cases that Stifel cited to Your Honor where

15  certain circuits have found that there is no selective waiver in

16  circumstances where there is a confidentiality agreement in

17  productions to regulators, those confidentiality agreements were

18  actually quite different than the confidentiality agreement that

19  exists here.

20       And I would just point Your Honor to the *Columbia*

21  *Healthcare* Sixth Circuit case where that confidentiality

22  agreement allowed the Department of Justice to transfer

23  documents to other agencies and congressional committees for

24  other purposes.

25       The *Quest* Tenth Circuit case.  That agreement allowed

1   the Department of Justice to share documents with other

2   agencies, and the *Quest* court called the restrictions on use to

3   be very loose.

4       In the *Westinghouse* case in the Third Circuit the

5   agreement with the Department of Justice only reserved the right

6   to invoke attorney/client privilege as to the Department of

7   Justice, and didn't preserve the privilege as to private

8   litigants.  And there was no express promise there from the SEC.

9       We submit that regardless frankly of the holdings in

10  even these circuits where we do think there are some

11  distinctions, we do think that the Seventh Circuit has left the

12  door open.

13      The *Awalt* case, the *Jaffe* case, both in this circuit,

14  in the Northern District of Illinois, found that *Delwood* left

15  the door open and found that privilege was not waived in similar

16  circumstances, particularly the *Jaffe* case where there was an

17  agreement with a regulator.

18      So we actually do think there is support for the fact

19  that the precautions that RBC took here, before producing its

20  documents to the SEC, were sufficient to justify maintaining the

21  privilege here.

22      This isn't a circumstance where RBC just voluntarily

23  produced the documents without objection.  At first we didn't

24  produce the documents at all.  And it was only through

25  negotiation and finally obtaining a confidentiality agreement

1    that we actually agreed to produce the documents.

2            The SEC has honored that agreement.  RBC hasn't

3    produced the documents to any other parties, and the SEC has not

4    produced those documents.  We don't intend to use the documents

5    in any manner.  SEC hasn't produced the documents and hasn't

6    evidenced any intent to use the documents in this case.  So we

7    actually think that there is a substantial reason to preserve

8    the privilege here.

9            I also just want to note that, as we noted in our

10   papers, I do think it's notable that this motion was made here

11   and not in the state court case where RBC is a party and where

12   Stifel is a party, and that prior to this motion our master for

13   discovery purposes, a retired judge, Neal Nettesheim, ruled on a

14   similar motion that production of several documents that were

15   privileged to the SEC did not cause a subject-matter waiver over

16   other of RBC's documents.  And the plaintiff in our state court

17   case indicated, after they got that adverse ruling from

18   Judge Nettesheim which was later confirmed by Judge Christiansen

19   back in March of this year, that they wanted to bypass

20   Judge Nettesheim, go directly to the state court judge before

21   the state court judge had actually confirmed that ruling,

22   because they knew that Judge Nettesheim was going to find

23   against them when they tried to get these very same documents.

24           So I think the procedural history here is actually

25   quite notable.  Instead of making a motion over in the state

17

1    court where RBC is a party, Stifel came to Your Honor, and we

2    think that's frankly forum shopping.  The parties didn't get

3    the ruling they wanted from Judge Nettesheim, and plaintiff

4    tried to bypass Judge Nettesheim, and instead of actually ever

5    making that motion months ago in the state court case Stifel

6    decided to make the motion here where RBC is not even a party,

7    in the hopes that there would be some other outcome.

8            I would also note, as the SEC noted in its papers and

9    as we have noted, it's frankly not clear how these documents are

10   even relevant here.  Our understanding is that the SEC is

11   claiming that Stifel made misrepresentations to these school

12   districts.  Certainly privileged communications between RBC and

13   its counsel that Stifel never knew about can't have been the

14   basis of Stifel's representations to the school districts.

15           And although Stifel had claimed in its papers that,

16   you know, who knows, you know, something could lead to the

17   discovery of admissible information or there might have been

18   some discussion, to the extent that there were representations

19   that RBC made to Stifel that were the basis of Stifel's

20   representations to the school districts, there must certainly be

21   other discovery available that would evidence that fact that are

22   not privileged communications between RBC and their counsel.

23           THE COURT:  So are you saying that at the very least

24   as a threshold matter Stifel needs to make some representations

25   concerning specific communications by RBC that perhaps would

18

1 have waived any privilege?

2     MS. CONN:  I'm not sure I understand Your Honor's

3 question.

4     THE COURT:  Well, what I'm getting at is, are you

5 suggesting that as a precursor to entitlement to this

6 information that RBC shared with the SEC, Stifel must first show

7 that there were certain specific representations made by RBC

8 that perhaps waived any privilege that Stifel may be able to

9 claim in this case, or that there were indeed certain

10 communications by RBC that it relied upon?

11     MS. CONN:  Well, I think what they do have to show for

12 purposes of this motion is that privileged communications

13 between RBC and its counsel that were never disclosed to Stifel

14 nor does Stifel allege that they were, are relevant to the

15 claims or defenses in this case.  And --

16     THE COURT:  How can that be done without, at the very

17 least, indicating that there were certain specific

18 communications made?

19     MS. CONN:  Well, as far as I know they're arguing

20 there are communications made, although I'm not aware that

21 they've done that with any level of specificity.

22     But my point is that communications that were never

23 conveyed to Stifel could not have been known to Stifel and,

24 therefore, cannot logically be the basis of communications

25 Stifel made to the school districts.  Because this is

1    information that was never disclosed to Stifel.  And so it's
2    difficult to see how these privileged communications never
3    disclosed to Stifel could have anything to do with Stifel's
4    representations to school districts.
5             THE COURT:  All right.  I'd like to hear a response to
6    that latter issue -- I should say that latter argument.
7             MR. KUHLMAN:  Your Honor, just so we're clear, I'm
8    prepared to address the issue of why it would be -- why we
9    believe Stifel is entitled to that information in the SEC case.
10   Are we on the same page?
11            THE COURT:  Well, no, I want to first address the --
12   what appears to be a subset of that, and that is whether the
13   information is relevant.  And it is at this point in time
14   suggested by RBC that because the information at issue has at
15   all time remained confidential except with regard to the SEC,
16   which received them pursuant to a confidentiality agreement,
17   this information is not relevant here and, therefore, should not
18   be disclosed by the SEC which obtained them under very limited
19   circumstances.
20            MR. KUHLMAN:  Your Honor, as a starting point I feel
21   like I'm at a bit of a disadvantage because I have never seen
22   the documents.
23            What I can tell you, the facts that we know, are that
24   the SEC was in the mode of preparing to charge individuals and
25   entities in the course of their investigation, at which point

1    RBC made a decision, knowing the risks presumably, to produce

2    privileged materials to the SEC.

3              THE COURT:  Well, I can't help but note the issues

4    that were teed up for today's proceeding and the arguments that

5    were brought in conjunction with the two motions that have now

6    been taken off the table.

7              The Court notes among the arguments the assertion that

8    Noack and Stifel relied upon certain representations by RBC.  Is

9    that, in fact, an ongoing claim of Stifel and Noack?

10             MR. KUHLMAN:  Your Honor, with respect to Stifel it

11   is, but it's broader than that.  There are actual

12   representations and there are actual omissions which were relied

13   upon by Stifel in presenting its program to the school districts

14   and their trusts in this case.

15             What makes that immediately relevant is that for the

16   SEC to state a claim and to get to the jury they are going to

17   have to establish both scienter and materiality.  In order to

18   establish what Stifel did and its state of mind, I think it's

19   critical that we know what is it that RBC knew about their own

20   product that they either did or did not tell Stifel.

21             THE COURT:  So are you therefore suggesting that this

22   information that is cited as privileged may, in your view,

23   contain material that would be relevant to the question of

24   whether or not there were omissions?

25             MR. KUHLMAN:  Yes, Your Honor.  And I think --

1        THE COURT:  -- opposed to representations that Stifel

2   and Noack relied on?

3        MR. KUHLMAN:  Your Honor, it would be that.  It also I

4   think may bear on whether some of the statements made by RBC

5   were, in fact, not true or were not believed by management at

6   RBC, which they then chose to withhold from the plaintiffs, from

7   Mr. Noack, and from Stifel.

8        And to some extent I am speculating, but there are

9   facts in the SEC case and the state court case which evidences

10  the discontent internally at RBC about these transactions, about

11  whether to proceed with this particular product and these

12  investors.  So I am extrapolating to some extent because I don't

13  have the benefit of seeing the documents.  But it is our belief

14  that they may weigh in on both the state of mind of Stifel, or

15  lack of state of mind, as well as materiality.  They certainly

16  impact the total mix of information that would have been

17  available not just to Stifel but to the investors, and

18  materiality is going to be an element in several of the claims

19  in the case.

20        THE COURT:  All right.  Go ahead.

21        MR. KUHLMAN:  Your Honor, beyond that I guess there

22  was some discussion about the state court motion practice.

23  Stifel didn't file those motions.  The issue that is -- that

24  Judge Nettesheim as the special discovery master dealt with was

25  an inadvertent disclosure on behalf of RBC of certain documents

1    in the course of the SEC taking testimony of a witness.  It did

2    not relate to the 137 pages that we're talking about here and,

3    in fact, Judge Nettesheim has never dealt with this issue.

4            And the last point I guess I would make is RBC has

5    cited you back to *Delwood Farms*.  The case that we rely upon,

6    the *Burden-Meeks* case, is a 2003 case in which the court

7    cited -- the Seventh Circuit cited *Delwood Farms* and

8    specifically stated that selective disclosure is not an option.

9            So as a matter of law we think the answer to this

10   question is somewhat clear, at least as it relates to the waiver

11   issue.

12           That's all I have, Your Honor.

13           THE COURT:  Do you wish to reply?

14           MS. CONN:  Yes, Your Honor.

15           First, just briefly on the question of whether these

16   documents are relevant.  We frankly think this is a fishing

17   expedition.  Mr. Kuhlman referenced Stifel's state of mind and

18   scienter.  It's difficult to understand how documents or

19   information, never at all disclosed to Stifel, between RBC and

20   its counsel, could possibly be relevant to the state of mind of

21   anyone at Stifel when they didn't know about any of the

22   information in the first place.

23           As to what happened in --

24           THE COURT:  Well, I would have to say that that is a

25   somewhat weak argument, so the Court will take that into

1  account.  But getting back to this other concern that was

2  expressed by Stifel that -- with regard to a failure to

3  disclose, how do you comment?

4       MS. CONN:  Well, Your Honor, again this understanding

5  and what was expressed here about what the defense would be is

6  supposedly that Noack and Stifel purportedly relied on

7  representations or information not provided by RBC.

8       Again, RBC's privileged communications don't have to

9  be the vehicle for discovery for that purpose.  Presumably if

10 information was told to Stifel or not given to Stifel, at this

11 point there would be other discovery available to Stifel for

12 that purpose, including documents among the millions of

13 documents in this case; and, if representations were made,

14 depositions; or if there are things that they now claim should

15 have been said, there can be testimony about that.

16      So I don't think having these 37 documents between RBC

17 and its counsel are necessary, and I don't think they've

18 established that it's anything more than a fishing expedition on

19 that account.

20      As to the proceedings in a state court case, I

21 actually think what was described is not entirely accurate.  We

22 have provided Your Honor with a copy of Judge Nettesheim's

23 decision.  We can also provide Your Honor with other motion

24 papers.

25      But as we described in our brief, it is true that the

1    issue before Judge Nettesheim wasn't related to these 37

2    documents, it was related -- again, not to an inadvertent

3    disclosure, it was actually related to an affirmative disclosure

4    that was made with respect to other information and there was an

5    argument that that resulted in a subject matter waiver.

6         Judge Nettesheim did not, in fact, rule on these

7    documents, that is correct.  But after that ruling, the

8    plaintiffs in our case sought to avoid Judge Nettesheim and

9    asked for permission to go around Judge Nettesheim to make a

10   motion to compel the production of these very same documents.

11   And my point is, that motion was never made.

12        And plaintiffs in Stifel in that case -- and Stifel

13   settled that case with plaintiff several years ago -- have

14   agreed to cooperate in pursuit of claims against RBC.

15        And I'll just note --

16        THE COURT:  Those arguments are interesting, but

17   certainly they're not determinative -- they're not persuasive,

18   nor shall they be the basis for determining the motion that is

19   currently before the Court.

20        MS. CONN:  Well, I would just also note that in that

21   case Stifel has recently argued that it shouldn't be required to

22   produce its Wells submission that it produced to the SEC.

23   That's a document that has never been found to be privileged.

24   There was no confidentiality agreement attached.

25        THE COURT:  Again that's a collateral matter --

1          MS. CONN:  Okay.

2          THE COURT:  -- that really doesn't directly determine

3    whether or not the Court should order disclosure here on the

4    ground that there was a waiver.

5          MS. CONN:  Understood, Your Honor.

6          The last point I would want to make is I disagree with

7    the analysis of the *Burden-Meeks* case.  I urge Your Honor to

8    consider that case because, in fact, in that case what happened

9    was documents were provided by an intergovernmental risk

10   management agency, IRMA, to a mayor of one of the constituent

11   localities.  But as the court in the *Burden-Meeks* case pointed

12   out, the mayor in that case was not acting as IRMA's regulator

13   as the SEC was acting as RBC's regulator here; nor was there any

14   discussion of any confidentiality agreement when those documents

15   were provided.

16         The Seventh Circuit did not discredit *Delwood* or

17   expressly overrule *Delwood* in that case.  And the *Burden-Meeks*

18   case does not deal with the circumstances present at issue here.

19   And since the time of that case in 2003, courts have

20   acknowledged again that *Delwood* has left the door open, and we

21   have cited a number of cases that have stated that proposition

22   in our brief.

23         THE COURT:  What is the majority view?

24         MS. CONN:  The majority view as -- in --

25         THE COURT:  With regard to disclosure.

1          MS. CONN:  Well, in the Seventh Circuit we maintain

2    that it hasn't been determined, but Judge Posner's language in

3    *Delwood Farms* leaves open the door to finding a selective waiver

4    where there has been a confidentiality agreement and actually

5    found selective waiver in the context of a law enforcement

6    privilege.

7          THE COURT:  I know the -- it was Judge Grady had a

8    case, I believe it was *Rivera vs. Allstate*, that, decided in

9    June of last year, that touches on this issue.  Are you familiar

10   with that?

11         MS. CONN:  I am, Your Honor.  And, you know, just as

12   there is the *Rivera* case which is out of the Northern District

13   of Illinois --

14         THE COURT:  Yes.

15         MS. CONN:  -- I can also point you to the *Jaffe* case

16   which was decided, you know, out of the Northern District of

17   Illinois after both *Delwood Farms* and *Burden-Meeks*.

18         So there are cases within the Northern District of

19   Illinois, also including the *Awalt* case which doesn't deal with

20   a production to a regulator, but does favorably cite

21   *Delwood Farms* for this purpose and found that there was no

22   waiver; when there were terms of a privacy act and found that it

23   was analogous to the kind of confidentiality protections that

24   Judge Posner was referring to in *Delwood Farms*.

25         So there are cases that go both ways within the

1    Seventh Circuit.  We would submit that it is still clear that

2    the Seventh Circuit has not come down one way or another in

3    these particular circumstances where there is a robust

4    confidentiality agreement that has been honored by the regulator

5    to whom the documents were produced.

6            THE COURT:  Does the SEC wish to be heard?

7            MR. SEEGER:  Very briefly, Your Honor.  I would just

8    make two brief points.

9            The first is, if you look at this at the 50,000-foot

10   level, I think courts should be somewhat hesitant to find a

11   waiver in this particular context, for a simple reason.

12           Parties from time to time make disclosures to the SEC

13   and other federal regulators subject to confidentiality

14   agreements, and that's a good thing.  We want the SEC and other

15   federal agencies to make informed decisions.  And I think if

16   there were a finding of a waiver, that would have a chilling

17   effect and people would be less inclined to share information

18   with federal agencies going forward.

19           I'm not saying that's a reason to rule on the motion

20   one way or the other, Your Honor, but I do think it's something

21   that the Court ought to factor into its decision.

22           Second of all, Your Honor, the Supreme Court --

23           THE COURT:  How often has the SEC been required to

24   disclose material received pursuant to a confidentiality

25   agreement?

28

1          MR. SEEGER:  That's a good question, Your Honor, and I

2    don't candidly know.  If Your Honor would like I could see if I

3    can get some data on that.  I'll put it this way --

4          THE COURT:  Well, I think that certainly is worthy of

5    consideration in light of your suggestion --

6          MR. SEEGER:  Yeah.

7          THE COURT:  -- that at the 50,000-foot U2 level it

8    would be important as far as future cases are concerned.

9          MR. SEEGER:  So any other time when the SEC's been

10   compelled to produce something subject to a confidentiality

11   agreement.  I can certainly, Your Honor, check with D.C., and

12   I'm happy to write a brief letter to the Court within a week or

13   something to that effect.

14         I'll just say me personally, Your Honor, I'm not aware

15   of that ever happening before.  That's not to say it hasn't

16   happened before, just to be candid with Your Honor.  And I'm not

17   saying that that's the reason to decide the motion; it's just

18   something I think courts ought to be cognizant of.

19         THE COURT:  Well, it's certainly nice to know what the

20   landscape is when a decision is issued because the Court has to

21   look not just at the facts in the case but also the consequence

22   of its action.

23         MR. SEEGER:  And the second point I wanted to make

24   very briefly, Your Honor, is, by way of analogy, the Supreme

25   Court has adopted a principle of constitutional avoidance where

1    you don't address a constitutional issue if you don't need to.

2    I know that doesn't --

3            THE COURT:  Well, I will tell you that that has been

4    my approach for about 37 years.

5            MR. SEEGER:  And I think there's something to be said

6    to not wade into a thicket of case law if you don't need to.

7    And I think in particular this case Your Honor --

8            THE COURT:  I don't like thickets.

9            MR. SEEGER:  I'm sorry?

10           THE COURT:  I don't like thickets.

11           MR. SEEGER:  Neither do I.

12           THE COURT:  And I don't like briers and bushes.

13           MR. SEEGER:  I'm running out of landscape now,

14    Your Honor, but -- the point being courts -- when there are

15    important issues there should be some hesitancy to resolving it

16    if you don't need to.  And I think as applied here, Your Honor,

17    just by way of analogy --

18           THE COURT:  You don't need to offer up an analogy

19    because what took place earlier today demonstrates this court's

20    point of view.  If the parties are able to resolve issues, that

21    is always good; if the parties cannot, the Court will step in

22    and do what is necessary, but only to the extent required.  I'm

23    not going to throw out something that has a broad impact if a

24    narrow peashooter approach is appropriate.  You won't get a

25    shotgun when a rifle will do.

1          MR. SEEGER:  Right.  And if I could just tie a ribbon

2     on that, Your Honor, the point I was trying to make was:  In

3     this particular case I really don't think it's necessary for the

4     Court to reach the issue of the case law because, as we see it,

5     RBC's internal communications with its lawyers really don't have

6     a bearing on what Stifel said to the school districts.

7          If it's something that Stifel communicated -- excuse

8     me, if it's something that RBC communicated to Stifel, then

9     there's other ways of getting discovery on that.  But if it's a

10    purely internal attorney/client privileged communication, we

11    think that's a tree that fell in the forest and nobody heard and

12    we just don't think frankly it's relevant to this proceeding.

13         THE COURT:  However, your argument doesn't address

14    what was just asserted with respect to the withholding of

15    information.

16         MR. SEEGER:  Well, and I hear that, Your Honor.  I

17    don't know how a nondisclosure in this context would impact

18    Stifel's state of mind.

19         For example, let's say in just a hypothetical, let's

20    say RBC's had a discussion with its lawyers about the meaning of

21    some provision, just hypothetically here.  I don't see how that

22    discussion would have any bearing whatsoever on what Stifel's

23    state of mind was.  At least that's not a natural A-to-B

24    connection, to me.  It seems awfully attenuated especially when

25    you're talking about something as important as the privilege in

31

1    this context.

2            But beyond that, Your Honor, those are my two cents.

3            THE COURT:  Stifel can reply.

4            MR. KUHLMAN:  Your Honor, briefly.  Again, I don't

5    know what's in the documents so I have to guess about what they

6    may or may not tell me.  But by way of example, if RBC

7    internally were to say, for example, Stifel clearly has

8    presented the pricing of this product one way and they're wrong

9    about that, and the SEC is standing up in front of the jury

10   saying Stifel lied about pricing, I should be entitled to

11   know -- I should be entitled to use RBC's internal

12   communications to demonstrate, for example, Stifel didn't have

13   the intent to misrepresent pricing because of however RBC

14   described it or for whatever reason Stifel truly believed it had

15   accurately described the pricing but RBC knew that its documents

16   weren't accurate or were not clear or were not appropriately

17   descriptive.

18           It could arise in the context of an omission.  It

19   could arise in the context of Stifel passed on information from

20   RBC to the plaintiffs that RBC knew was wrong.  I just don't

21   know what it consists of.

22           The only other point I'd make, Your Honor, is I

23   understand your aversions to thickets, and it seems to me that

24   the SEC would like you to wander into a thicket in the face of

25   this great risk that they perceive that firms won't be

1  forthcoming to the SEC if they are aware of a risk the documents
2  may be disclosed.

3        What I will say is that RBC was fully aware of the
4  risk and felt that the information was important enough to take
5  the risk and present it to the SEC.  I don't know what it is,
6  but clearly they thought it was important enough to take the
7  risk and I think that Stifel in the context of discovery at
8  least ought to be entitled to see what they thought was so
9  important.

10       Thank you, Your Honor.

11       THE COURT:  It's duly noted.  Is there anything else?

12       MR. KUHLMAN:  No, sir.  Not on behalf of Stifel.

13       THE COURT:  Well, what I will do is take the matter
14 under advisement.  And I'll address the matter a little later.

15       But there is one other thing that I'm curious about,
16 and that is whether or not the Court should consider these
17 documents under seal.

18       MR. KUHLMAN:  Your Honor, just so that I am clear, if
19 the idea is that the parties and the Court would see them but
20 they would not go beyond this case --

21       THE COURT:  No.  They wouldn't necessarily go beyond
22 the case, they may not be disclosed to Stifel after review by
23 the Court.  If the Court looks at the documents and says, look,
24 it does not find any basis upon which these documents would be
25 admissible, in light of the argument of obviously that they're

1    irrelevant, and, in fact, the same argument's being voiced by

2    the SEC.

3        MR. KUHLMAN:  Your Honor, from Stifel's perspective I

4    don't have a concern with the Court doing a sealed or in-camera

5    review of the documents so long as it's not just limited to

6    admissibility but the standard discovery standard which is would

7    it lead to discoverable evidence.  If the Court's willing to

8    view them from that perspective or through that lens I don't

9    have an issue on behalf of Stifel with that approach.

10       THE COURT:  All right.

11       MS. CONN:  Your Honor, I don't think there has been a

12   debate as to whether or not these documents are actually

13   privileged; the question has been waiver.  I don't have any

14   objection to providing the documents for in-camera review for

15   that determination.  But I would note that I don't agree with

16   Mr. Kuhlman's assessment that they are to be reviewed with an

17   eye towards whether they could lead to discovery of admissible

18   evidence.  Certainly lots of privileged documents lead to the

19   discovery of admissible evidence.

20       If Your Honor is reviewing them to see if they relate

21   to these claims that they're making, and if they are, in fact,

22   privileged, I don't have an objection to that.  But I don't

23   believe that, you know, that they should be produced just if

24   they could possibly in some conceivable universe lead to other

25   information that could possibly be disclosed that would also be

1  privileged.  Again, these are communications between RBC and its

2  counsel.

3        And so, I just want to be clear for the record that

4  lots of privileged information, you know, could conceivably be

5  disclosed including that that has not been produced to the SEC.

6  And I want to make sure we cabin any consideration to these 37

7  documents, whether they're privileged and the legal

8  consideration as to whether the privilege has been waived.

9        THE COURT:  How voluminous is this material?

10        MR. KUHLMAN:  Your Honor, I think there are 137 pages.

11        MS. CONN:  I think that's right, Your Honor.

12        MR. SEEGER:  That's correct, Judge.

13        THE COURT:  It's not just 137 documents, 137 pages.

14        MS. CONN:  37 documents I believe, Your Honor.  What?

15  You think it's --

16        UNIDENTIFIED SPEAKER:  They're mostly e-mails.  It's

17  not voluminous.  It's -- you're dealing with a small UPS

18  package, you know.

19        THE COURT:  Okay.  Well, as I said at the outset,

20  [Glitch in Audio] -- not confident that the Court is going to

21  deny the motion at this stage, but I do want to look more

22  closely at the case law that you've relied upon during our

23  discussion today and also take into consideration any submission

24  by the SEC respecting disclosures under similar circumstances.

25  All right?

1          Now, with that said, what I'd like to do is to turn to

2     the matter of discovery.  You've asked for additional time in

3     this matter, and I would just like to have you address why you

4     believe the additional time is reasonable under the

5     circumstance.

6          MR. SEEGER:  Yes, Your Honor.  I do think the parties

7     have made --

8          This is Steve Seeger for the SEC.

9          I do believe parties have made progress in discovery.

10    I think that the parties actually have worked pretty well

11    together trying to move the ball forward.  I think we've

12    encountered some scheduling issues along the way.  Let me give

13    you a couple examples.

14          The school district representatives are being deposed

15    also in the state court case.  These are mostly former

16    employees, many of them are retirees.  I think it's been a

17    challenge despite everybody's best efforts and best intentions

18    to get dates for those people.  I know that the defendants want

19    to take a deposition in the United Kingdom, that is still

20    pending.  We would like to take the defendant's deposition,

21    Mr. Noack.  It was scheduled for the beginning of this month,

22    but at his request we agreed to reschedule it, it's now been set

23    for the end of September.

24          I do think overall, Your Honor, that we've made

25    substantial progress.  I think we're continuing to make

1    progress.  There's some additional depositions that the parties

2    would like to take.

3             I think from our end, from the SEC's position, we

4    would like to see the light at the end of the tunnel.  But I

5    don't believe that we're there yet and I think that additional

6    time would give the parties a chance to wrap things up and move

7    to the next stage of the case.

8             THE COURT:  Does anyone else wish to be heard?

9             MR. KUHLMAN:  Your Honor, Rick Kuhlman on behalf of

10   Stifel.

11            I think that's accurate.  We are making progress.

12   It's been a practical issue both from the scheduling of

13   witnesses and also from the scheduling standpoint of the lawyers

14   because many of the lawyers in this case are also involved in

15   the state court litigation.  So that's created some challenges.

16            We have had a cooperative relationship with the

17   counsel for the plaintiffs and the trusts, and we're making

18   progress but I just don't think it's feasible to get it done in

19   the timeframe that we originally contemplated.

20            However, having said that, we have a pretty good

21   handle on the universe of people we are talking about, it's just

22   a matter of getting them all on the calendar.

23            THE COURT:  Very well.  The Court is satisfied that

24   the additional time is warranted under the circumstances,

25   particularly in light of the progress that was made today.  I

1    think that would certainly have an impact on how you proceed.

2    And there is no doubt that you need to also have the Court's

3    decision with respect to RBC.

4            So what I'd like to do is give you a date and time for

5    the Court's oral decision, assuming the SEC can get that letter

6    to me right away.  Can you expedite that letter?

7            MR. SEEGER:  I certainly can, Your Honor.  I'll do it

8    as fast as you want.  I'll certainly send an e-mail to my

9    colleagues and reach out to them first thing tomorrow.  I'll do

10   it as fast as you want, Your Honor.  I probably need a couple of

11   days to make sure that I talk to everybody.

12           THE COURT:  Right.

13           MR. SEEGER:  I think I'll need to connect with the

14   folks in D.C., and I just want to make sure that I can reach

15   everybody and talk to -- they can be -- I can do it middle of

16   next week or whatever the Court wants.

17           THE COURT:  I'll see what the clerk can come up with

18   because I would like the benefit of your submission.

19           MR. SEEGER:  And just to be clear, Your Honor, would

20   the Court prefer a letter or something on the docket?  Or what

21   would the Court --

22           THE COURT:  Well, it should be in written form so that

23   everyone will be fully apprised of what you've had to say.

24           MR. SEEGER:  That's fine, so -- that's fine.

25           MR. KUHLMAN:  Your Honor, on behalf of Stifel, I don't

1    necessarily want to ask for an opportunity to respond, but it

2    might be helpful to understand the methodology the SEC used to

3    come up with that data because frankly I'm not sure how they

4    would track it short of word of mouth.  So it would be helpful

5    to understand how they gathered or how they identified those

6    cases so that we can evaluate how much value to put into it.

7              MR. SEEGER:  And that's fine, Your Honor.  I'm

8    certainly happy to talk with counsel.  I'm not going to surprise

9    anybody, I'll let them know what I've learned and if they think

10   we need to go get additional information we can do that.  But

11   given our track record I'm confident that we can satisfy

12   everybody and submit something --

13             THE COURT:  As a practical matter would you need more

14   than 48 hours to at least assess what the SEC has said and be

15   prepared to weigh in before the Court makes a decision?

16             MR. KUHLMAN:  48 hours is perfect, Your Honor.

17   Thank you.

18             THE COURT:  So with that as at least a guideline for

19   how we're going to proceed, can the clerk put this down for say

20   10 days from now?  Somewhere in that neighborhood.  10 days to

21   two weeks.  I know I have a jury trial next week so I will be

22   pretty tied up.

23             THE CLERK:  September 9th at 1:30.

24             THE COURT:  If you wish to participates by phone as

25   opposed to appearing in person that'll be fine.  I don't want

39

1  you to travel unnecessarily.  Because despite what I said about

2  talking being cheap, with so many lawyers in a room I'm sure

3  that somebody's paying something that isn't too inexpensive.

4          MR. SEEGER:  We don't bill by the hour on this side of

5  the table, Your Honor, but we understand your point.

6          THE COURT:  But you're only part of the equation.

7          MR. SEEGER:  I know.

8          THE COURT:  But somebody's paying and --

9          MR. SEEGER:  I know.

10          THE COURT:  -- I think that party is known as a

11  taxpayer.

12          MR. SEEGER:  Understood, Your Honor.  So -- and we

13  appreciate the opportunity to participate by phone.  So --

14          THE COURT:  All right.

15          MR. SEEGER:  And I'll try to get the letter to

16  Your Honor as quickly as I can.

17          THE COURT:  Super.  Is there anything else?

18          MR. KUHLMAN:  Not on behalf of Stifel, Your Honor.

19          MR. KANE:  Not on behalf of Mr. Noack.

20          MR. SEEGER:  Nothing on behalf of the SEC, Your Honor.

21  Thank you for hearing us this afternoon.  I think we made

22  progress.

23          THE COURT:  But before we break, is there anything the

24  Court can do to move you toward a final resolution of this case

25  without any further discovery or delay?

1          MR. SEEGER:  Here's what I would say, Your Honor.  We

2    are always willing to talk.  I think we have had some

3    discussions -- not recently, but we have had some discussions.

4    I don't think that there is anything that we would need from the

5    Court at this juncture.

6          If we get to that juncture and we think it would

7    assist to have the Court's involvement we certainly would

8    welcome that.  We've had that -- a good record of that before.

9    I don't think there's anything at this point in time that I

10   think would facilitate productive discussions.

11         MR. KUHLMAN:  Your Honor, I would agree with that.  I

12   think that that day will come, and my expectation is the parties

13   may get there on their own without the assistance of the Court.

14   We're just not quite there yet.

15         THE COURT:  So be it.  Have a good day.

16         MS. CONN:  Your Honor, just a point of clarification,

17   do you want also a copy of the 37 documents for review in camera

18   or just the letter from the SEC?

19         THE COURT:  Just the letter from the SEC.

20         MS. CONN:  Okay.  Thank you, Your Honor.

21         THE COURT:  I was exploring with you the possibility

22   that that would be one way of trying to resolve this matter, but

23   at this point I'm inclined to proceed on the basis of the

24   arguments and the submissions.

25         MS. CONN:  Okay.  Thank you, Your Honor.

1    THE COURT:  All right?

2    MR. SEEGER:  Thank you, Your Honor.

3    MR. KUHLMAN:  Thank you, Your Honor.

4    THE BAILIFF:  All rise.

5    (Audio file concluded at 5:22:44 p.m.)

6                    *    *    *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, JOHN T. SCHINDHELM, RMR, CRR, Official Court

Reporter and Transcriptionist for the United States District

Court for the Eastern District of Wisconsin, do hereby certify

that the foregoing pages are a true and accurate transcription

of the audio file provided in the aforementioned matter to the

best of my skill and ability.


Signed and Certified August 27, 2014.

/s/John T. Schindhelm

John T. Schindhelm


                    John T. Schindhelm, RPR, RMR, CRR
                    United States Official Reporter
                    517 E Wisconsin Ave., Rm 236,
                        Milwaukee, WI 53202
                    Website: WWW.JOHNSCHINDHELM.COM

