IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 2:11-cv-755 |
| STIFEL, NICOLAUS & CO., INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANT STIFEL, NICOLAUS & CO.'S BRIEF IN OPPOSITION
TO THE SEC'S THIRD MOTION IN LIMINE (RELIANCE,
LOSS CAUSATION, AND THE FINANCIAL CRISIS)**

Through its Third Motion in Limine, the Securities and Exchange Commission ("SEC") seeks to exclude evidence that is squarely relevant to the materiality and falsity elements of the SEC's asserted causes of action. The SEC's own Complaint and expert reports are replete with allegations of reliance and loss causation, and it would be entirely inequitable to allow the SEC to lodge such allegations, while simultaneously barring Defendants from responding to them. Such evidence also bears on materiality and falsity and is clearly also relevant to the fraud and negligence claims at issue in this case, thus, it would be plain error to exclude such evidence. Moreover, where the evidence at issue may not directly relate to an element of one of the SEC's claims, it would still be error to exclude such evidence because it may bear on the credibility of the testimony of witnesses, provide context for facts allegedly at issue, and may also be necessary to prevent the jury from making unfair, unwarranted and/or erroneous connections among the various other pieces of evidence.

# 1. The Standard for Relevance is Low and the Bar for Exclusion is High

The standard for relevance is considerably broader than simply whether a piece of evidence directly proves or disproves an element of a claim. Evidence is relevant if it has a "tendency to make [the existence of any fact that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence may be 'relevant' under Rule 401's definition, even if it fails to prove or disprove the fact at issue—whether taken alone or in combination with all other helpful evidence on that issue.'" *United States v. Guzman-Montanez*, 756 F.3d 1, 7 (1st Cir. 2014) (internal citations omitted). It is not a high standard. *See United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985).

Among other things, "[e]vidence is relevant simply if it tends to make a witness' testimony more or less credible." *Berry v. Deloney*, 28 F.3d 604, 607 (1994) (internal citations omitted). Federal evidence law also recognizes and protects an "offering party's need for evidentiary richness and narrative integrity in presenting a case …." *Old Chief v. United States*, 519 U.S. 172, 183 (1997). For this reason, evidence that provides background and context for other facts presented to a jury is routinely deemed to be relevant and permitted. *See, e.g.*, *United States v. Blackburn*, 992 F.2d 666 (7th Cir. 1993) (allowing evidence in trial for bank robbery and use of a firearm because it "supplied background narrative material" relating to the relationship between the bank robbery defendant and third party to whom he gave stolen funds); *United States v. Arnold*, 773 F.2d 823 (7th Cir. 1985) (permitting evidence to show background for witness tampering claim).

Although Rule 403 allows relevant evidence to be excluded where its probative value is outweighed by the potential for confusion or prejudice, "it is an extraordinary measure that

should be used sparingly." *United States v. Morris,* 79 F.3d 409, 412 (5th Cir. 1996). A court should not exclude the evidence if limiting instructions can be used to diminish the danger of unfair prejudice. *See*, *e.g.*, *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (noting that limiting instructions are often sufficient to cure risk of prejudice); *United States v. Green-Bowman*, 816 F.3d 958, 964 (8th Cir. 2016) (allowing admission of relevant prior bad acts evidence, with limiting instruction).

"Evidence should not be excluded on a motion in limine unless such evidence is clearly inadmissible on all potential grounds." *Hart v. Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015). Evidence that bears directly on the elements of at least one of the asserted claims is not "clearly inadmissible" and thus should not be barred in response to a motion in limine.

### 2. **Evidence Relating to "Reliance" is Relevant to the Elements of Materiality and Scienter, Is Part of the Narrative, and Poses Little Risk of Confusion**

It is undisputed that reliance is not an element of the SEC's case. Accordingly, one can only speculate why the SEC felt compelled to cite more than a dozen cases in support of this undisputed proposition. Stifel has no intention of arguing to the jury that the SEC must prove reliance in order to prevail on its claims. Nevertheless, evidence that relates to reliance is admissible both because the SEC has made allegations about reliance and because such evidence is relevant to the element of materiality.

As an initial matter, the SEC—not Stifel—was the first party to inject reliance as an issue in this action, and the SEC's raising of this issue precludes their effort to bar evidence of reliance here on relevance grounds. *See, e.g.:*

- Complaint ¶ 3 ("Stifel and Noack ultimately convinced the School Districts to invest…"), ¶ 4 ("Stifel and Noack persuaded the School Districts…."),

3

- Complaint ¶ 10 ("[Stifel and Noack] also knew that the School Districts looked to them for financial advice and relied on their recommendations."),

- Complaint ¶ 29 ("Stifel and Noack knew that the School Districts relied upon them for financial advice."),

- Complaint ¶ 70 ("Stifel and Noack convinced the School Districts to invest…."),

- Complaint ¶ 120 ("Stifel and Noack succeeded in convincing the School Districts to entrust public funds in the GOAL Program.").

The SEC's proposed Summary of the Claims and Defenses (which is objectionable for a host of reasons) makes even more clear the SEC's intention to argue reliance before the jury, stating that the jury should be advised that "[t]he SEC alleges that [Defendants] also knew that the School Districts looked to them for financial advice." *See* SEC's Proposed Jury Instructions at 59, attached as Exhibit A ("Ex. A") to Declaration of Richard H. Kuhlman in Support of Stifel's Opposition to SEC's Motions in Limine ("Kuhlman Motions Dec."), filed contemporaneously herewith. Stifel is entitled to rebut the SEC's allegations about the School Districts' reliance on Defendants' statements about these investments.

Even if the SEC had not already opened the door on the question of reliance, the mere fact that reliance is not an element does not warrant the sweeping exclusion of evidence that the SEC urges here—essentially a bar to all "evidence about reliance." As the Court is well aware, reliance often informs the analysis of materiality, which is an element of the SEC's claims. Without knowing precisely what the evidence will be, it is impossible for the Court to confer the sweeping relief that the SEC requests through this motion.

A misstatement or omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (internal citations omitted). Materiality is a highly fact-

4

specific issue, which requires examination of all of the information made available and how it was made available in order for the fact-finder to assess what significance a particular representation or omission would have to a reasonable investor. *See SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1248 (11th Cir. 2012). While the test of materiality depends upon the hypothetical "reasonable investor," the testimony of an actual investor whose investment is at issue in a case is "both persuasive and revealing." *Branch-Hess Vending Servs. Emps.' Pension Tr. v. Guebert*, 751 F. Supp. 1333, 1340 (C.D. Ill. 1990) (considering plaintiff's testimony about his investment decisions when assessing materiality). *Accord SEC v. Jakubowski*, 1997 WL 156544, at *8-9 (N.D. Ill. Mar. 31, 1997) (finding materiality based, in part, on the actual investors' decision making process); *State v. Stuber*, 1 P.3d 333, 344 (Kan. Ct. App. 2000) (same).

Stifel, thus, has the right to present a complete picture to the jury about <u>all</u> of the information that was made available to the investors, in order for the jury to determine whether any particular representation or omission by Defendants altered the "total mix" of information to the investors and was, therefore, material. Whether the investors, themselves, relied on that information is also relevant to whether a reasonable investor in their situation would have found it to be significant.

In addition to being relevant to materiality, the facts and circumstances surrounding the sale of these investments are also part of the context for the case against Stifel. Stifel is entitled to provide such context.

To the extent that the SEC's motion seeks to exclude evidence about Stifel's reliance on statements by RBC (*see* Doc. 203 at 4), such evidence is squarely relevant to the element of scienter. If Mr. Noack believed something to be true based on information he received from

5

RBC or even based on his interpretation of information provided by RBC, he necessarily lacked scienter. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976) (defining scienter as "a mental state embracing intent to deceive, manipulate, or defraud").[1] At the very least, this evidence would be relevant for a jury to assess the credibility of Mr. Noack when he testifies that he did not believe the things he said to the Districts were untrue.

The clear relevance of evidence regarding Stifel's reliance on RBC does not present any meaningful risk of prejudice or confusion. The jury will be instructed as to the elements of the claim, and these elements will clearly not include reliance. If the Court believes there is an undue potential for confusion here, it can give a limiting instruction.

### 3. Loss Causation and the Financial Crisis are Relevant to the Element of Misrepresentation and Is a Necessary Part of the Narrative.

It is also disingenuous for the SEC to move to exclude evidence of loss causation and the financial crisis when these issues feature prominently in the SEC's own Complaint:

- Complaint ¶ 11 ("In the end, the investments were a failure, and the School Districts suffered a complete loss. The School Districts lost tens of millions of dollars as a result of the fraud committed by Stifel and Noack."),

- Complaint ¶ 99 ("That representation [that 100 of the top 800 companies in the world have to have to go under before the School Districts would suffer any principal loss] was materially false. The School Districts suffered a loss of their investments, even though far fewer than 100 of the top 800 companies in the world collapsed."),

- Complaint ¶ 101 ("Those representations [that the country would have to fall further into financial trouble than the Great Depression before the investments would be affected] were materially false. There was a risk that the investments would fail, even without an economic calamity of the magnitude of the Great

---

[1] The SEC's argument that RBC is irrelevant to this case is raised by multiple other motions in limine (*See* Docs. 205, 206, 207, 211, and 212). For the sake of brevity, Defendants will not repeat here the arguments that it has discussed in opposition to those separate motions, but will incorporate them by reference here (to the extent that this motion is also read as challenging the relevance of evidence relating to RBC). *See* Stifel's Briefs in Opposition to the SEC's Fifth, Sixth, Seventh, Eleventh, and Twelfth Motions in Limine, respectively, filed contemporaneously herewith.

6

Case 2:11-cv-00755-JPS   Filed 08/15/16   Page 6 of 9   Document 266

Depression. In fact, the investments failed even though the recent economic downturn was not as severe as the Great Depression…."),

- Complaint ¶ 192 ("The investments by the School Districts in the GOAL Program were a failure. The investments were far more risky than Stifel and Noack had represented, and those risks materialized – at the expense of the School Districts."),

- Complaint ¶ 193 ("In 2007 and 2008, the investments steadily declined in value…."),

- Complaint ¶ 195 ("In 2009 and 2010, the School Districts received word that the second and third investments were a complete loss…."), ¶ 196 ("In short, the School Districts have suffered a complete loss of the tens of millions of dollars that they invested in the GOAL Program…."),

It is clear that the losses suffered by the School Districts will be emphasized heavily by the SEC at trial. For example, one of the SEC's experts, Bella Borg-Brenner, repeatedly references the losses in her expert report and contrasts those losses with the representations made about safety by the defendants. In paragraph 78, for example, she states "[c]ontrary to what Stifel and Mr. Noack presented to the School Districts, the CDO Transactions were risky and complex investments…. By September 2008, the value of all three [Credit Linked Notes] plummeted and became almost worthless." Expert Report of Bella Borg-Brenner dated November 13, 2015, attached as Exhibit B to Kuhlman Motions Dec., at ¶78. *See also id.* at ¶20 ("By March 2010, the School Districts' entire investment … had been wiped out."). The same report devotes an entire exhibit to summarizing all of the principal amount reductions over time. *Id.* at ¶81 and Exhibit 2.

The SEC's proposed Summary of the Claims and Defenses (which again is objectionable and should not be read to the jury), likewise, unilaterally injects into the case concepts of loss and loss causation, proposing to advise the jury that: "Among other things, the SEC alleges that Stifel and Noack defrauded the School Districts by… continuing to recommend the investments

even after they knew the first transaction performed so poorly from the outset that they wanted RBC to repurchase the notes …." *See* Ex. A to Kuhlman Motions Dec. at 23–24. Proposing such language is directly contrary to the SEC's position as advanced in this motion. Jurors inevitably will be tempted to view the fact that the investments failed as evidence that Defendants could never have actually believed that they would be safe.

It is, thus, evident that the School Districts' losses will be front and center in this action. As stated in its Complaint and proposed Summary of Claims and Defenses, the SEC will argue that the fact that the investments failed proves that Defendants misrepresented the safety of the investments and never could have believed them to be safe. Defendants must be allowed to adduce evidence and make argument to explain how they could have believed the things that they were saying to the School Districts when they said them, with the investments still suffering a loss. That is, Defendants must be allowed to show that the failures resulted from unprecedented financial conditions and the misrepresentations of RBC.

The reasons why the investments proved not to be safe are relevant to whether these statements were actually false.[2] At the very least, the circumstances surrounding the losses and the unprecedented nature of the Financial Crisis are relevant to the jurors' assessment of the credibility of Defendants when they testify that they believed their statements about safety at the time those statements were made. Put another way, they are necessary to prevent the jury from improperly and unfairly concluding that such a result could only have ensued if Stifel were lying all along.[3]

---

[2] The SEC's argument that Stifel's experts testified that the Financial Crisis was not to blame for the performance of the investments (*see* Doc. 203 at 11–12) is errnoeous. The fact that the experts identified misconduct by RBC as <u>a</u> cause of the failure of the investments does not mean that the Financial Crisis played no role. Indeed, it is impossible to imagine any investment whose performance is only affected by a single factor.
[3] A significant portion of the SEC's argument about the irrelevance of the Financial Crisis challenges the testimony of one of Stifel's experts, Erik Sirri. The SEC has also filed a motion in limine styled as a Daubert motion, which argues these same points about this aspect of Mr. Sirri's testimony, but in more detail. For the sake of brevity, Stifel

Based on the foregoing, the SEC's sweeping motion to exclude evidence relating to reliance and the Financial Crisis should be denied.

Dated this 15th day of August, 2016

By: /s/ Richard H. Kuhlman
Jeffrey J. Kalinowski
Richard H. Kuhlman
Hal A. Goldsmith
John J. Schoemehl
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
(314) 259-2000 – Phone
(314) 259-2020 – Fax
jeff.kalinowski@bryancave.com
rick.kuhlman@bryancave.com
hal.goldsmith@bryancave.com
john.schoemehl@bryancave.com

Brian G. Cahill
David J. Turek
GASS WEBER MULLINS LLC
309 N. Water Street, Suite 700
Milwaukee, Wisconsin 53202
(414) 223-3300 - Phone
(414) 224-6116 - Fax
cahill@gasswebermullins.com
turek@gasswebermullins.com

*Counsel for Defendant*
*Stifel Nicolaus & Company, Incorporated*

---

will not reproduce its arguments in response to the challenge to Mr. Sirri here, but rather incorporates by reference its opposition to the Daubert motion. *See* Stifel's Memorandum in Opposition to the SEC's *Daubert* Motion to Limit the Testimony of Erik Sirri, filed contemporaneously herewith.