**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No. 2:11-cv-755 |
| STIFEL, NICOLAUS & CO., INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANT STIFEL, NICOLAUS & CO.'S BRIEF IN OPPOSITION
TO THE SEC'S FOURTH MOTION IN LIMINE ("BLAMING THE VICTIMS")**

Stifel, Nicolaus and Company, Incorporated ("Stifel") does not intend to "blame the victims" in defense to the allegations brought by the Securities and Exchange Commission ("SEC"), as alleged in the instant motion in limine. Doc. 204. Similarly, Stifel does not intend to argue that it cannot be found liable because the investors were "negligent" or "at fault" with regard to the investments (as the SEC warns against at Doc. 204 at 1). Nevertheless, Stifel must be permitted to adduce evidence about the process the investors engaged in to collect information regarding the investments, as well as evidence of the specific information ultimately available to the investors. This evidence is directly relevant to the question of whether particular representations were "material." *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (defining a material representation as one that a reasonable investor would have viewed as having significantly altered the "total mix" of information that was available to these investors). This is true even if the evidence may conceivably leave jurors wondering if the investors should have done something differently.

The very definition of materiality requires some level of inquiry into the relationship between what the School Districts did and believed and what a reasonable investor would have done or believed under the same circumstances. For instance, whether Defendants are liable for securities fraud will depend, in part, on questions like what a reasonable investor should have thought when it heard David Noack say that the investments would not be impaired unless there were "15 Enrons," in light of all of the specific, accurate written information that was provided about the risks posed by the investments. Measuring the School Districts against a reasonable investor is unavoidable.

Further, the law is clear that the Districts are charged with knowledge of the content of documents that they received, including specifically the offering materials provided to them (of which they admit in writing having received) and the Investment and Acknowledgement Letters, that they executed. *See*, *e.g.*, *Prudential Ins. Co. of Am. v. Miller Brewing Co.*, 789 F.2d 1269, 1278 (7th Cir. 1986) (party charged with knowledge of contract it signed); *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724 (Wis. 1990) (same); *Dodds v. Cigna Secs., Inc.,* 12 F.3d. 346, 350 (2d Cir. 1993) (investor charged with knowledge of securities filings). The law not only contemplates but actually permits the conclusion that an investor knows whatever information is contained in written documents that an investor possessed and, in this case, expressly acknowledges in writing.

To the extent that the SEC seeks to prevent Stifel from "elicit[ing] evidence, or mak[ing] suggestions … that the School Districts … [s]hould have 'spoken up' if they did not understand" certain aspects of the investments, such exclusion would be uniquely problematic. Stifel is accused of misleading the investors through alleged misrepresentations and omissions about various characteristics or aspects of the investments. Stifel intends to adduce evidence—and is

entitled to argue—that the investors possessed truthful, factual written disclosures bearing directly on matters that the SEC now alleged were misrepresented or omitted. The investors' receipt and understanding of these written materials will be presented to the jury in the form of evidence from their own lawyer, as well as the investors' own documents, among other things.

Furthermore, the fact that the School District representatives declined to ask questions when presented with written and oral information related to their investments must be considered in connection with evaluating Stifel's mental state. Whether the investors had questions or not informs Stifel's belief as to the investors' understanding of the investment, ability to evaluate the investment and willingness to accept the disclosed risks associated with the investments.

The SEC's motion also ignores the fact that the SEC itself put at issue the School Districts' process and capability for reviewing these investments with its suitability claim. *See*, *e.g.*, Am. Compl. (Doc. 30), at ¶¶ 177-191. The Amended Complaint asserts that the investments were unsuitable for the Districts because (among other things) Defendants knew or were reckless in not knowing "that the School Districts lacked the requisite sophistication, capacity, and expertise to independently evaluate the risks of the products sold to them." Doc. 30 at ¶10. Likewise, the Expert Report of Bella Borg-Brenner puts this same subject at issue, opining that there was no reasonable basis to conclude that the CDO Transactions were suitable for the School Districts due to (among other things) the School Districts' level of financial sophistication, and the lack of third-party advisors available to the School Districts to evaluate suitability. Expert Report of Bella Borg-Brenner at ¶183, attached as Exhibit B to Declaration of Richard H. Kuhlman in Support of Stifel's Opposition to SEC's Motions in Limine ("Kuhlman Motions Dec."), filed contemporaneously herewith.

In light of these allegations, what the Districts did or could have done to assess these investments is highly relevant.   For example, the School Districts' access to tools that would have allowed the Districts to accurately judge the risks posed bears directly on the claim that the investments were unsuitable.  Likewise, what Stifel knew about the Districts' diligence process and capabilities will be relevant to whether Defendants knowingly recommended unsuitable securities. *See Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 244 (W.D.N.Y. 2015) ("[T]o sustain a claim of unsuitability, there must be proof that [the defendant] made a *knowing* recommendation of unsuitable securities . . . ." ) (emphasis added).  The fact that the Districts acknowledged in writing to Stifel that they had reviewed the risk factors from the Base and Drawdown Prospectuses, that they had determined the investment was suitable, and that they considered themselves to be financially sophisticated investors who had the requisite knowledge and experience to evaluate the merits and risks of the investments (among other things) is relevant to both whether the investments were, in fact, suitable for the School Districts, as well as whether Defendants were reasonable to believe that they were. *See* Deposition Exhs. 248 and 602, attached to Kuhlman Motions Dec. as Exhibits C and D, respectively.

It is also relevant that the School Districts had sophisticated counsel reviewing the transactions who had raised no concerns about which Defendants were aware.

Finally, Stifel is entitled to present evidence as to why the School Districts were in a position to be searching for the very specific investment manufactured and sold here by RBC: their large OPEB liability, combined with the restrictions imposed by state law on the types of investment they could choose.  This is a fundamental part of the context for the transactions, which will be necessary to answer the jury's inevitable questions about why Stifel chose to solicit proposals using the parameters articulated in the Request for Proposal.  *See Old Chief v.*

*United States*, 519 U.S. 172, 183 (1997) (recognizing an "offering party's need for evidentiary richness and narrative integrity in presenting a case"); *United States v. Blackburn*, 992 F.2d 666, 669 (7th Cir. 1993) (allowing evidence in trial for bank robbery and use of a firearm because it "supplied background narrative material" relating to the relationship between the bank robbery defendant and third party to whom he gave stolen funds); *United States v. Arnold*, 773 F.2d 823 (7th Cir. 1985) (permitting evidence to show background for witness tampering claim).

Based on the foregoing, the SEC's motion seeking to exclude evidence regarding the conduct of the investor should be denied.

Dated this 15th day of August, 2016

By: /s/ Richard H. Kuhlman
Jeffrey J. Kalinowski
Richard H. Kuhlman
Hal A. Goldsmith
John J. Schoemehl
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
(314) 259-2000 – Phone
(314) 259-2020 – Fax
jeff.kalinowski@bryancave.com
rick.kuhlman@bryancave.com
hal.goldsmith@bryancave.com
john.schoemehl@bryancave.com

Brian G. Cahill
David J. Turek
GASS WEBER MULLINS LLC
309 N. Water Street, Suite 700
Milwaukee, Wisconsin 53202
(414) 223-3300 - Phone
(414) 224-6116 - Fax
cahill@gasswebermullins.com
turek@gasswebermullins.com

*Counsel for Defendant*
*Stifel Nicolaus & Company, Incorporated*