# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

———————————————————————

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES | : | |
| AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 11-cv-755 |
| | : | |
| STIFEL, NICOLAUS & CO., INC. and | : | Hon. Charles N. Clevert Jr. |
| DAVID W. NOACK, | : | |
| | : | |
| Defendants. | : | |

———————————————————————

### SECURITIES AND EXCHANGE COMMISSION'S REPLY IN SUPPORT OF
### MOTION *IN LIMINE* NOS. 1, 2, 3, 4, 8, 9, 10, 11, 12, 13, & 14

Dated: August 22, 2016

Steven C. Seeger
Robert M. Moye
Alyssa A. Qualls
Jeffrey A. Shank
Ariella O. Guardi
Kevin A. Wisniewski
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604-2615

Attorneys for Plaintiff
U.S. Securities and Exchange
Commission

This Court received a big stack of motions *in limine* from the parties, as the Court undoubtedly is all-too aware. But the good news is that there is a bushel of low-hanging fruit. Stifel has effectively conceded a number of the SEC's motions *in limine*. For others, Stifel musters only token resistance. Stifel wouldn't agree to them, but Stifel offers this Court no legitimate reason to deny them, either.

The motions *in limine* present this Court with a golden opportunity to streamline the trial, narrow the issues, and focus the parties on issues that matter. The motions *in limine* also will protect the jury from statements that would contaminate the record, confuse the issues, and point the jury in the wrong direction.

The trial is not about the financial crisis (*see* motion *in limine* no. 3), or blaming the School Districts (*see* motion *in limine* no. 4). The trial is not about what statement was most important (*see* motion *in limine* no. 11), or who manufactured the CDOs (*see* motion *in limine* no. 12). The trial has nothing to do with the SEC's enforcement priorities, or the SEC's handling of its regulatory responsibilities (*see* motion *in limine* no. 14). The trial is about the conduct of the defendants. Everything else is a diversion, and will waste time and distract the jury from the real issues at hand.

The motions *in limine* also will protect the jury from highly prejudicial statements that would taint the trial. It would confuse and mislead the jury to suggest that the defendants did not intend to harm the School Districts (*see* motion *in limine* no. 1), or to let witnesses speculate about what was going on inside someone else's head (*see* motion *in limine* no. 2). The jury has no business hearing about Stifel's settlement with the School Districts (*see* motion *in limine* no. 8), or hearing any suggestion of an advice-of-counsel defense that does not exist (*see* motion *in limine* no. 9).

Trial will be long enough – consuming weeks of the jury's time, and this Court's valuable resources – without exploring unnecessary terrain. This Court should streamline the case, narrow the issues, and exclude evidence that simply does not belong. This Court should set firm, bright-line boundaries, and reject any attempt to steer this case far off course. This Court should grant the SEC's motions *in limine*, and focus the parties on the only thing that matters: the SEC's claims against the defendants.

**SEC's Motion *in Limine* No. 1**
**Intent to Deceive Does Not Mean Intent to Harm**

The SEC's motion *in limine* no. 1 addressed a simple, bedrock principle. *See* Dckt. No. 201. Intent to deceive does not mean intent to harm. The SEC does not have the burden to prove that the defendants intended to harm the School Districts. And on the flipside, it is not a defense to argue that the defendants were only trying to help the School Districts, and had their best interests at heart.

At the outset, Stifel feigns agreement. Stifel agrees that it "will **not** argue" that "it should be absolved of liability solely because it did not intend to *harm* the School Districts," or that "it lied to the School Districts but did so with their best interests in mind." *See* Stifel Brf., at 1 (Dckt. No. 263) (emphasis in original). But in the pages that follow, Stifel takes it all back. By page seven, Stifel has washed it all away: "evidence relating to the lack of an intent to harm by Defendants is relevant to the element of Defendants' alleged intent to deceive." *See id.* at 7. By the end, Stifel proclaims that the "lack of an intent to harm" is "important." *Id.* at 8.

Stifel comes to this Court empty-handed. The SEC's motion cited over three dozen cases about the intent to harm. A "mountain of authority" supports the rule that fraud can take place "regardless of whether the defendant hoped, intended, or even expected that the victims would eventually be satisfied." *United States v. Hamilton*, 499 F.3d 734, 735, 737 (7th Cir. 2007). The

2

SEC's brief gave this Court a tour of the mountain. But Stifel cites no cases of its own. The only exceptions are general cases about motions *in limine*. *See* Stifel Brf., at 3 (Dckt. No. 263). Quite literally, Stifel has nothing to offer.

Stifel claims that the SEC's cases are limited to when a defendant "admits to making a materially false statement." *Id.* at 2. Not so. Arguments about intent to harm are out-of-bounds, regardless of whether the defendant admits that he lied.

If anything, Stifel's response proves the SEC's point. Stifel argues that it "believed that the investments were an appropriate solution," and that it "was trying to help the School Districts through the investments." *Id.* at 1, 6. That is not a defense. As Judge Easterbrook has explained, "[S]ecurities fraud is wrongful *even if committed in the belief that lies serve the* issuer's, or *investors', interests*." *SEC v. Koenig*, 557 F.3d 736, 740 (7th Cir. 2009) (emphasis added). The Seventh Circuit ruled that the district court "should have granted the SEC's motion" *in limine*, *id.*, and this Court should do the same.

Stifel insists that it did not intend to put the School Districts "at risk of financial injury." *See* Stifel Brf., at 3 (Dckt. No. 263). Again, Stifel's argument proves the SEC's point. It is not a defense that a defendant did not intend financial injury, as countless cases make clear. "'Intent to harm' is not a component of the scienter element of securities fraud under Section 10(b)." *See United States v. Litvak*, 808 F.3d 160, 179 (2d Cir. 2015); *United States v. Lincecum*, 225 F.3d 647, 2000 WL 1015927, at *1 (2d Cir. 2000) (including Sotomayor, J.) ("To convict a defendant of securities fraud, the government . . . need not prove that the defendant intended to cause harm to the victim of the fraud.").

Stifel also wants to parade in front of the jury all sorts of other types of fraud that have nothing to do with this case. Stifel wants to tell the jury that it did not commit "outright theft, a

3

Ponzi scheme, cooking the books," and so on. *See* Stifel Brf., at 8 (Dckt. No. 263). That is a recipe for confusion. Stifel's goal is transparent – Stifel wants the jury to think that, by comparison, Stifel's conduct wasn't so bad. Talking about other types of unrelated fraud would create more confusion than it would solve, and would only encourage mischief.

"Securities fraud" is not a "charged phrase," either. *Id.* Securities fraud is what the defendants are charged with. Telling the jury that Stifel is accused of fraud does not create a "negative inference." *Id.* at 3. It is what this case is all about.

### SEC's Motion *in Limine* No. 2
### No Lay Opinion Testimony about Intent or Mental States

The SEC's second motion *in limine* made a simple, indisputable point. Witnesses should testify about what they saw and heard, and what they didn't see or hear. They should not speculate about what was going on inside someone else's head. They cannot opine about someone else's mental state, or offer personal theories about another person's state of mind. *See* SEC's Motion *in Limine* No. 2 (Dckt. No. 202).

Stifel basically agrees. Stifel does not respond to any of the SEC's case law. *See, e.g., United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991) (holding that whether investors "believe that they had been defrauded" was irrelevant, and would "improperly shift[]" attention to the "beliefs of the victims"). Stifel does not articulate any reason why it would be appropriate to ask a lay witness to give opinions about someone else's state of mind.

Stifel hedges a little in one sentence. Stifel says that it will not elicit testimony about "what another witness thought or intended" without "laying an appropriate foundation." *See* Stifel Brf., at 1 (Dckt. No. 265). But the problem is broader than foundation. Witnesses cannot speculate about what was going on inside someone else's head. The SEC's motion cited over three dozen cases, and Stifel responds to none of them.

4

Stifel responds by changing the subject. Stifel cites two cases that discuss materiality, not *scienter*. Stifel argues that it should be able to elicit testimony about whether the School Districts thought that the statements from the defendants were important. *Id.* The SEC has never argued otherwise.

This Court should grant the SEC's motion *in limine* no. 2, and exclude any lay opinion testimony about (1) whether the victims believe that they were defrauded; (2) what a witness believes about someone else's mental state; and (3) any legal concept or legal determination.

**SEC's Motion *in Limine* No. 3**
**Reliance, Loss Causation, and the Financial Crisis**

The SEC's motion *in limine* no. 3 rested on the well-established elements in an SEC enforcement action. *See* Dckt. No. 203. Unlike a private plaintiff, the SEC does not have to prove reliance – it makes no difference if the investors relied on a fraudster's misrepresentations. The SEC also does not have to prove loss causation. It makes no difference what caused the investments to fail.

Stifel agrees that reliance "is not an element of the SEC's case," and that such evidence "may not directly relate to an element of one of the SEC's claims." *See* Stifel Brf., at 3, 1 (Dckt. No. 266). Stifel disavows any "intention of arguing to the jury that the SEC must prove reliance in order to prevail on its claims." *Id.* at 3. But in the next breath, Stifel takes it back.

Stifel attempts to sneak-in reliance through the backdoor. Stifel argues that materiality is part of the SEC's case (true), and that reliance "is relevant to the element of materiality" (not true). *Id.* at 3. Materiality is not a round-about way to inject reliance into this case. Congress made the decision that reliance is not part of an SEC enforcement case, and Stifel cannot use materiality to bring it back.

5

Stifel proclaims that, "[a]s the Court is well aware, reliance often informs the analysis of materiality." *See* Stifel Brf., at 4 (Dckt. No. 266). Stifel cites nothing, offering this Court nothing but its say-so. In reality, materiality and reliance "are fundamentally different." *See Greenberg v. Crossroads Sys.*, 364 F.3d 657, 664 (5th Cir. 2004).

The Seventh Circuit has addressed this very point. "Once the Supreme Court excludes reliance as a separate element of the mail-fraud offense, it will not do for appellate judges to roll reliance into materiality; that would add through the back door an element barred from the front." *See United States v. Rosby*, 454 F.3d 670, 674 (7th Cir. 2006); *see also United States v. Ghilarducci*, 480 F.3d 542, 546 (7th Cir. 2007) (reminding parties not to "confuse[] materiality with reliance"). The same is true in securities-fraud cases.

Materiality and reliance are distinct elements, and they mean different things. "[T]he Supreme Court's cases establish an objective, reasonable-investor standard for determining 'materiality.' Reliance, in contrast, focuses on the individual investor-plaintiff." *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1251 n.24 (11th Cir. 2012). Materiality is an objective standard, asking whether a reasonable investor would have considered the misstatements to be important. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013); *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988). Reliance is a subjective standard, asking whether the victims relied on the misrepresentations when they decided to invest. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2186 (2011). Reliance ensures that the "requisite causal connection between a defendant's misrepresentation and a plaintiff's injury exists as a predicate for liability." *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008).

And even then, a material fact does not need to be so important that it "would have caused the reasonable investor to change his vote." *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Instead, a statement only needs to be important enough that it "would have assumed actual significance in the deliberations." *Id.*; *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000) (holding that plaintiff need not prove that victims "would have acted differently if an accurate disclosure was made"). "[T]o be material, a fact need not be outcome-determinative – that is, it need not be important enough that it would necessarily cause a reasonable investor to change his investment decision." *SEC v. City of Miami, Florida*, 988 F. Supp. 2d 1343, 1357 (E.D. Fla. 2013); *see also SEC v. Meltzer*, 440 F. Supp. 2d 179, 190 (E.D.N.Y. 2006) (same); *SEC v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 703 (S.D.N.Y. 2005); *Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1533 (2d Cir. 1991) ("[I]t is well-established that a material fact need not be outcome-determinative.").

Materiality does not mean whether the investors in question relied on the misrepresentations by the defendants. Materiality is not a vehicle for Stifel to bootstrap reliance into this case. Reliance simply does not belong.

This Court should see through what Stifel is hoping to achieve. Stifel wants to suggest to the jury that the School Districts relied on **RBC**, not the defendants. That strategy has been Stifel's battleplan from the very beginning. This Court should put a stop to it, from day one of trial.

The relationship between the defendants and the School Districts is not a reason to make reliance arguments at trial, either. *See* Stifel Brf., at 4. Stifel and Noack acted as a financial advisor to the School Districts, and that relationship explains why they recommended CDOs in

7

the first place.  Both parties are free to explore the history, scope, and nature of the relationship.  But the relationship is not a pretext to inject reliance back into this case.

Stifel then pulls language from the Complaint saying that the School Districts relied on the defendants.  *See* Stifel Brf., at 3-4.  The Complaint did so because the world needed to know that the School Districts relied on Stifel and Noack to their detriment.  The Complaint was broader than the elements of the claims – and the Complaint cannot expand what the SEC has to prove at trial.  It is true that the School Districts relied on Stifel and Noack.  But it is equally true that the SEC does not have to prove it at trial.

The right outcome is straightforward.  The SEC will not argue that the School Districts relied on the misrepresentations when they decided to invest.  And on the flipside, the defendants will not argue that the School District did not rely on the misrepresentations, or that they relied on someone else.  Reliance is not part of the case, so there is no need for evidence about reliance at trial.

The same, simple solution applies to loss causation.  The jury will naturally want to know whether the investments succeeded, or failed.  But the evidence needs to stop there.  The SEC will not make any argument that the defendants caused the School Districts to suffer a loss.  And on the flipside, the defendants will not argue that they did not cause the School Districts to suffer a loss, or that something *else* caused the losses.  Loss causation should be out of the case.

Stifel musters almost no resistance about the financial crisis.  The SEC's motion *in limine* demonstrated that trial should not become a referendum on the financial crisis.  The financial crisis is worse than irrelevant.  It would distract the jury by raising an emotionally charged subject.  And raising the financial crisis would unfairly prejudice the SEC.  The defendants want to paint an unfair picture:  the financial crisis caused the losses, so they are not to blame.

8

Stifel barely responds. Stifel argues that the financial crisis is relevant to the falsity of the misrepresentations. *See* Stifel Brf., at 8 (Dckt. No. 266). Not so. The falsity of the misrepresentations is measured as of the time that Noack made them. The statements by the defendants were false when they spoke them in 2006, and the performance of the economy in 2008-2009 cannot come to their rescue. This Court should declare that testimony about the financial crisis is out-of-bounds.

**SEC's Motion *in Limine* No. 4**
**Don't Blame the Victims**

The SEC's motion *in limine* no. 4 was equally straightforward. Stifel cannot defend a fraud case by claiming that the School Districts were negligent, or should have been more careful, or should have been more diligent. "Blame the victim" is not a defense. *See* SEC's Motion *in Limine* No. 4 (Dckt. No. 204).

Stifel agrees. Stifel represents that it "does not intend to 'blame the victims' in defense" of the SEC's claims. *See* Stifel Brf., at 1 (Dckt. No. 267). And again: "Stifel does not intend to argue that it cannot be found liable because the investors were 'negligent' or 'at fault' with regard to the investments." *Id.*

But then Stifel starts hedging once again. Stifel apparently wants to suggest *implicitly* what it cannot argue *explicitly*. Stifel raises its hands in a display of innocence, claiming that it cannot be blamed if the evidence "may conceivably leave jurors wondering if the investors should have done something differently." *Id.* Stifel wants to make an improper argument by wink-wink, nudge-nudge. Stifel wants to leave jurors with an inescapable impression – the School Districts are to blame – even though Stifel can't say so out loud.

This Court should foreclose any veiled attempt to blame the School Districts. If Stifel cannot blame the School Districts through the front door, then Stifel cannot be allowed to blame

9

the School Districts through the back door, either.  Any statements that the School Districts

"should have _____" should be out-of-bounds.  The SEC's motion *in limine* offered 12

bullet points of examples.  *See* Dckt. No. 204, at 5.

Stifel reveals its true intentions on the next page.  *See* Stifel Brf., at 2 (Dckt. No. 267).

Stifel argues that the standard for materiality is whether a statement was important to a

reasonable investor.  So, Stifel argues that it is fair game to argue whether the School Districts

acted ***reasonably***.  According to Stifel, materiality allows a defendant to argue "what a

reasonable investor would have done or believed" and "what a reasonable investor should have

thought."  *Id.*; *see also id.* ("Measuring the School Districts against a reasonable investor is

unavoidable.").  Stifel cites no case law.  Instead, Stifel offers a play-on-words.

The Seventh Circuit has rejected that argument time and time again.  *See generally* SEC's

Motion *in Limine* No. 4 (Dckt. No. 204).  There is no such thing as an "unreasonable investor"

defense.  The federal securities laws protect ***all*** investors – even ***unreasonable*** investors.  In fact,

naïve and gullible investors are the ones most in need of protection.

"As countless cases affirm, a victim's negligence is not a defense to an intentional tort,

such as fraud."  *See Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 573 (7th Cir.

2004) (Posner, J.); *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991) ("Those who

are gullible, as well as those who are skeptical, are entitled to the protection of the mail fraud

statute."); *United States v. Davis*, 226 F.3d 346, 358 (5th Cir. 2000) (affirming an instruction that

the "naivety, carelessness, negligence, or stupidity of a victim does not excuse criminal

conduct").

As Judge Posner explained, "It would be very odd for the law to protect only those who,

being able to protect themselves, do not need the law's protection.  In fact picking on the

10

vulnerable normally makes your conduct more rather than less culpable, earning you a heavier sentence." *See United States v. Coffman*, 94 F.3d 330, 334 (7th Cir. 1996) (Posner, J.). "The fact that a reasonable person would not have been deceived would be no more relevant than the fact that a murder victim would have survived had he been wearing a bulletproof vest." *Id.*

Materiality is an entirely separate issue. Materiality simply addresses whether a statement would have been important to a reasonable investor. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988). Materiality does not make it open season for defendants to argue that the victims were unreasonable.

*Scienter* also does not provide an opening to blame the victims, as Stifel suggests. *See* Stifel Brf., at 3 (Dckt. No. 267). Stifel can present evidence about their conversations with the School Districts. But Stifel cannot argue that the School Districts did something wrong, and therefore Stifel did not intend to defraud them.

Suitability is not a reason to blame the victims, either. *See* Stifel Brf., at 3 (Dckt. No. 267). Suitability involves whether the School Districts understood the product, and whether CDOs fit their investment needs. Suitability is not an invitation to blame the School Districts for making the investments in the first place.

Finally, the size of the OPEB liabilities is not a reason to blame the School Districts. Stifel can elicit evidence about the size of the liabilities – but should not make a big point about it, either. Stifel can make the point, but then needs to let it go. Stifel cannot create the impression that the School Districts are to blame for creating the OPEB mess in the first place. It is not a defense that the victims dug themselves a hole.

This Court should exclude any evidence or suggestions that blame the School Districts because "blame the victim" is not a defense. This Court should prohibit any suggestions that the

11

School Districts were negligent, careless, naïve, gullible, or unreasonable when they followed Stifel's recommendation to invest in CDOs.

## SEC's Motion *in Limine* No. 8
## The State Court Settlement

The SEC's motion *in limine* no. 8 addressed payments that Stifel made to the School Districts to settle the state-court case.  *See* Dckt. No. 208.  A defendant in an SEC enforcement action cannot use a private settlement to escape liability.  An SEC enforcement action is not about damages, so any suggestion that the School Districts have been "made whole" is out of bounds.  *Id.*  Stifel also cannot try to curry favor with the jury by suggesting that they "stepped up to the plate" by settling with the School Districts.  *Id.* at 5.

Stifel agrees.  Stifel "does not oppose the SEC's Eighth Motion in Limine."  *See* Stifel Brf., at 1 (Dckt. No. 270).  But Stifel includes a catch:  "unless the SEC opens the door."

This Court should set an even-handed ground rule.  The SEC should not argue that Stifel is liable for fraud because the School Districts sued Stifel for fraud.  And Stifel should not argue that it is not liable for fraud because Stifel settled with the School Districts.

But that even-handed approach needs to extend to the RBC Settlement, too, as a package deal.  This Court should exclude all references to the SEC's suit against, and settlement with, RBC.  And this Court also should exclude all references to the School Districts' suit against, and settlement with, Stifel.  The focus of trial should be this case, not some other case.

The fairness and symmetry of this approach speaks for itself.  If other settlements are out-of-bounds, then they need to be out-of-bounds for everyone.  No one can complain if the same approach applies to both settlements.  Stifel cannot genuinely expect to tell the jury about RBC's settlement with the SEC, and expect to keep the jury in the dark about Stifel's settlement with the School Districts.

12

The only proper use of the state-court materials is for possible impeachment. A party conceivably could impeach a witness with a prior inconsistent statement in the state-court case. But the SEC does not expect that situation to arise. And even then, a prior inconsistent statement would not open the door to any reference to settlements. All settlements – including Stifel's settlement with the School Districts, and RBC's settlement with the SEC – should be out of bounds at the upcoming trial.

## SEC's Motion *in Limine* No. 9
## No Reliance on the Advice of Counsel

The SEC's motion *in limine* no. 9 addressed any suggestions that the defendants reasonably relied on the advice of counsel. *See* Dckt. No. 209. Stifel agrees that it "will not argue at trial (and has never argued at any point in this litigation) that it relied on counsel in connection with any of the alleged representations or omissions." *See* Stifel Brf., at 1 (Dckt. No. 271).

That concession does not make the SEC's motion "moot," as Stifel suggests. *Id.* Quite the opposite – Stifel's concession means that the motion should be granted. This Court should grant the motion and set bright-line boundaries. There should be no ambiguity about what statements would be out-of-bounds.

Stifel largely responds by changing the subject. Stifel points out that the ***School Districts*** had a lawyer of their own. *Id.* at 1-2. The SEC's motion did not address the lawyer for the School Districts, so it is not a reason to deny the motion.

As an aside, Stifel cannot blame the lawyer for the School Districts, either, for the same reason why it cannot blame the School Districts themselves. *See* SEC's Motion *in Limine* No. 4 (Dckt. No. 204). A fraudster cannot blame the victims, and cannot blame the victims' lawyer. Functionally, it is the same thing.

13

Stifel does not take issue with the first half of the SEC's motion *in limine*, so this Court should grant it. *See* SEC's Motion *in Limine* No. 9, at 2-8 (Dckt. No. 209). Stifel does object to the second part of the SEC's motion about suggesting that it has an advice-of-counsel defense through the backdoor. But Stifel reads too much into the SEC's request to exclude any undue references to the role of lawyers.

The SEC never requested a blanket exclusion on all references to lawyers. The point was simply that Stifel cannot draw undue attention to the fact that its lawyers played a role in the deals. *See* SEC's Motion *in Limine* No. 9, at 9 – 12 (Dckt. No. 209). The reason is simple: Stifel cannot create the impression that it has an advice-of-counsel defense, because Stifel has no advice-of-counsel defense. Drawing undue attention to the presence of lawyers would confuse and mislead the jury, by suggesting that lawyers signed-off on the conduct. *See SEC v. Kokesh*, 09-c-0121, 7-21-14 Order, at 5 (D. N. Mex. 2014) (granting the SEC's motion *in limine* about the role of lawyers) ("Such evidence is likely to be misinterpreted by a lay jury as implicit or explicit 'blessings' of the legality and adequacy of all aspects of the transactions at issue.") (filed with this Court at Dckt. No. 215-34).

Judge Forrest drew that line in *Tourre*. The Court barred "extensive evidence on the presence and involvement of lawyers" because it would be "confusing and unduly prejudicial." *See SEC v. Tourre*, 950 F. Supp. 2d. 666, 664 (S.D.N.Y. 2013). There is too much risk that the jury would misconstrue the involvement of lawyers as "blessing" the conduct. *Id.* Judge Rakoff drew the same line in *Stoker*. *See SEC v. Stoker*, 11-cv-7388, 7-23-12 Tr., at 889 – 90 (S.D.N.Y. 2012) ("I am not sure I understand the relevance of the role of counsel in offering circulars, etc., if there's no reliance on counsel defense. . . . Put another way, what I think we have is an advice-of-counsel defense disguised as explaining the process, giving the context or whatnot.")

14

(filed with this Court at Dckt. No. 215-36).  The Court instructed parties to cover exhibits "without focusing on counsel."  *Id.* at 986 – 87.

This Court should follow the same line here.  This Court should set a standard:  the parties should not make undue references to the involvement of lawyers in the deals.  That standard is not too vague for this Court to apply during the heat of trial.  Other courts have done so.  This Court should draw the line now, and decide later whether the line is crossed.

The SEC does agree with Stifel on one point.  This Court should instruct the jury that the defendants have no advice-of-counsel defense.  *See* Stifel Brf., at 3 (Dckt. No. 271).

## SEC's Motion *in Limine* No. 10
## The Jury Cannot Overturn This Court's Rulings

The SEC's motion *in limine* no. 10 addressed this Court's ruling on the motion to dismiss.  *See* Dckt. No. 210.  Based on Stifel's response, one wonders why this Court bothered to rule on Stifel's motion to dismiss at all.  In Stifel's book, everything is up for grabs.  Stifel thinks that it is free to ask the jury to accept arguments that this Court already rejected.  But a trial is not an appeal, and the jury is not the Seventh Circuit.  Stifel will have to wait.

It is striking how Stifel tries to downplay its own motion to dismiss.  Stifel claims that a motion to dismiss "addresses only the sufficiency of the allegations of the Complaint to raise a fact issue for trial."  *See* Stifel Brf., at 2 (Dckt. No. 272).  Not here.  Stifel went outside the pleadings, and attached the closing documents themselves.

Stifel asked this Court to address the issue on "the merits."  *See* Stifel Mem. in Support of its Mtn. to Dismiss, at 5 (Dckt. No. 17).  As requested, this Court addressed Stifel's position "on the merits," and rejected Stifel's position.  *See* 9/14/12 Order, at 23 (Dckt. No. 28).  This Court considered whether the misrepresentations were "immaterial and nonactionable puffery," and answered "No" 13 out of 14 times.  *See id.* at 13 – 19.  This Court also ruled on whether the oral

15

misrepresentations were "contradicted by an accurate written statement." *Id.* at 20. Once again, this Court gave a simple ruling: "No."

It is not the jury's place to answer "Yes" when this Court ruled "No." This Court's ruling is the law of the case. Stifel cannot invite the jury to sit in judgment on this Court's ruling. Stifel chose not to file a motion for reconsideration, and chose not to seek an interlocutory appeal. So, in the meantime, Stifel will have to wait until final judgment.

Stifel gains no traction by claiming that materiality is a question of fact. *See* Stifel Brf., at 2 (Dckt. No. 272). It is a question of law – not a question of fact – whether closing documents contradict oral misrepresentations. After all, that is why Stifel made the argument at the motion-to-dismiss stage. It was a purely legal argument then, and it is a purely legal argument now.

It made perfect sense for this Court to resolve this issue as a threshold legal matter. Juries are ill-equipped to decide whether written disclosures foreclose a claim based on oral misrepresentations. Reading agreements, and holding them up to the light of the case law, is what courts do, not what juries do. It is the province of courts – not juries – to decide whether closing documents contradict oral misrepresentations.

Stifel downplays its motion to dismiss, claiming that it was limited to the closing documents on the first deal involving West Allis-West Milwaukee. *See* Stifel Brf., at 4 (Dckt. No. 272). That is not what Stifel argued four years ago. Stifel asked this Court to dismiss "***all*** the claims in Plaintiff's Complaint," not merely the claims about the first deal. *See* Stifel Mtn. to Dismiss, at ¶ 1 (emphasis added) (Dckt. No. 16); Stifel Mem. in Support of its Mtn. to Dismiss, at 6 (Dckt. No. 17) (asking this Court to dismiss the "entire Complaint"). Stifel represented to this Court that all other closing documents were effectively the same. *See* Stifel Mem. in Support of its Mtn. to Dismiss, at 13 – 16 (Dckt. No. 17); *see also id.* at 4 n.3 ("Nevertheless, all

the prospectuses and prospectus supplements contain substantially similar risk disclosures."); *id.* at 13 n.5 ("Nevertheless, ultimately there will be no dispute that all of the Districts received similar disclosures in connection with their subsequent transactions."). If the documents were "substantially similar" then, they are "substantially similar" now. *Id.*

To be clear, the SEC is not arguing that the misrepresentations were material as a matter of law, as Stifel suggests. *See* Stifel Brf., at 3, 5 (Dckt. No. 272). The SEC is not suggesting that there was a "finding of materiality." *Id.* Stifel is free to make **other** arguments about materiality, if it is so inclined. But Stifel cannot simply repeat arguments that this Court already rejected as a matter of law. A trial is not a do-over for a motion to dismiss.

<h3 style="text-align:center">SEC's Motion <i>in Limine</i> No. 11<br>Materiality Contests</h3>

The SEC's motion *in limine* no. 11 addressed improper arguments about materiality. *See* Dckt. No. 211. It is not a defense to argue that someone else said something that was important, or said something that was **more** important. It would confuse and mislead the jury to suggest otherwise. Stifel agrees.

A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important" in deciding whether to buy or sell a security. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Materiality is not a contest. Materiality does not mean that the statement in question was more important than everything else. *See, e.g., SEC v. Monterosso*, 768 F. Supp. 2d 1244, 1265 (S.D. Fla. 2011) ("[T]he materiality inquiry is not concerned with what disclosures may be *most* important to a reasonable investor.") (emphasis in original); *United States v. Ferguson*, 553 F. Supp. 2d 145, 155 n.13 (D. Conn. 2008) ("[A] misstatement is material so long as investors would consider the misstated facts significant in making investment decisions, even if investors would consider other information to be more

17

important."). Materiality is not mutually exclusive – the fact that one statement is material does not mean that some other statement is not material.

Stifel does not respond to any of the SEC's case law, with only one exception. *See United States v. Reyes*, 2007 WL 2554227 (N.D. Cal. 2007). Stifel cites the *Reyes* case in its response, but it undermines Stifel's position. "[A]though investors consider some information *more important* than non-cash compensation expenses, it does not follow that they consider stock options expenses *unimportant.*" *Id.* at *3 (emphasis in original). A statement is not **un**important simply because something else is more important.

Throughout this case, Stifel has argued that its statements were not material because RBC made statements that were more important. The SEC's motion *in limine* cited examples. *See* Dckt. No. 211, at 1. For example, only a few months ago, Stifel argued that "RBC's statement regarding credit risk was the source that **mattered most** to the investors." *See* Stifel SJ Resp. Brf., at 18 (Dckt. No. 170) (emphasis added).

Stifel now claims that it "has never asserted and does not intend to assert at trial that any statement allegedly made by Stifel is immaterial because RBC made a statement that was '*more* material.'" *See* Stifel Brf., at 2 (Dckt. No. 273) (emphasis in original). This Court should grant the SEC's motion, and make it official. Stifel cannot argue to the jury that its statements were not material because RBC's statements were more material.

That ruling would protect the jury from confusion, and streamline trial, too. Stifel hopes to parade in front of the jury countless other statements by **RBC**, and ask again and again whether RBC's statements were important, too. Left unchecked, Stifel's approach would derail the trial, waste considerable time, and turn it into one big sideshow about RBC.

18

The depositions illustrate the point. During depositions of the School Districts, Stifel barely asked any questions about what Noack said. Instead, Stifel focused on RBC. Stifel asked the witnesses – at great length – whether statements by *RBC* were important to the School Districts.

It makes no difference. It does not matter if RBC said something that was important, or more important. The only thing that matters is whether Stifel's statements were important. This Court should focus the evidence on issues that matter, and grant the SEC's motion.

Stifel's response is soaked in hyperbole, claiming that such an Order would "deny Stifel a full and complete opportunity to defend itself." *See* Stifel Brf., at 1 (Dckt. No. 273). Hardly. Stifel is free to ask the witnesses whether *the defendants'* statements were important. Stifel can litigate the materiality of RBC's statements in the state-court lawsuit against RBC.

**SEC's Motion *in Limine* No. 12**
**It Is Not a Defense that RBC Manufactured and Sold the CDOs**

The SEC's motion *in limine* no. 12 made clear that the defendants cannot escape liability by arguing that RBC manufactured and sold the CDOs. *See* Dckt. No. 212. The defendants agree. Stifel represents that it "does not intend to argue" that "Stifel could not be liable merely because the Royal Bank of Canada ('RBC') manufactured the CDOs." *See* Stifel Brf., at 1 (Dckt. No. 274).

The parties agree that no such defense exists. So, this Court should grant the motion.

Stifel argues that it must be allowed to present evidence that RBC manufactured the CDOs. *See* Stifel Brf., at 1-2 (Dckt. No. 274). That is not the issue. The SEC is not arguing that Stifel cannot mention that RBC manufactured the product. Instead, the SEC's point is simple: the fact that RBC manufactured the CDOs is not a reason for Stifel to escape liability.

19

Stifel cannot lead the jury astray, and create the misimpression that only the manufacturer and seller of a financial product can be held liable. At times, Stifel has tried to wash its hands of the deals by claiming that it did not manufacture or sell the CDOs. Stifel should not create any such misimpression with the jury.

Stifel ends its response on the wrong note. Stifel argues that RBC "was in a better position to have accurate and complete information than Stifel." *See* Stifel Brf., at 2 (Dckt. No. 274). It is not a defense to argue that someone else had more information, or better information. Stifel is responsible for its own conduct.

This Court should protect the jury from confusion, and exclude any suggestions that the defendants are not liable because RBC manufactured and sold the CDOs.

### SEC's Motion *in Limine* No. 13
### No New Expert Opinions at Trial

The SEC's motion *in limine* no. 13 asked this Court to enforce the Federal Rules about the disclosure of expert opinions. *See* Dckt. No. 213. The Federal Rules require experts to disclose "all opinions" in a written report, and do so long before trial. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). The upcoming trial is no exception. In fact, this Court's Orders – there are at least four examples – required the same thing. *See, e.g.,* Dckt. Nos. 39, 68, 83, 95.

Stifel "does not oppose" the SEC's motion, with a catch. Stifel opposes an "overly restricted view of what it means to be an 'undisclosed expert opinion.'" *See* Stifel Brf., at 1 (Dckt. No. 275). Stifel throws up its hands, claiming that it is "difficult to put overly restrictive parameters on the testimony of those experts." *Id.*

The issue is not complicated. If the opinion was contained in the expert report, then it was disclosed, and is fair game at trial. If the opinion was not contained in the expert report, then it was not disclosed – and cannot be unveiled for the first time at trial.

Stifel claims that it cannot "know[] precisely what the witnesses will be asked." *See* Brf., at 1 (Dckt. No. 275). The right answer is straightforward. Experts cannot be asked to give new opinions on the witness stand.

District courts routinely grant motions *in limine* and bar experts from offering new opinions at trial. The SEC's motion *in limine* cited 10 cases as examples. *See* Dckt. No. 213, at 2-3. Stifel responded to none of them.

Instead, Stifel cites three cases, but they do not change the Federal Rules of the game. The first case involved a district court who only allowed the expert to "read the report" and "not one word more." *See Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1202-03 (6th Cir. 2006). No one is taking that position here. The other two cases involved experts who elaborated on opinions that were disclosed in their reports. *See Muldrow ex re. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (rejecting the notion that experts can only read their report); *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 63 (1st Cir. 2011) (holding that the expert testimony "fell within the scope of his previously disclosed report").

Experts can explain the opinions that are disclosed in their reports. No one is holding experts to "magic words." Experts can use different words to explain their opinions. They can give examples, explain concepts in plain English, offer analogies to help the jury understand their opinions, and so on. Experts can communicate their opinions in different ways – so long as they disclosed the underlying opinions and the "basis and reasons for them" in their reports. *See* Fed. R. Civ. P. 26(a)(2)(B)(i).

But experts cannot unveil new opinions at trial. This Court should grant the SEC's motion *in limine*, and prohibit experts from offering any opinions that they did not disclose in their reports.

21

The SEC's motion *in limine* no. 14 addressed a collection of highly prejudicial statements that have no legitimate place in any courtroom. This Court should exclude any statements about (1) any adverse impact that this case may have had on the defendants; (2) any adverse impact that a verdict might have on the defendants in the future; (3) unrelated SEC cases and enforcement priorities; and (4) the SEC's charging decisions. *See* Dckt. No. 214.

District courts widely exclude such statements because they are inflammatory, highly prejudicial, and completely irrelevant to the issues at hand. The SEC's motion *in limine* included several string cites of supporting cases. In fact, the case law is so settled that defendants often agree to them, without the need for a motion *in limine*.

But not these defendants. Stifel and Noack oppose the SEC's motion, but do not respond to any of the case law. And they cite almost none of their own.

Stifel begins by promising that it will not "argue that the jury should not find liability against Defendants because an adverse verdict would be damaging to them." *See* Stifel Brf., at 1 (Dckt. No. 277). That is a step in the right direction. District courts widely hold that the potential impact on the defendant has no probative value, and would distract the jury from the issues at hand. *See* Dckt. No. 214.

But in the next breath, Stifel takes it away. Stifel wants to argue that it did not commit fraud because it was aware of "serious consequences of committing securities fraud." *See* Stifel Brf., at 1 (Dckt. No. 277). That is the same old fish, wrapped in new paper, and the aroma has not improved. It would taint the jury's deliberations – and create the potential for a mistrial – if they hear any reference to the potential impact that this case could have on the defendants.

22

In any event, that argument has no probative value. A defendant cannot argue that he did not violate the law because violating the law has serious consequences. Stifel offers no support for the notion that the more serious the conduct, the less likely the defendant did it. Stifel cites three cases, but they are off topic. They address motive. None of them blessed the argument that a defendant is less likely to have committed fraud if the defendant knew the consequences.

The rest of the SEC's motion *in limine* addressed unrelated matters about the SEC, such as the SEC's enforcement priorities, the SEC's handling of its regulatory responsibilities, the SEC's response to the financial crisis, and so on. All such topics are wildly off-topic.

Stifel proclaims that it is stumped, adding that it is "at a loss to see how an order could be crafted to respond to such a broad, vague request." Suffice it to say that other district courts have not experienced any such difficulty. If anything, it is completely straightforward. The SEC cited four examples of cases in the last three years that have granted similar requests. *See* Dckt. No. 214, at 5-6. This Court should do the same.

## Conclusion

This Court should streamline the trial, narrow the issues, and protect the jury from prejudicial arguments about non-defenses. This Court should grant the SEC's motion *in limine* nos. 1, 2, 3, 4, 8, 9, 10, 11, 12, 13, & 14.

Dated:  August 22, 2016                    Respectfully submitted,


                                           s/ Steven C. Seeger
                                           Steven C. Seeger (Seegers@sec.gov)
                                           Robert M. Moye (Moyer@sec.gov)
                                           Alyssa A. Qualls (Quallsa@sec.gov)
                                           Jeffrey A. Shank (Shankj@sec.gov)
                                           Ariella O. Guardi (Guardia@sec.gov)
                                           Kevin A. Wisniewski (Wisniewskik@sec.gov)
                                           175 West Jackson Boulevard, Suite 900
                                           Chicago, IL  60604-2615
                                           (312) 353-7390
                                           (312) 353-7398 (fax)

                                           *Attorneys for Plaintiff*
                                           *U.S. Securities and Exchange Commission*