UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

        Plaintiff,

        v.                         Case No. 11-C-0755

STIFEL, NICOLAUS & CO., INC. and
DAVID W. NOACK,

        Defendant.

---

ORDER GRANTING IN PART AND DENYING IN PART RENEWED MOTION TO
STRIKE AMENDED ANSWERS TO ADMISSIONS (DOC. 128)
AND GRANTING MOTIONS TO DEEM REQUESTS ADMITTED (DOCS. 132, 134)

The Securities and Exchange Commission has filed a motion against each defendant seeking to have certain requests for admission deemed admitted. Meanwhile, Stifel Nicholas filed a renewed motion to strike portions of the SEC's amended responses to Stifel's requests for admission.

Requests for admission are governed by Fed. R. Civ. P. 36, which provides that a party may serve requests for admission regarding the truth of any nonprivileged matter relevant to a party's claim or defense. Fed. R. Civ. P. 36(a)(1), 26(b)(1). Requests for admission should be simple and concise and should not state half-truths requiring the answering party to qualify responses. *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-cv-2192–JWL–DJW, 2008 WL 2222022, *5 (D. Kan. 2008).

Rule 36 provides that an answering party may admit the matter, deny it, or state in detail why it cannot truthfully admit or deny it. Fed. R. Civ. P. 36(a)(4). However, the rule adds that when good faith requires that a party qualify an answer or deny only a part of a

matter, the answer must specify the part admitted and qualify or deny the rest. *Id.* Further, the rule allows a party to object. Fed. R. Civ. P. 36(a)(5). [1]

"A denial must fairly respond to the substance of the matter." Fed. R. Civ. P. 36(a)(4). "It is expected that denials will be forthright, specific, and unconditional." 8B Charles Alan Wright, et al., *Federal Practice & Procedure* § 220 (3d ed. 2010). However,

> [i]f the responding party cannot simply admit the matter stated in the request without some explanation or qualification, the responding party may admit with qualification. An admission may require qualification when the request is ostensibly true, but the responding party cannot in good faith admit it without some necessary contextual explanation to remedy any improper inferences. When good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest.

7 James Wm. Moore et al., *Moore's Federal Practice* § 36.11[5][a] (Matthew Bender 3d ed. 2016). "Generally, qualification is permitted if the statement, although containing some truth, 'standing alone out of context of the whole truth . . . convey[s] unwarranted and unfair inferences.'" *Flanders v. Claydon*, 115 F.R.D. 70, 72 (D. Mass. 1987); *accord Caruso v. Coleman Co.*, No. Civ. A. No. 98-CV-6733, 1995 WL 347003, *1 (E.D. Pa. June 7, 1995) (stating that if a referenced statement is misquoted or taken out of context a party should deny the admission or if necessary qualify it).

A responding party may claim lack of knowledge or information as a reason for failing to admit or deny a request "only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to

---

[1] The court rejects Stifel's argument that the only options for a respondent are to admit the requests, deny them, or state a lack of knowledge. The rule permits objections and qualifications. *See* 7 James Wm. Moore et al., *Moore's Federal Practice* § 36.11[4] (Matthew Bender 3d ed. 2016) (indicating that a response to a request to admit may consist of, among other things, any of the following or a combination thereof: an admission, a denial, objections, a statement of lack of information or knowledge, or a statement of reasons why the responding party cannot admit or deny).

2

admit or deny." Fed. R. Civ. P. 36(a)(4). However, the respondent's mere statement that it made a reasonable inquiry is not necessarily adequate "if the evidence does not show that the party did, in fact, make a reasonable inquiry." Moore et al., *supra*, § 36.11[5][d]; *see Asea, Inc. v. So. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) (rejecting argument that a statement that reasonable inquiry was made is sufficient to comply with the rule and holding that reasonable inquiry must actually be made); *Napolitano v. Synthes USA, LLC*, 297 F.R.D. 194, 198-99 (D. Conn. 2014) (finding that a response claiming reasonable inquiry must state specifically what efforts have been made to obtain requisite knowledge or why reasonable efforts would be futile). [2]

> [A] party generally will not be required to make inquiry of a complete stranger to obtain information. On the other hand, the reasonable inquiry requirement goes beyond parties to the suit, and parties have been required to make inquiry of a person not a party to the action in order to respond to Rule 36 admissions. In this regard, one court has found that a party must make inquiry of a third party when there is some identity of interest manifested, such as both being parties to the litigation, a present or prior relationship of mutual concerns, or active cooperation in litigation, and when there is no manifest or potential conflict between the party and the person of whom inquiry will be made.

Moore et al, *supra*, § 36.11[5][d].

A responding party may validly object to a request that exceeds the scope of discovery. Moore et al., *supra*, § 36.11[5][c]; *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 363 (D. Md. 2012). And a responding party may object based on vagueness,

---

[2] Stifel and Noack cite *Adley Express Co. v. Highway Truck Drivers & Helpers, Local No. 107*, 349 F. Supp. 436, 451-52 (E.D. Pa. 1972), for the position that to satisfy Rule 36(a)(4) the answering party need merely state that it made a reasonable inquiry and that the information obtained was insufficient to enable an admission or denial. The court disagrees. Rule 36(a)(4) requires "detail" as to why the answering party cannot truthfully admit or deny. The authorities noted above postdate the forty-four-year-old *Adley*, and the Ninth Circuit in *Asea* expressly rejected *Adley* on this point. The statement in *Adley* was dicta—the court indicated only that "it would appear that a mere statement" was sufficient to comply with the rule and that the respondent there had actually provided more than a "mere statement." 349 F. Supp. at 452. And even the *Adley* court recognized that the requesting party could challenge the statement. 349 F. Supp. at 452.

3

i.e., when "the respondent cannot answer because the meaning of the request is uncertain." Moore et al, *supra*, § 36.11[5][c]; *Caruso*, 1995 WL 347003, at *5. But inadmissibility at trial is not a valid objection. *Id.* at *7-*8.

The party requesting the admission may move for a determination regarding the sufficiency of the responses. If the response does not comply with Rule 36, the court may order that the matter be admitted or that an amended answer be served. Moore et al., *supra*, § 36.12[1], [3].

A. Motion by the SEC regarding Stifel's responses (Doc. 132)

The SEC moves for an order deeming some of its requests admitted by Stifel. The requests fall into two general categories: (1) the authenticity of certain recordings, and (2) statements of codefendant David Noack, former Stifel employee, allegedly made to school districts. In response to the motion, Stifel stipulated to the authenticity of the records "absent new and unforeseen information coming to light" and to the statements that Noack, at deposition, confirmed he had made (totalling twenty-six or so of the approximately fifty Noack statements in the requests for admission).

The SEC contends that because Stifel's stipulation regarding authenticity of the records is conditioned, the court should grant the SEC's motion. Regardless, the authenticity issue is moot. Any "new and unforeseen information coming to light" would have to be substantial and out of left field for the court to allow Stifel to escape its stipulation.

As for the remaining Noack statements, the court finds Stifel's responses inadequate. For instance, request 24 of the SEC's second set of requests asked that Stifel

4

stipulate to a particular quote being made by Noack at a particular meeting. Stifel responded:

> Objection. Because this request concerns an alleged isolated statement that was made as part of extended discussions, Stifel objects to the request as vague, ambiguous and argumentative in that it does not incorporate the context of the statement. Subject to its objections, Stifel states that it is not aware of any current employee who was present for the meeting identified in this request and who is able to authenticate the recording. Accordingly, after making reasonable inquiry, the information known to Stifel or that it can readily obtain is insufficient to enable it to admit or deny this request.

(Doc. 133 Ex. E at 13.)

But the objection fails. Stifel was not asked to admit what the statement meant or whether it was true, so context is not required. The request is clear and unambiguous: was the statement made or not?

And the response claiming lack of knowledge and purported reasonable inquiry is insufficient. Stifel and Noack are codefendants. Moreover, Noack is a former Stifel employee and the requests for admission concern purported statements by Noack while he was an employee. And importantly, Stifel and Noack appear to have signed an agreement pursuant to which Noack must cooperate with Stifel regarding defense of any lawsuit relating to that employment. (Doc. 133 Ex. H at 2.) Thus, reasonable inquiry by Stifel required more than simply noting the lack of a current employee present at the meeting. Reasonable inquiry required reasonable inquiry of Noack, and information from Noack was readily obtainable.

In opposition to the motion Stifel did not argue that it should be given an opportunity to revise its responses rather than having them deemed admitted. Therefore, the motion

5

will be denied as to the recording-authenticity requests but granted as to the Noack-quote requests.

B.     Motion by the SEC regarding Noack's responses (Doc. 134)

The SEC moves for an order deeming admitted various requests propounded on Noack. Similar to the motion relating to Stifel, the requests fell into two general categories: (1) the authenticity of recordings, and (2) statements Noack allegedly made to school districts during meetings. As confirmed by the SEC in its reply brief, the motion covers the first set of requests to admit (concerning the authenticity of recordings) and requests 6, 7, 9-15, 17-20, 22-27, 30-38, and 40-69 of the second set (regarding alleged statements by Noack).

In response, Noack contends that he should not be expected to authenticate recordings he did not create or maintain, he should not be expected to verify statements he made eight or nine years ago from unauthenticated recordings, and the SEC should bear the burden of getting the recordings admitted at trial.

Only two representative requests and responses need be discussed. Request 2 of the first set of requests asked Noack to "[a]dmit that SEC-Wisconsin-E-000004, -0000005, and -0000006 are accurate recordings of statements made by you (among others) at the meeting of the Whitefish Bay School Board on November 15, 2006." (Doc. 135 Ex. A at 3.) Noack responded: "Subject to his objections, Noack states that he is not able to authenticate the recording. Accordingly, Noack is without sufficient information or knowledge to admit or deny this request." (Doc. 135 Ex. D at 4.) Request 25 of the second set asked Noack to

6

> [a]dmit that you made the following statement at the Waukesha School Board meeting on August 30, 2006: "After we do this initial phase, we'd be coming back in front of you saying, here's where the market is—you know, again, sticking to AA and AAA." *Hear* 8/30/06 Waukesha Recording, SCE-Wisconsin-E-0000003, at 6:08 to 6:15.

(Doc. 135 Ex. D at 8.) Noack responded that subject to his objections "he is unable to authenticate the recording. Accordingly, after making reasonable inquiry, the information known to Noack or that he can readily obtain is insufficient to enable him to admit or deny this request." (Doc. 135 Ex. F at 10.)

Noack was deposed in September 2014—*after* he responded to the requests to admit. At deposition, when recordings of twenty-seven of the statements covered by the SEC's second set of requests were played, Noack agreed that he *did* make them. Also, he testified that as of the date of deposition he had not listened to or viewed any of the recordings. (Doc. 135 Ex. G at 45-46.) Noack had been provided with copies of all of the recordings back in 2013. (Doc. 135 Ex. C.)

Noack's responses are insufficient. Noack's admissions at deposition when confronted with recordings of twenty-seven statements indicate that he was at some or all of the specified meetings. And in that event Noack should be able to state whether the recordings of his statements were accurate and whether he made the referenced statements. Further, Noack was provided with copies of all of the recordings during discovery. Yet, by May and August of 2014 when he responded to the requests and by September 2014 when he was deposed, he had not listened to or watched them. As indicated by Noack's deposition testimony, when recordings were played, Noack was able to identify his voice or words and confirm his statements. Information was readily available. Reasonable inquiry required that Noack listen to or view the recordings before

7

responding that he was unable to admit or deny the requests. Moreover, Noack has not shown that he made any effort, let alone reasonable inquiry.

Like Stifel, Noack does not contend that allowing him to revise his responses is preferable. Therefore, the court will deem the requests admitted.

C. Motion by Stifel regarding the SEC's responses (Doc. 128)

Stifel contends that the SEC in many of its amended answers to requests for admission improperly included argument under the guise of qualification. Moreover, says Stifel, the SEC did not clearly deny or admit certain requests and improperly incorporated objections in its answers. Stifel provides two requests and answers as examples and submits that the same error exists in many other answers as well. A redlined version of the SEC's answers has been tendered with strikes through all of the language that Stifel believes offends Fed. R. Civ. P. 36. (Doc. 129 Ex. A.) Stifel's redline indicates a challenge to the responses to about 100 of the 213 requests to admit. (*See* Doc. 129 Ex. A.)

Neither party has presented this dispute on a request-by-request basis through the 100 challenged responses. Therefore, the court will not do so, either. Instead, the court will address the two specific requests and responses discussed by Stifel and some of the SEC's general arguments.

Stifel points to requests 33 and 48 and the SEC's responses thereto:

33. The statement contained in Section III, ¶ 42 of the Cease-And-Desist Order that "RBCCM's presentations understated the default risk inherent in the CDO Investments and created an inaccurate picture of safety that did not reflect the actual risk in the CDO Investment portfolios" is true and accurate.

Amended Response: Admitted in part, denied in part, subject to the objections noted in paragraph no. 4 of General Responses and Objections. The SEC denies this request to the extent that it suggests that it was RBC —and not Stifel—who created an inaccurate picture of the safety of the

8

investments. The remainder of this request is denied. A more detailed discussion of the SEC's denial of this request is contained in the SEC's Amended Response to Defendant Stifel's Second Set of Interrogatories at Interrogatory No. 16. See also SEC's Responses to Stifel's First Set of Interrogatories.

See Exhibit C hereto.

. . . .

48. The statement contained in Section III, ¶ 45 of the Cease-And-Desist Order that "In practice, however, credit selection was primarily conducted by RBCCM, which primarily chose credits based on their spread rather than their quality" is true and accurate.

Amended Response: Admitted in part, denied in part, subject to the objections noted in paragraph no. 4 of General Responses and Objections. The SEC admits that it issued a Cease-and-Desist Order finding that "credit selection was primarily conducted by RBCCM, which primarily chose credits based on their spread rather than their quality." The remainder of this request is denied. A more detailed discussion of the SEC's denial of this request is contained in the SEC's Amended Response to Defendant Stifel's Second Set of Interrogatories at Interrogatory No. 16.

See Exhibit C hereto.

(Doc. 129 at 3-4; Doc. 129 Ex. A at 15, 22.)

The court rejects Stifel's argument, which affects numerous responses, that the SEC's incorporation of the objection in paragraph no. 4 of its General Resources and Objections was improper. Paragraph no. 4 was a general objection that the requests sought irrelevant information.[3] Objections based on relevance are permitted, and, in any event, the SEC thereafter answered the requests subject to the objection. Thus, the objections do not violate the rule.

---

[3] The first sentence of paragraph no. 4 states that the SEC "objects to the requests to the extent that they seek information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence." (Doc. 129 Ex. A at 2.) The rest of the paragraph sets forth examples of why some of the requests seek irrelevant information.

9

Next, Stifel contends that the final portion of these responses and many others, referencing the more detailed discussion of the denial in response to interrogatory 16, is improper. The SEC contends that Rule 36(a)(4) requires a party to explain a denial in detail, but the court does not read the rule that way. The rule requires detail only if the answering party cannot truthfully admit or deny the request. Fed. R. Civ. P. 36(a)(4); *Caruso*, 1995 WL 347003, at *2 ("[T]he use of only the word 'denied' is often sufficient under the rule.").

Had the SEC merely been cross-referencing the interrogatory for informational purposes, the court may have found its response appropriate. However, in replying to this motion the SEC confirms that it was incorporating that separate interrogatory discussion into its answer to the requests to admit. (Doc. 141 at 19.) An answer that incorporates part of another document is not forthright and specific. The SEC contends that Stifel created the need for a cross-reference through its own interrogatory 16, which reads: "For each request for admission served by Stifel on You, to the extent you deny the request or claim you lack sufficient information to respond, state with factual particularity the basis for your denial or claim of insufficient information." (*See* Doc. 129 Ex. D at 3.) Thus, Stifel asked for detail through its interrogatory. Nevertheless, the detail regarding a denial should remain within the interrogatory. The SEC will be required to amend its responses to delete any incorporation of the interrogatory answers.

The court agrees with Stifel that the SEC's response to request 33 was improper in that it says the request is admitted in part yet fails to specify *any* part of the request that is admitted. After the initial sentence, the SEC denied one item, then denied the remainder of the request; thus, the entire request was denied, in contradiction to the first sentence.

10

Regarding request 48, the SEC's response was confusing. Stifel asked if a certain quoted statement from the cease-and-desist order is true and accurate. The SEC responded that it admitted issuing an order "finding that 'credit selection was primarily conducted by RBCCM, which primarily chose credits based on their spread rather than their quality'" but denied the remainder of the request. (*See* Doc. 129 Ex. at at 22.) What exactly was the SEC denying—the truth of the statement that the words "[i]n practice, however" were not part of the quote from the cease-and-desist order?

Notably, after Stifel filed this motion, the SEC amended its responses again. The amended response to request 33 now specifies what is admitted (that the SEC issued a cease-and-desist order finding that certain portions of RBC's presentations understated the default risk), and the amended response to request 48 now admits the entire request (subject to the paragraph 4 objection) without any partial denial. The SEC indicates that it amended four other responses as well to clarify what is admitted and what is denied. Hearing no objection to those amendments in Stifel's reply, the court deems Stifel challenges to these interrogatory responses moot.

Next, Stifel challenges the SEC's statement in response 33 that it "denies this request to the extent that it suggests that it was RBC—and not Stifel—who created an inaccurate picture." Stifel contends that by denying a fact that was not a part of the request the SEC is providing argument rather than a proper response. The SEC contends that Stifel has taken many sentences of the cease-and-desist order between the SEC and Royal Bank of Canada (RBC) out of context and that qualification is required. (*See* Doc. 141 at 2.) According to the SEC, although this sentence from the cease-and-desist order

11

concerns RBC, not Stifel, the context requires mention of Stifel's participation—a "statement that RBC did 'X' does not mean that Stifel did 'not-X.'" (Doc. 141 at 7.)

The court agrees that if the meaning of language in the cease-and-desist order is affected by its context, qualification may be necessary regarding joint action with or other involvement of Stifel. Unlike requests that ask simply whether someone said something or whether a document contains a particular statement, Stifel's request asks about a statement's truth, and the meaning of the sentence standing alone may vary from its meaning taken in context.

However, the need for qualification does not justify answers that add unnecessary facts or argument. The SEC has qualified a denial. Regarding the second half of the request to admit (the inaccurate-picture portion), the SEC denies a suggestion then denies the remainder. Thus, it was asked whether "RBC did 'X" but answered with "RBC did not but Stifel may have." The concept of qualification is not the problem for the court. Instead, the problem is that the SEC went beyond the request and added something unnecessary and argumentative. Therefore, the SEC will need to amend this response again.

The SEC points out that while Stifel's brief discusses only the responses to requests 33 and 48, Stifel's redline seeks to strike a much broader range of responses. The court agrees that responses to requests 33 and 48 are not representative of all of the other challenged responses. For instance, the redline challenges several responses regarding "Acknowledgment Letters," to which the SEC responded with partial admissions and partial denials. (*See, e.g.*, Doc. 129 Ex. A, ¶¶ 106, 108, 112.) Request 106 and the SEC's amended response read as follows:

12

> 106. Through the Acknowledgement [sic] Letter attached hereto as Exhibit E at page 2, the School District of Waukesha, Wisconsin Post Employment Benefits Trust represented to Stifel that it was an accredited investor.
>
> Amended Response: Admitted in part, denied in part. The SEC admits that Exhibit E includes a provision stating, among other things: "[E]ach of the District and the Trust makes the following representations and acknowledgements [sic], with respect to the purchase by the Trust of the Asset . . . (4) It is a financially sophisticated investor that . . . (f) is an accredited investor (as defined in paragraph (1), (2), (3), (7), or (8) of Rule 501(a) under the Securities Act of 1933, as amended." The remainder of this request is denied. A more detailed discussion of the SEC's denial of this request is contained in the SEC's Amended Response to Defendant Stifel's Second Set of Interrogatories at Interrogatory No. 16.

(Doc. 129 Ex. A at 40.) Although the response suffers from the same problem of incorporation of the interrogatory 16 response, this request and response otherwise differ from requests 33 and 48. Stifel does not ask whether a quoted statement is true but instead paraphrases a document, and words such as "represented" and "accredited investor" suggest legally significant meanings. As discussed by the SEC in its brief, the SEC admits to the documents' quoted language but disputes how the documents were executed and whether the signers truly "represented" what the document says. Here, the court sees no problem with the SEC's admission that the document states certain words but denial of the meaning attributed by Stifel in its request. *Cf. U.S. Fire Insurance*, 2008 WL 2222022, at *7 (finding that certain requests that paraphrased a report used modifiers that made the requests imprecise, justifying the respondent's qualifications).

The acknowledgment-letter requests and responses show that Stifel's motion did not cover all varieties of responses challenged in its redline. Stifel discussed only two particular responses. To the extent that those two requests and responses do not typify all of the challenged responses, Stifel has failed to persuade the court that its motion

13

should be granted. Therefore, to the extent the above discussion does not cover a particular challenge by Stifel, the challenge is rejected.

In sum, the motion is granted as to responses that incorporate interrogatory responses or, like response 33, deny a fact beyond the request or add argument to a denial. However, the motion is otherwise denied. Objections and qualifications (if made properly) are permitted.

As a remedy, Stifel asks the court to strike the improper language or alternatively to require the SEC to amend its answers. Stifel contends that "[p]runing the excess language" will reduce the costs of litigation. However, striking or pruning portions of responses is not an enumerated option for the court—the court may deem a request admitted or may order an amended answer. *See* Moore et al., *supra*, § 36.12[1] ("A motion to strike is not available with respect to answers to a request for admission."). Here, the court will order amended answers to the extent necessary based on the above discussion.[4]

CONCLUSION

Therefore,

IT IS ORDERED that Stifel's renewed motion to strike (Doc. 128) is granted in part and denied in part as discussed above.

---

[4] The court notes the SEC's argument that there is no need for the SEC to amend requests concerning the cease-and-desist order. Stifel asked the SEC in an interrogatory to identify any statements in the cease-and-desist order that were not true, and the SEC responded that it was "not currently aware of inaccuracies in the Cease-and-Desist Order." (Doc. 142 Ex. C at 10.) The SEC says it still stands behind that statement. (Doc. 141 at 4.) Courts have denied motions seeking amended answers to requests when the admissions would be cumulative or duplicative of other evidence. *Caruso*, 1995 WL 347003, at *5; *Flanders*, 115 F.R.D. at 72. However, the problems with the incorporation of the interrogatory answers and the addition of facts or argument to a denial are not affected by the SEC's concession that it knows of no inaccuracies in the cease-and-desist order. And the concession appears to conflict with the SEC's denial of the second part of request 33, confirming that some revision of that answer is appropriate.

14

IT IS FURTHER ORDERED that the SEC's motions to admit (Docs. 132, 134) are granted.

Dated at Milwaukee, Wisconsin, this 24th day of August, 2016.

                                                     BY THE COURT

                                                    /s/ C.N. Clevert, Jr.
                                                    C.N. CLEVERT, JR.
                                                    U.S. DISTRICT JUDGE