# EXHIBIT
## 21

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

_____
:
**UNITED STATES SECURITIES**                :
**AND EXCHANGE COMMISSION,**          :
:
       **Plaintiff,**                           :
:
    **v.**                                         :       **Case No. 11-cv-755**
:
**STIFEL, NICOLAUS & CO., INC. and**     :       **Hon. Charles N. Clevert Jr.**
**DAVID W. NOACK,**                          :
:
       **Defendants.**                         :
_____:


## SECURITIES AND EXCHANGE COMMISSION'S
## PROPOSED JURY INSTRUCTIONS


Dated:  August 24, 2016

Steven C. Seeger
Robert M. Moye
Alyssa A. Qualls
Jeffrey A. Shank
Ariella O. Guardi
Kevin A. Wisniewski
175 W. Jackson Blvd., Suite 900
Chicago, IL  60604-2615

Attorneys for Plaintiff
U.S. Securities and Exchange
Commission

**Table of Contents**

Preliminary Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

Pre-Deliberations Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

**Attachments**

Exhibit A          Final Jury Instructions, *SEC v. Berrettini* (N.D. Ill.) (Dow, J.)

Exhibit B          Final Jury Instructions, *SEC v. Ferrone* (N.D. Ill.) (Gilbert, M.J.)

Exhibit C          Final Jury Instructions, *SEC v. Quan* (D. Minn.) (Montgomery, J.)

Exhibit D          Preliminary Instructions, *SEC v. Wyly* (S.D.N.Y.) (Scheindlin, J.)

Exhibit E          Final Jury Instructions, *SEC v. Wyly* (S.D.N.Y.) (Scheindlin, J.)

Exhibit F          Final Jury Instructions, *SEC v. Tourre* (S.D.N.Y.) (Forrest, J.)

Exhibit G          Final Jury Instructions, *SEC v. Heart Tronics, Inc.* (C.D. Cal.) (Selna, J.)

Exhibit H          Final Jury Instructions, *SEC v. Capital Solutions Monthly Income Fund* (D. Minn.) (Frank, J.)

# PRELIMINARY INSTRUCTIONS

**Plaintiff's Proposed Instruction No. 1**

## *Burden of Proof – Civil v. Criminal*

The SEC has the burden of proving each essential element of its claims against each Defendant by a preponderance of the evidence.

This is a civil case, not a criminal case.

The standard of proof in a criminal case is a stricter standard, requiring more than a preponderance of the evidence. Those of you who are familiar with criminal cases will have heard of "proof beyond a reasonable doubt." That standard does not apply to a civil case like this one, and you should put that standard out of your mind.[1]

---

[1] *See SEC v. Berrettini*, 10-cv-1614 (N.D. Ill. 2015), Jury Instructions (Dckt. No. 237), at 15; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 9; *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 8; *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 388-91 (1983); *SEC v. First Choice Mgmt. Serv's, Inc.*, 678 F.3d 538, 544 (7th Cir. 2012); *SEC v. Michel*, 521 F. Supp. 2d 795, 823 (N.D. Ill. 2007).

**Plaintiff's Proposed Instruction No. 2**

### *Summary of the Claims and Defenses*

The plaintiff in this case, as you know, is the Securities and Exchange Commission, which we will call the SEC. The SEC is a government agency that enforces the federal securities laws. The SEC filed this lawsuit against Stifel Nicolaus & Company and David Noack, the defendants in this case.

The SEC's claims against the defendants arise under two federal statutes and one rule that the SEC has adopted under one of those statutes. The two statutes are the Securities Act of 1933, which we call the "Securities Act," and the Securities and Exchange Act of 1934, which we call the "Exchange Act." These statutes and the rule were promulgated by the SEC serve to protect the investing public from fraud in the offer, purchase, or sale of securities.

To help you follow the evidence, I want to give you some background and a summary of the positions of the parties. Again I remind you that nothing I say is evidence. This is just trying to be helpful.

There are two defendants in this case. One of the defendants is Stifel Nicolaus & Co., which the Court and the parties may refer to as simply "Stifel." Stifel is a company in the financial industry known as a broker-dealer. The other defendant is David Noack, who the Court and parties may refer to as simply Noack. Noack was a Senior Vice President at Stifel during the time in question. This case concerns the sale of securities to five Wisconsin School Districts and their Trusts in 2006. The investments involved credit-linked notes tied to the performance of financials product called collateralized debt obligations. Collateralized debt obligations are also called "CDOs" for short. You will hear the parties use the term CDOs throughout the trial.

The SEC alleges that Stifel and Noack knowingly or recklessly made misrepresentations

of material fact to the School Districts. The SEC alleges that the defendants made false statements to the School Districts when describing the risks of the investments, the likelihood of defaults, and the safety of their initial investment amount, also known as principal. The SEC alleges that Stifel and Noack falsely told the School Districts, among other things, that: it would take "15 Enrons" for the School Districts to lose money; it would take a catastrophic, overnight collapse of 15 investment-grade companies for the investments to fail; 30 of 105 companies in the portfolio would have to go bankrupt, and that 100 of the top 800 companies in the world would have to go under before the School Districts would suffer a loss of principal; the country would have to suffer an economic collapse greater than the Great Depression before the School Districts would lose their money; and the investments were safe and similar to U.S. Treasuries.

The SEC also alleges that Stifel and Noack knowingly or recklessly made material omissions by failing to disclose important facts to the School Districts. An omission is a failure to tell the whole truth. An omission is a failure to disclose something when the nondisclosure makes something that the person did say misleading. The SEC alleges that Stifel and Noack did not disclose, among other things, that certain CDO providers had expressed concerns about the investments and declined to participate by providing proposed investments for those reasons and that the first portfolio performed poorly from the outset, with a number of credits suffering downgrades within weeks of closing.

The SEC also alleges that defendants Stifel and Noack knowingly or recklessly engaged in fraudulent or deceptive practices in connection with the investments. Among other things, the SEC alleges that Stifel and Noack defrauded the School Districts by knowingly or recklessly: appearing at school board meetings and recommending CDOs when they had not performed sufficient due diligence about the investment's risks; continuing to recommend the investments

3

even after they knew the first transaction performed so poorly from the outset that they wanted RBC to repurchase the notes; and creating and marketing an unmanageably risky product, through the use of substantial borrowing and the CDOs' structure, to unsophisticated and risk-adverse investors.

Finally, the SEC also alleges that Stifel and Noack recommended an unsuitable product that did not meet the investment needs of the School Districts. The SEC alleges that the Stifel and Noack knew, or were reckless in not knowing, that the School Districts lacked the requisite sophistication, capacity, and expertise to independently evaluate the risks of the CDOs. The SEC alleges that they also knew that the School Districts looked to them for financial advice.

The SEC alleges that Stifel and Noack acted knowingly or recklessly. The SEC also alleges, however, that Stifel and Noack acted, at a minimum, negligently in recommending the CDOs to the School Districts.

The SEC alleges that, through the aforementioned conduct, the defendants Stifel and Noack violated various securities laws governing fraud. The defendants deny all of the SEC's allegations against them.

The evidence in this case will include testimony from individuals (live and through video depositions) and expert witnesses. You may hear recordings (audio and video) of what the defendant Stifel told the School Districts through the defendant Noack, its Senior Vice President.

At the end of this trial, I will give you detailed instructions as to what the SEC, as the plaintiff, must demonstrate to show that the defendants violated the law. But at this point, I want to provide a brief overview of the SEC's claims and provide some basic preliminary guidance on those claims.

4

In general, the SEC brings two types of claims: fraud claims and an aiding and abetting claim. I want to briefly describe those two categories.

The SEC claims that, through the defendants' fraudulent or deceptive practices and material misrepresentations and omissions, the defendants violated the antifraud provisions of the Exchange Act.

First, the SEC alleges that the defendants violated section 10(b) of the Exchange Act as well as Rule 10b-5, which is a rule that implements section 10(b). Section 10(b) and Rule 10b-5 set forth three different ways under which someone may be liable, but the SEC is not required to establish all three types of unlawful conduct. The SEC can satisfy its burden of proof by proving that the defendants engaged in one or more of the three types of unlawful conduct.

First, Rule 10b-5 prohibits employing devices, schemes, and artifices to defraud any person in connection with the purchase or sale of a security. In order to show that the defendants committed fraud under section 10(b), the SEC must show that the defendants acted with intent to defraud or with reckless disregard for the truth. Further, the SEC must also show that any alleged deception was material. This means that the SEC must show that the alleged deception would have been significant to a reasonable investor's investment decision.

Second, Rule 10b-5 prohibits making untrue statements of material fact or omitting material facts necessary to make the statements made not misleading in connection with the purchase or sale of a security. This second basis for liability also requires proof that the allegedly false statement or omission was made by the defendants with intent to defraud or with reckless disregard for the truth, and that it involved a material fact.

Third, Rule 10b-5 prohibits engaging in acts, practices, or courses of business that operated and would operate as a fraud or deceit on any person in connection with the purchase or

sale of a security. Again, to establish liability under this provision, the SEC must prove that the alleged deception was material and that the defendants acted with intent to defraud or with reckless disregard for the truth.

The defendants contend that they did not make any false statement or omissions of material fact.

The SEC also alleges that through this same conduct the defendants violated section 17(a) of the Securities Act. Section 17(a) is also divided in three subparts: Section 17(a)(1), 17(a)(2), and 17(a)(3). The elements of a Section 17(a)(1) violation are substantially similar to those under the first method of establishing liability under Rule 10b-5. Both prohibit the employment of devices, schemes, and artifices to defraud, and both require proof that the defendants acted with intent to defraud or with reckless disregard for the truth with respect to a material matter. Unlike Rule 10b-5(a), however, which prohibits such conduct in connection with the purchase or sale of securities, Section 17(a)(1) applies only to conduct in the offer or sale of any securities.

Likewise, the second subpart of Section 17(a), that is, 17(a)(2), in many ways mirrors the second basis for liability under Rule 10b-5. It requires a false statement or omission of a material fact. But it is different from Rule 10b-5 in important ways. Like the first subsection of 17(a), it applies only to conduct in the offer or sale of securities. Section 17(a)(2) does not require the SEC to prove that the defendants acted knowingly or recklessly. Instead, the SEC may prove its case by establishing that defendants acted negligently.

Additionally, the SEC must establish that the defendant directly or indirectly obtained money or property by means of the misstatement or omission.

Finally, the third subpart of Section 17(a), that is 17(a)(3), largely tracks the elements of the third method of establishing liability under Rule 10b-5, except that the SEC may prove its case under Section 17(a)(3) by showing that the defendant acted negligently and, like the other subparts of 17(a), 17(a)(3) applies only to conduct in the offer or sale of securities.

Again, the defendants contend that they did not make any false statements or omissions of material fact.

The SEC also alleges that through this same conduct Stifel violated Section 15(C)(1)(A) of the Exchange Act. The elements of a Section 15(c)(1)(A) violation are substantially similar to those under the first method of establishing liability under Rule 10b-5.

Both prohibit the employment of manipulative, deceptive, or other fraudulent devices and both require proof that the defendant acted with intent to defraud or with reckless disregard for the truth with respect to a material matter. Unlike Rule 10b-5(a), however, which prohibits such conduct committed by any individual, Section 15(c)(1)(A) applies exclusively to brokers and dealers such as Stifel.

The last type of claims brought by the SEC is an aiding and abetting claim, under which the SEC alleges that the defendant Noack knowingly provided substantial assistance to Stifel's violation of Section 15(c)(1)(A).

I will give you complete and detailed instructions on this claim at the close of the trial. For now, I will simply tell you that this claim requires proof that the defendant Noack was generally aware that he played a role in Stifel's improper conduct, and that the defendant participated in it as something he wished to bring about.

7

The defendant contends that he never knowingly provided any assistance to a securities law violation.[2]

---

[2] *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Preliminary Instructions (Dckt. No. 337), at 16-29.

Case 2:11-cv-00755-JPS   Filed 08/24/16   Page 11 of 51   Document 318-21

**Plaintiff's Proposed Instruction No. 3**

### *Preliminary Statements Not Evidence*

These preliminary statements I just gave you should not be taken, of course, of any indication that I have any view regarding the issues that I mentioned. They are solely to introduce you to the parties' contentions. The decision on whose positions are correct is up to you, the jury.[3]

---

[3] *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions (Dckt. No. 337), at 29.

9

**Plaintiff's Proposed Instruction No. 4**

### *Remedies – for the Court, Not the Jury*

Your job in this case is to determine whether each defendant is liable for violating the federal securities laws. If you find a defendant liable, it will be my job to decide what relief, if any, should be awarded against that defendant. In considering whether a defendant is or is not liable, you should not speculate as to what relief I might award if you do find that defendant liable.[4]

---

[4] *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions (Dckt. No. 337), at 29.

**Plaintiff's Proposed Instruction No. 5**

*Losses*

You should also note that while, as explained earlier, you will in some cases have to determine if a certain fact would have been material to a reasonable investor or whether certain conduct would have deceived or operated as a fraud on a person, the SEC does not have to prove that a specific investor suffered any damages or harm as a result of the defendants' alleged conduct.[5]

---

[5] *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions (Dckt. No. 337), at 29-30.

## PRE-DELIBERATION INSTRUCTIONS

**Plaintiff's Proposed Instruction No. 6**

### *Deposition Designations*

You have heard testimony of some witnesses through live testimony. You have heard the testimony of other witness(es) [INSERT NAMES], through reading deposition transcripts or playing video of their depositions. The law permits a party to present evidence through the reading of deposition transcripts or playing video depositions when a witness is unavailable at trial.

You should judge all such testimony in the same way that you would judge any other testimony, regardless of the fact that one or more witnesses testified without attending in person.[6]

---

[6] *See SEC v. Berrettini*, 10-cv-1614 (N.D. Ill. 2015), Jury Instructions (Dckt. No. 237), at 12; *see also* Federal Civil Jury Instructions of the Seventh Circuit, § 2.08 (2015 rev.).

12

**Plaintiff's Proposed Instruction No. 7**

### *Multiple Claims*

You must give separate consideration to each claim in this case.[7]

---

[7] Federal Civil Jury Instructions of the Seventh Circuit, § 1.25(2015 rev.).

Case 2:11-cv-00755-JPS   Filed 08/24/16   Page 16 of 51   Document 318-21

**Plaintiff's Proposed Instruction No. 8**

*Non-Parties*

Royal Bank of Canada or "RBC" is not a defendant in this case. You should not speculate on the reasons. You should decide the case based on the evidence presented in support of the claims against the defendants Stifel and Noack. You will not be asked to decide whether RBC engaged in unlawful conduct.[8]

---

[8] Federal Civil Jury Instructions of the Seventh Circuit, § 1.26 (2015 rev.).

**Plaintiff's Proposed Instruction No. 9**

### *Burden of Proof – Civil v. Criminal*

The SEC has the burden of proving each essential element of its claims against each Defendant by a preponderance of the evidence.

This is a civil case, not a criminal case.

The standard of proof in a criminal case is a stricter standard, requiring more than a preponderance of the evidence. Those of you who are familiar with criminal cases will have heard of "proof beyond a reasonable doubt." That standard does not apply to a civil case like this one, and you should put that standard out of your mind.[9]

---

[9] *See SEC v. Berrettini*, 10-cv-1614 (N.D. Ill. 2015), Jury Instructions (Dckt. No. 237), at 15; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 9; *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 8; *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 388-91 (1983); *SEC v. First Choice Mgmt. Serv's, Inc.*, 678 F.3d 538, 544 (7th Cir. 2012); *SEC v. Michel*, 521 F. Supp. 2d 795, 823 (N.D. Ill. 2007).

**Plaintiff's Proposed Instruction No. 10**

### *Deposition Designations*

You have heard testimony of some witnesses through live testimony. You have heard the testimony of other witness(es) [INSERT NAMES], through reading deposition transcripts or playing video of their depositions. The law permits a party to present evidence through the reading of deposition transcripts or playing video depositions when a witness is unavailable at trial.

You should judge all such testimony in the same way that you would judge any other testimony, regardless of the fact that one or more witnesses testified without attending in person.[10]

---

[10] *See SEC v. Berrettini*, 10-cv-1614 (N.D. Ill. 2015), Jury Instructions (Dckt. No. 237), at 12; *see also* Federal Civil Jury Instructions of the Seventh Circuit, § 2.08 (2015 rev.).

**Plaintiff's Proposed Instruction No. 11**

*Agency*

An entity is liable for the conduct of employees acting within the scope of their employment.[11] The state of mind of an officer, agent, or employee acting within the scope of his authority is the state of mind of the entity.[12]

Defendant David Noack was an employee of Stifel. Therefore, if you find Noack liable for violations of the federal securities laws, then you may hold Stifel liable for Noack's violations of the securities laws.

---

[11] *See, e.g., SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1249 (11th Cir. 2012) ("Under principles of *respondeat superior*, Morgan Keegan is liable for the acts of these brokers so long as they acted within the scope of their authority.") (citing *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111, 1118 (5th Cir. 1980))*CFTC v. Byrnes*, 58 F. Supp. 3d 319, 325-27 (S.D.N.Y. 2014) (quoting *In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 515 (S.D.N.Y. 2004)).

[12] *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 20.

17

**Plaintiff's Proposed Instruction No. 12**

### *Statutory Purpose of the Securities Laws*

As I have explained, the SEC alleges that Stifel and Noack engaged in illegal conduct in violation of two federal statutes and one rule that the SEC has adopted under one of those statutes. As I have explained, the two statutes at issue in this case are the Securities Act and the Exchange Act.

Congress passed the Securities Act to protect the investing public in the purchase of securities. The Securities Act prohibits fraud, and requires full and fair disclosure of all important facts, by those who offer and sell securities so that investors can make informed investment decisions.

Congress passed the Exchange Act to ensure fair dealing and outlaw deceptive and inequitable practices by those who buy or sell securities. The SEC has passed rules under the Exchange Act. Those rules have the force of law and must be followed. Among the primary objectives of the Exchange Act are the maintenance of fair and honest securities markets and the elimination of manipulative practices that tend to distort the fair price of a stock. The Exchange Act and rules under it are designed to support investor expectations that the securities markets are free from fraud and to prevent a wide variety of devices and schemes that are contrary to a climate of fair dealing. Congress recognized that any deceptive or manipulative practice that related to trading activity could undermine the function and purpose of a free market and the integrity of securities transactions.[13]

---

[13] *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 18; *SEC v. Zandford*, 535 U.S. 813, 821-22 (2002) ("preserving the integrity of the securities markets was one of the purposes animating" the Exchange Act, as was the intent "to bar deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face") (quotation and citation omitted); *Lowe v. SEC*, 472 U.S. 181, 199-200 (1985) ("Not only must the public be protected from the frauds and misrepresentations of unscrupulous tipsters and touts, but the bona fide investment adviser must be safeguarded against the stigma of the activities of these individuals.") (citing S. Rep. No. 1775, 76th Cong., 3d Sess., 21-22 (1940)); *SEC v. Capital Gains Research Bureau, Inc.*, 375

18

**Plaintiff's Proposed Instruction No. 13**

*Description of the Case*

As I did at the start of the case, I will give you a brief summary of each side's contentions. I will then provide you with detailed instructions on what each side must prove to prevail on each of its contentions.

The plaintiff in this case, as you know, is the SEC. The SEC is a government agency that enforces the federal securities laws. The SEC filed this lawsuit against Stifel and Noack, the two defendants in this case. Stifel is a company in the financial industry known as a broker-dealer. Noack was a Senior Vice President at Stifel during the time in question.

This case concerns the sale of securities to five Wisconsin School Districts and their Trusts in 2006. The investments involved credit-linked notes tied to the performance of financials product called CDOs.

The SEC alleges that Stifel and Noack knowingly or recklessly made misrepresentations of material fact to the School Districts. The SEC alleges that the defendants made false statements to the School Districts when describing the risks of the investments, the likelihood of defaults, and the safety of their initial investment amount, also known as principal. The SEC alleges that Stifel and Noack falsely told the School Districts, among other things, that: it would take "15 Enrons" for the School Districts to lose money; it would take a catastrophic, overnight collapse of 15 investment-grade companies for the investments to fail; 30 of 105 companies in the portfolio would have to go bankrupt, and that 100 of the top 800 companies in the world would have to go under before the School Districts would suffer a loss of principal; the country would have to suffer an economic collapse greater than the Great Depression before the School

<hr>

U.S. 180, 186-877 (1963) (noting Congress's goal of "achiev[ing] a high standard of business ethics . . . in the [United States'] securities industry").

19

Districts would lose their money; and the investments were safe and similar to U.S. Treasuries.

The SEC also alleges that Stifel and Noack knowingly or recklessly made material omissions by failing to disclose important facts to the School Districts. An omission is a failure to tell the whole truth. An omission is a failure to disclose something when the nondisclosure makes something that the person did say misleading. The SEC alleges that Stifel and Noack did not disclose, among other things, that certain CDO providers had expressed concerns about the investments and declined to participate by providing proposed investments for those reasons and that the first portfolio performed poorly from the outset, with a number of credits suffering downgrades within weeks of closing.

The SEC also alleges that defendants Stifel and Noack knowingly or recklessly engaged in fraudulent or deceptive practices in connection with the investments. Among other things, the SEC alleges that Stifel and Noack defrauded the School Districts by knowingly or recklessly: appearing at school board meetings and recommending CDOs when they had not performed sufficient due diligence about the investment's risks; continuing to recommend the investments even after they knew the first transaction performed so poorly from the outset that they wanted RBC to repurchase the notes; and creating and marketing an unmanageably risky product, through the use of substantial borrowing and the CDOs' structure, to unsophisticated and risk-adverse investors.

Finally, the SEC also alleges that Stifel and Noack recommended an unsuitable product that did not meet the investment needs of the School Districts. The SEC alleges that the Stifel and Noack knew, or were reckless in not knowing, that the School Districts lacked the requisite sophistication, capacity, and expertise to independently evaluate the risks of the CDOs. The SEC alleges that they also knew that the School Districts looked to them for financial advice.

20

The SEC alleges that Stifel and Noack acted knowingly or recklessly.  The SEC also alleges, however, that Stifel and Noack acted, at a minimum, negligently in recommending the CDOs to the School Districts.

The SEC alleges that, through the aforementioned conduct, the defendants Stifel and Noack violated various securities laws governing fraud.  The defendants deny all of the SEC's allegations against them.

**Plaintiff's Proposed Instruction No. 14**

### *The Claims*

The SEC has brought four claims against defendant Stifel, and four claims against defendant Noack. Claims 1-3 are against each defendant. Claim 4 is against only defendant Stifel. Claim 5 is against only defendant Noack.

The SEC's first claim is against both defendants under Section 10(b) of the Exchange Act and Rule 10b-5. The SEC's second and third claims are against both defendants under Section 17(a), subparts (1) through (3), of Securities Act. The SEC's fourth claim is against defendant Stifel only, and is brought under Section 15(c)(1)(A) of the Exchange Act. The SEC's fifth claim is against defendant Noack only, and is brought under Section 20(e) of the Exchange Act for allegedly aiding and abetting Stifel's alleged violation of Section 15(c)(1)(A) of the Exchange Act.

The defendants deny liability as to each of these claims.

Each claim involves a different law and consists of a different mix of elements of proof. I will instruct you on the elements that the SEC must prove to establish a violation of each law a bit later.

You should consider each claim against each defendant independently.

**Plaintiff's Proposed Instruction No. 15**

*Count One*:  **Against Defendants Stifel, Nicolaus & Co., Inc. and David Noack**
**for Violations of Exchange Act Section 10(b) and Rule 10b-5**

In Count 1, the SEC alleges that defendants Stifel and Noack violated Exchange Act Section 10(b) and Rule 10b-5, which is a rule that implements Section 10(b).  This claim is referred to as the SEC's "10b-5 Claim."

To prevail on Count 1, the SEC must prove each of the following elements by a preponderance of the evidence against each defendant:

1.    The defendant, directly or indirectly, did any <u>one</u> or more of the following things in connection with the purchase or sale of securities:

      a.    employed a device, scheme, or artifice to defraud;

      b.    made an untrue statement of material fact, or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading; <u>or</u>

      c.    engaged in any act, practice, or course of business that operated or would operate as a fraud or deceit upon any person; and

2.    The defendant acted with the intent to deceive, manipulate, or defraud – that is, that a defendant knew that his conduct, statements, or omissions were deceptive or that he acted with reckless disregard for the truth.

3.    The defendant used or caused to be used the mails or means or instrumentalities of interstate commerce.

The first element described three types of unlawful conduct.  It is not necessary for the SEC to establish all three types of unlawful conduct.  The SEC can satisfy its burden of proof by proving that the defendants engaged in one or more of the three types of unlawful conduct.  If

23

you find that a defendant's conduct fits into any one of these categories, then the SEC has

satisfied this element. Conduct may fit more than one category.

Let me now tell you about each of the categories.[14]

---

[14] *SEC v. Ferrone*, 1:11-cv-05223 (N.D. Ill. 2016), Jury Instructions (Dckt. No. 270), at 22; *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 24; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 14-18; *United States v. Petters*, 08-cr-364 (D. Minn. 2009), Jury Instructions (Dckt. No. 350), at 17; *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 8-10; *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 21-22; *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 33-34; *Pub. Pension Fund Group v. KV Pharm. Co.*, 679 F.3d 972, 987 (8th Cir. 2012); *SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1216 (2013); *SEC v. Tambone*, 597 F.3d 436, 447 n.9 (1st Cir. 2010); *SEC v. Lyttle*, 538 F.3d 601, 604-05 (7th Cir. 2008); *United States v. Spirk*, 503 F.3d 619, 622 (7th Cir. 2007); *Cummings v. Paramount Partners, LP*, 715 F. Supp. 2d 880, 906 (D. Minn. 2010); *SEC v. Yuen*, 03-cv-4367, 2006 U.S. Dist. LEXIS 33938, at *101 (C.D. Cal. Mar. 16, 2006) ("The Commission need only prove one misrepresentation or omission of material fact to establish liability.").

**Plaintiff's Proposed Instruction No. 16**

### *Device, Scheme, or Artifice to Defraud*

The first type of fraud is a "device, scheme or artifice to defraud." This includes any means of deceiving someone and covers all ingenious efforts and means that individuals can devise to take advantage of others or to deceive others. Thus, fraud may involve false or fraudulent pretenses, untrue statements or omissions of material facts (which I will say more about in a moment), representations, promises, and patterns of conduct calculated to deceive.[15]

---

[15] *SEC v. Ferrone*, 1:11-cv-05223 (N.D. Ill. 2016), Jury Instructions (Dckt. No. 270), at 22; *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 24; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 15; *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 23; *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 19-20, 36-37; *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 26.

**Plaintiff's Proposed Instruction No. 17**

### *Statements*

Second, the SEC may also prove that defendants committed fraud by making one or more misrepresentations of material fact or by omitting to state a material fact that would be necessary to make their other statements not misleading.

Statements may be oral or written. A misrepresentation is simply a statement that is not true when it is made. Fraud may include omissions – or leaving out – information that makes other statements misleading under the circumstances. The federal securities laws prohibit misleading statements, as well as statements that are inaccurate.[16] That would include what are sometimes called "half-truths" – literally true statements that create a materially misleading impression by omitting information which is necessary to make the statement not misleading.[17] A material misstatement or omission may also be part of a device, scheme, or artifice to defraud. You must decide whether a statement or omission is false or misleading based on the circumstances as they existed at the time the statement or omission was made.

---

[16] *SEC v. Ferrone*, 1:11-cv-05223 (N.D. Ill. 2016), Jury Instructions (Dckt. No. 270), at 22-23; *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 24; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 15; *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 24-25; *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 25-26, 37-38.

[17] *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 130 (2d Cir. 2011) ("The law is well settled, however, that so-called 'half-truths' – literally true statements that create a materially misleading impression – will support claims for securities fraud.") (citation omitted); *SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), *rev'd on other grounds sub nom.*, *Gabelli v. SEC*, 133 S. Ct. 1216 (2013) (same); *SEC v. Syron*, 934 F. Supp. 2d 609, 629 (S.D.N.Y. 2013) (same); *SEC v. True North Finance Corp.*, 909 F. Supp. 2d 1073, 1115 (D. Minn. 2012) (same); *SEC v. Mudd*, 885 F. Supp. 2d 654, 666 (S.D.N.Y. 2012) (same); *SEC v. Radius Capital Corp.*, 2012 WL 695668, at *6 (M.D. Fla. 2012) (same); *Nexpoint Advisors, L.P. v. TICC Capital Corp.*, 2015 WL 6408117, at *14 (D. Conn. 2015) (holding that the federal securities laws prohibit "half-truths," because the law is "concerned not just with inaccurate disclosures, but also *misleading* ones") (emphasis in original).

**Plaintiff's Proposed Instruction No. 18**

### *Would Operate As A Fraud Or Deceit*

Third, the SEC may also prove the first element by proving that defendants engaged in any act, practice or course of business that operated, or would operate, as a fraud or deceit upon any person. A fraud or deceit means a lie or a trick. A fraud or deceit does not have to relate to an investment's quality or actually result in the purchase or sale of any security. The word "would" in the phrase "would operate as a fraud or deceit" means that the acts, practices or courses of business could have succeeded in defrauding someone even if they did not actually succeed in defrauding that person.[18]

You may find that a defendant violated this provision by engaging in a single act or in repeated conduct over a period of time that did succeed, or could have succeeded, in defrauding someone. The SEC need not prove, however, that each particular defendant engaged in every instance of the repeated conduct over the period of time.[19]

---

[18] *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 29; *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 26-27; *SEC v. BankAtlantic Bancorp, Inc.*, 12-cv-60082 (S.D. Fla. 2014), Jury Instructions (Dckt. No. 414), at 17 ("A 'fraud or deceit' means a lie or a trick. A fraud or deceit doesn't have to relate to an investment's quality or actually result in the purchase or sale of any security… . The term 'would' in the phrase 'would operate as a fraud or deceit' means that the act, practice, or course of business had the capacity to defraud a purchaser or seller. It's not necessary that the act, practice, or course of business actually defrauded someone."); *SEC v. Chem. Trust*, No. 00-8015-CIV, 2000 WL 33231600, at *9 (S.D. Fla. Dec. 19, 2000) (elements of a Section 17(a)(1) violation include that "the defendant, directly or indirectly, used a device or scheme or trick to defraud someone"); *SEC v. Life Partners Holdings, Inc.*, 1:12-cv-00033-JRN, ECF No. 247 at 14-15 (W.D. Tex. Feb. 3, 2014).

[19] *SEC v. Life Partners Holdings, Inc.*, 1:12-cv-00033-JRN, ECF No. 247 at 14-15 (W.D. Tex. Feb. 3, 2014).

**Plaintiff's Proposed Instruction No. 19**

*Materiality*

If you find that one or more of the defendants engaged in any of three types of conduct that I just described, you must next determine whether their deceptive conduct was material under the circumstances, or whether their misrepresentations or omissions involved material facts. Information or conduct is "material" if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. In other words, information or conduct is material if a reasonable investor would have viewed the disclosure of the information or the conduct as significantly altering the total mix of information that was publicly available.[20]

The question of materiality is an objective one, involving the significance of the misrepresented or omitted fact to a reasonable investor. You must decide whether a misstatement or omission was material based on the circumstances as they existed at the time and not in hindsight. It is only necessary for you to find one material misstatement or omission to find that the defendant you are considering violated this subsection.[21]

A defendant has a duty to correct false or inaccurate statements about material facts if it is discovered later that those statements were not true when made and they remain material to a reasonable investor's investment decision.[22]

---

[20] *SEC v. Berrettini*, 10-cv-1614 (N.D. Ill. 2015), Jury Instructions (Dckt. No. 237), at 25 (without the sentence about mergers and acquisitions); *SEC v. Ferrone*, 1:11-cv-05223 (N.D. Ill. 2016), Jury Instructions (Dckt. No. 270), at 23; *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 24; *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instruction (Dckt. 303), at 27; *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 25; *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 26-28.
[21] *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976)); *SEC v. Ferrone*, 1:11-cv-05223 (N.D. Ill. 2016), Jury Instructions (Dckt. No. 270), at 23; *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 24; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 16.
[22] *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 25; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 16.

Materiality does not require proof that a defendant's acts or omissions were more important than the acts or omissions of someone else. It is not a defense to argue that someone else said something that was important, or said something that was more important than the statement by the defendant. The SEC does not have the burden to prove that the defendants' acts or omissions were more important than the acts or omissions of a non-party such as RBC.[23]

Materiality does not require proof that the investors would have made different decisions without the defendants' acts or omissions.[24] A material fact does not need to be so important that it would have caused a reasonable investor to change its decision about whether to do an investment.[25] Instead, an act or omission is material if it has the potential to affect the decision by a reasonable investor.[26]

Please note that when I use the phrase "reasonable investor," this is not to say that it is a defense if the alleged fraud would not have deceived a person of ordinary intelligence. It is not a defense to argue that the School Districts were unreasonable, or that the School Districts should

---

[23] *See SEC v. Monterosso*, 768 F. Supp. 2d 1244, 1265 (S.D. Fla. 2011) ("[T]he materiality inquiry is not concerned with what disclosures may be *most* important to a reasonable investor.") (emphasis in original); *United States v. Ferguson*, 553 F. Supp. 2d 145, 155 n.13 (D. Conn. 2008) ("[A] misstatement is material so long as investors would consider the misstated facts significant in making investment decisions, even if investors would consider other information to be more important."); *Charney v. Zimbalist*, 2014 WL 5064860, at *26 (S.D.N.Y. 2014), *rev'd in part on other grounds*, 2015 WL 4597538 (holding that a statement is material "so long as investors would consider the misstated facts significant in making investment decisions, even if investors would consider other information to be more important"); *United States v. Reyes*, 2007 WL 2554227, at *3 (N.D. Cal. 2007) ("[A]lthough investors consider some information *more important* than non-cash compensation expenses, it does not follow that they consider stock options expenses *unimportant*.") (emphasis in original).

[24] *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 27; *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 27; *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (holding that a material fact does not need to be so important that it "would have caused the reasonable investor to change his vote"); *see also Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000) (holding that plaintiff need not prove that victims "would have acted differently if an accurate disclosure was made"); *SEC v. City of Miami, Florida*, 988 F. Supp. 2d 1343, 1357 (E.D. Fla. 2013) ("[T]o be material, a fact need not be outcome-determinative – that is, it need not be important enough that it would necessarily cause a reasonable investor to change his investment decision."); *SEC v. Meltzer*, 440 F. Supp. 2d 179, 190 (E.D.N.Y. 2006) (same); *SEC v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 703 (S.D.N.Y. 2005); *Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1533 (2d Cir. 1991) ("[I]t is well-established that a material fact need not be outcome-determinative.").

[25] *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

[26] *See LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 931 (7th Cir. 1988) (holding that a misrepresentation is material if it "so alters the 'total mix' of information available to the investor that it has the potential to affect the [investment] decision"); *see also SEC v. Gorsek*, 222 F. Supp. 2d 1099, 1108 (C.D. Ill. 2001).

have been more careful or should have made different decisions. If you find there was a fraud, it does not matter if the intended victim was a gullible, negligent, or unsophisticated investor, because the securities laws protect the unsophisticated as well as the experienced investor.[27]

The SEC does not have the burden to prove reliance. The SEC does not have the burden to prove that the School Districts relied on any alleged material misrepresentations or omissions made by the defendants when they decided to make the investments.[28]

---

[27] *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 27; *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 28; *United States v. Tarallo*, 380 F.3d 1171, 1191 (9th Cir. 2004) amended, 413 F.3d 928 (9th Cir. 2005) ("It is no defense to charges of securities fraud and mail fraud that the victim may have been gullible or negligent. The laws against fraud are designed to protect the naïve and careless as well as the experienced and careful.").

[28] *SEC v. Ferrone*, 1:11-cv-05223 (N.D. Ill. 2016), Jury Instructions (Dckt. No. 270), at 23; *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 26; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 16; *see also McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 931 (7th Cir. 2011) ("[T]he SEC can bring an enforcement action for a 'violation' of federal securities laws without anyone having suffered harm, which is to say without anyone having relied on a misrepresentation or misleading omission to his detriment."); *Schellenbach v. SEC*, 989 F.2d 907, 913 (7th Cir. 1993); *SEC v. Cook*, 2015 WL 5022152, at *17 (S.D. Ind. 2015) ("Unlike private litigants, the SEC is not required to prove investor harm or reliance to be successful on its claim."); *SEC v. Ferrone*, 2014 WL 5152367, at *3 (N.D. Ill. 2014); *SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1244 (11th Cir. 2012) ("'Justifiable reliance,' however, is not an element of an SEC enforcement action because Congress designated the SEC as the primary enforcer of the securities laws, and a private plaintiff's 'reliance' does not bear on the determination of whether the securities laws were violated, only whether that private plaintiff may recover damages."); *SEC v. StratoComm Corp.*, 89 F. Supp. 3d 357, 365 (N.D.N.Y. 2015) ("[T]he SEC is not required to prove that a victim relied upon the defendants' omission or misrepresentation in making an investment decision in an enforcement action."); *SEC v. Schooler*, 2015 WL 3491903, at *7 (S.D. Cal. 2015) ("[W]hether the investors actually relied on the representations is irrelevant to the SEC's fraud causes of action."); *SEC v. Levin*, 2013 WL 5588224, at *8 (S.D. Fla. 2013) ("Whereas justifiable reliance must be pled in a private enforcement action, it is not an element of an SEC enforcement action."); *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993) ("The SEC need not prove reliance in its action for injunctive relief on the basis of violations of section 10(b) and Rule 10b-5.").

**Plaintiff's Proposed Instruction No. 20**

*In Connection With*

If you find that one or more of the defendants engaged in deceptive conduct that was material, or made misrepresentations or misleading omissions of material facts, you must next determine whether the deceptive conduct was "in connection with" the purchase or sale of securities. This element is satisfied if you find there was some connection or relationship between the deceptive conduct and the sale or purchase of securities. You need not find that a defendant actually participated in any securities transaction in order to find that the deceptive conduct was "in connection with" the purchase or sale of securities.[29]

---

[29] *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 29; *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 22-23; SEC *v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 608 (S.D.N.Y. 1993) ("The 'in connection with requirement' … is satisfied by the filing of a Schedule 13(D)."); *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1171 (D.C. Cir. 1978) ("[S]ection 10(b)'s 'in connection with' requirement is satisfied by the filing of the Schedule 13D, coupled with the public trading in Savoy stock."); *see generally SEC v. Pirate Investor LLC*, 580 F.3d 233, 250 (4th Cir. 2009) (*per curiam*) ("in connection with" requirement is met in cases involving "SEC filings").

**Plaintiff's Proposed Instruction No. 21**

### *Instrumentalities of Interstate Commerce*

The term "instrumentality of interstate commerce" means, for example, the use of the mails, telephone, fax, emails, the internet, or some other form of electronic communication. It can also mean the use of an interstate delivery or communication system, such as Federal Express or UPS.

It is not necessary for the SEC to prove that any particular defendant was directly or personally involved in any mailing, fax, email, telephone call, or other use of the means or instrumentalities of interstate commerce. If a defendant acted with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use can reasonably be foreseen in the circumstances, then the defendant caused such means to be used.

Finally, the use of the means or instrumentalities of interstate commerce need not be central to the fraud and may even be incidental to it. Nor is it necessary that the items sent through the interstate means of communication themselves contain fraudulent information or anything objectionable. The matter mailed, faxed, wired, or emailed may be entirely innocent.[30]

---

[30] Adapted from Eleventh Circuit Pattern Jury Instructions, Instr. 4.2 (2005); 4 Sand et al., Modern Federal Jury Instructions, Instr. 82-10 (2010); *SEC v. Solucorp Indus. Inc.*, 274 F. Supp. 2d 379, 419 (S.D.N.Y. 2003) (means of interstate commerce include "mails and wires, including the Internet, news wires and telephone lines"); *SEC v. Lauer*, 2008 U.S. Dist. LEXIS 73026, *87 (S.D. Fla. Sept. 23, 2008).

**Plaintiff's Proposed Instruction No. 22**

### *Intent to Deceive, Manipulate, or Defraud*

I will now instruct you on the meaning of acting "with the intent to deceive, manipulate, or defraud," which is part of the second element of a violation of Count 1, Section 10(b) and Rule 10b-5. The SEC must show that a defendant knew his conduct, statements, or omissions were deceptive or that he acted with reckless disregard for the truth.

To act "knowingly" means to act intentionally and deliberately, rather than mistakenly or inadvertently. In the context of any statements or omissions, a defendant speaks knowingly with an intent to defraud when he makes an untrue statement with the knowledge that the statement was false, or when he omits necessary information with the knowledge that the omission would make the statement false or misleading.[31]

Conduct is "reckless" if it represents an extreme departure from the standards of ordinary care. A person acts with reckless disregard for the truth if his statements or conduct present a danger of misleading buyers that was either known to the defendant, or was so obvious that a reasonable person would have been aware of it. A person may be reckless within the meaning of the law even though he thought himself to be careful. But recklessness is more than mere negligence. Reckless conduct represents grossly unreasonable, rash or intemperate behavior.[32]

---

[31] *SEC v. Ferrone*, 1:11-cv-05223 (N.D. Ill. 2016), Jury Instructions (Dckt. No. 270), at 23; *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 27-29; *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 21.

[32] *SEC v. Ferrone*, 1:11-cv-05223 (N.D. Ill. 2016), Jury Instructions (Dckt. No. 270), at 23; *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 21; *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 31; *SEC v. Jasper*,07-cv-06122 (N.D. Cal. 2010), Jury Instructions (Dckt. No. 241), at 9 ("A defendant acted knowingly if it is proved that the defendant made an untrue statement with the knowledge at the time of making the statement that the statement is false or with reckless disregard at that time for whether the statement is true."); *SEC v. Todd*, 3:03-cv-02230 (S.D. Cal. 2007), Jury Instructions (Dckt. No. 276), at 23 ("A defendant acts knowingly when the defendant makes an untrue statement with the knowledge that the statement was false, or with reckless disregard for whether the statement was true…."); *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 27-29; *City of Livonia Employees' Retirement Sys. and Local 295/Local 851, IBT*, 711 F.3d 754, 756 (7th Cir. 2013); *see also SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998); *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1046 (7th Cir. 1977); *Makor Issues &*

An intent to deceive, manipulate, or defraud is not the same thing as an intent to harm. The SEC does not have the burden to prove that the defendants intended to harm the School Districts.[33] You can find the defendants liable even if you find that the defendants did not intend to harm the School Districts.

Direct proof of knowledge and fraudulent intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent. Such direct proof is not required.

The ultimate facts of knowledge and intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.[34]

---

*Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008); *SEC v. Lyttle*, 538 F.3d 601, 604 (7th Cir. 2008); *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756 (7th Cir. 2007).

[33] *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 26; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 17; *see also SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195 (1963) ("Congress, in empowering the courts to enjoin any practice which operates 'as a fraud or deceit' upon a client, did not intend to require proof of intent to injure and actual injury to the client."); *id.* at 192 n.39 "[T]he intent which must be established need not be an intent to cause injury to the client."); *United States v. Litvak*, 808 F.3d 160, 179 (2d Cir. 2015) (holding that "'intent to harm' is not a component of the scienter element of securities fraud under Section 10(b)"); *United States v. Tagliaferri*, 820 F.3d 568, 574 (2d Cir. 2016) (finding "no error in the District Court's Jury Instructions that investment adviser fraud required only intent to deceive and not intent to harm," and reiterating that "section 10(b) does not require intent to harm"); *United States v. Lincecum*, 225 F.3d 647, at *1 (2d Cir. 2000) (including Sotomayor, J.) ("To convict a defendant of securities fraud, the government . . . need not prove that the defendant intended to cause harm to the victim of the fraud.") (citation omitted); *United States v. Vilar*, 729 F.3d 62, 93 (2d Cir. 2013) ("[T]he government was under no obligation to prove that he wanted to steal [the investor's] money, only that he intended to defraud her in connection with his sale of the SBIC investment."); *United States v. Hickey*, 580 F.3d 922, 930 (9th Cir. 2009) ("To begin, loss to investors is not an element of either mail fraud or securities fraud, nor is an intent to cause loss."); *Bennett v. United States*, 2006 WL 738162, at *11 (S.D.N.Y. 2006) ("[I]ntent to harm is not an element of securities fraud at all.") (citation omitted); *SEC v. Caterinicchia*, 613 F.2d 102, 106 n.7 (5th Cir. 1980) ("The fact that defendants did not intend to harm investors does not negate a finding of scienter."); *Abrahamson v. Fleschner*, 568 F.2d 862, 878 n.27 (2d Cir. 1978) ("Scienter does not require a showing of intent to cause a loss to a plaintiff.").

[34] *See SEC v. Berrettini*, 10-cv-1614 (N.D. Ill. 2015), Jury Instructions (Dckt. No. 237), at 28; *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 22; *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 31.

It is not a defense to argue that a defendant was trying to help the investors, or had their best interests in mind. A person can commit fraud even if he subjectively believed that the investment was in the investors' best interests.[35]

The SEC does not have the burden to prove that the defendants believed that the investments would fail. A defendant can violate the federal securities laws even if he genuinely believed that the investments would succeed.[36]

---

[35] *See SEC v. Koenig*, 557 F.3d 736, 740 (7th Cir. 2009) ("[S]ecurities fraud is wrongful even if committed in the belief that lies serve the issuer's, or investors', interests."); *United States v. Hickey*, 580 F.3d 922, 931 (2d Cir. 2009) ("[E]ven if [the defendant] genuinely believed his investment scheme would be profitable and would result in gains for his investors, he would still be guilty of securities fraud and mail fraud if he knowingly lied to investors about the risks associated with his plan."); *see also United States v. Ferguson*, 676 F.3d 260, 280 (2d Cir. 2011) (upholding a jury instruction that "[n]o amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investors, or not cause anyone harm, will excuse fraudulent actions or false representations by him or her"); *United States v. Leonard*, 529 F.3d 83, 91 (2d Cir. 2008) (upholding a jury instruction that "[n]o amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investors will excuse fraudulent actions or false representations by him"); *In re Haden*, 1998 WL 822997, at *3 (N.D. Cal. 1998) ("The fact that [the defendant] did not set out to cheat Irby, and that he fully intended to repay her, although admirable, is irrelevant to the finding of fraudulent intent."); *United States v. Tagliaferri*, 2016 WL 2342677, at *3-4 (2d Cir. 2016) (upholding a jury instruction that a defendant's belief that "ultimately everything would work out so that no investors would lose any money or that particular investments would ultimately be financially advantageous for clients does not necessarily constitute good faith," because an "honest belief on the part of a defendant that the scheme will ultimately make a profit" does not "excuse fraudulent actions or false representations by him").

[36] *See, e.g., United States v. Hamilton*, 499 F.3d 734, 735, 737 (7th Cir. 2007) (holding that a "mountain of authority" supported a jury instruction that fraud can take place "regardless of whether the defendant hoped, intended, or even expected that the victims would eventually be satisfied"); *In re Sentinel Mgmt. Group*, 728 F.3d 660, 668 (7th Cir. 2013) ("[S]omeone who has the best intentions can still possess an actual intent to defraud."); *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("[T]here is no 'good faith defense' to fraud. A person who tells a material lie to a federal agency can't say 'yes, but I thought it would all work out to the good' or some such thing."); *United States v. Leahy*, 464 F.3d 773, 787 (7th Cir. 2006) ("[A] defendant's honest belief that his actions will ultimately result in a profit and not a loss is irrelevant for determining whether a violation has occurred."); *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) ("A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants . . . ."); *United States v. Davuluri*, 239 F.3d 902, 906 (7th Cir. 2001) ("That [the defendant] sincerely intended his scheme to generate a profit is irrelevant."); *United States v. Masquelier*, 210 F.3d 756, 759 (7th Cir. 2000) ("[I] is irrelevant in a fraud prosecution that the defendant sincerely believed that he would ultimately be able to return the victim's money after his scheme succeeded."); *United States v. Dunn*, 961 F.2d 648, 651 (7th Cir. 1992) (holding that a "good faith belief" that an investment "would be successful in the long-term" was "not relevant to the element of specific intent"); *United States v. Cosentino*, 869 F.2d 301, 307 (7th Cir. 1989) ("Fraudulent deprivation of Kenilworth's money was no less a fraud because it was part of a scheme that might have generated a profit."); *see also United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986) ("[A] good-faith belief that the victim will be repaid and will sustain no loss is no defense at all."); *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979) ("[A]n honest belief in the ultimate success of an enterprise is not, in itself, a defense.").

35

**Plaintiff's Proposed Instruction No. 23**

*Counts Two And Three*: **Against Defendants Stifel, Nicolaus & Co., Inc. and David Noack
For Violations of Securities Act Section 17(a)**

The SEC also alleges that defendants Stifel and Noack engaged in deceptive conduct that violated Section 17(a) of the Securities Act. Count 2 is the SEC's claim that defendants Stifel and Noack violated Section 17(a)(1) of the Securities Act. Count 3 is the SEC's claim that defendants Stifel and Noack violated Sections 17(a)(2) and 17(a)(3) of the Securities Act. These claims are based on the same conduct as that alleged in the SEC's claim that defendants violated Section 10(b) and Rule 10b-5.

To establish a Section 17(a) violation, the SEC must prove by a preponderance of the evidence that each defendant, directly or indirectly, did any one or more of the following the offer or sale of securities:

1.     Employed any device, scheme, or artifice to defraud. This is Section 17(a)(1) of the Securities Act;

2.     Obtained money or property by means of any untrue statement of material fact or any omission of a material fact necessary under the circumstances to keep the statements that were made from being misleading. This is Section 17(a)(2) of the Securities Act; or

3.     Engaged in any transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser. This is Section 17(a)(3) of the Securities Act.

As under Section 10(b) and Rule 10b-5, it is not necessary for the SEC to establish all three types of unlawful conduct. If you find that a defendant's conduct fits into any one of these

36

categories, then the SEC has satisfied this element because conduct may fit more than one category. Let me now tell you about each of the categories.

The elements of a violation of Section 17(a) of the Securities Act are substantially the same as those under Section 10(b) of the Exchange Act, which I have already instructed you on. There are, however, two exceptions that are relevant.

First, while the SEC must establish the defendants acted knowingly or recklessly to prove a violation of subsection (1) of Section 17(a) above, negligence is sufficient to prove a violation of subsections (2) and (3) of Section 17(a) above. This means that even if you find that a defendant did not violate Section 10(b) or Section 17(a)(1) because they did not act knowingly or recklessly, you may still find that they acted negligently in violation of Section 17(a)(2) and (3). I will explain what "negligence" means in a few moments.

The second difference between Section 10(b) and Section 17(a) is that to prove a violation of subsection (2) of Section 17(a), the SEC must establish that the defendant directly or indirectly obtained money or property by means of the misstatement or omission.

You must find that the SEC has proved all of the elements above by the greater weight of the evidence to find that a defendant violated the securities laws under this provision. You must consider each of the defendants separately when doing this analysis. If you find that the SEC has proven each of the above elements with respect to a given defendant, your verdict should be for the SEC as to that defendant. If, on the other hand, you find that the SEC has failed to prove one or more of the above elements with respect to a given defendant, then your verdict should be for that defendant.[37]

---

[37] *Aaron v. SEC*, 446 U.S. 680, 697 (1980); *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 31-33; *SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 22-25; *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 31; *SEC v. Todd*, 03-cv-2230 (C.D. Cal. 2007), Jury Instructions (Dckt. No. 276), at 32-34; *see also*

**Plaintiff's Proposed Instruction No. 24**

### *Negligence*

Let me now explain "negligence," which is applicable to subsection (2) and (3) of Section 17(a).

"Negligence" is different from "knowledge" and "recklessness." "Negligence" is the failure to use ordinary care under the circumstances. Reasonably prudent people exercise "ordinary care" to avoid injury to themselves or their property, or to avoid injury to persons or the property of others.

The controlling standard is what a reasonably prudent person in the defendant's position would do under like circumstances. In deciding whether ordinary care was exercised in a given case, you should view conduct in the light of all of the surrounding circumstances as shown by the evidence of this case. You may find that the defendants acted negligently with respect to any of the alleged false or misleading statements or omissions or deceptive conduct if you find that they failed to exercise ordinary or reasonable care or competence in making those statements or omissions or in engaging in deceptive conduct. In determining whether the defendants were negligent, you may consider whether they exercised reasonable care in obtaining and communicating information, and whether they undertook appropriate investigation before making statements.[38]

---

*SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 17-40; *SEC v. Wolfson*, 539 F.3d 1249, 1256 n. 12 (10th Cir. 2008) ("The principal difference between § 17(a) and § 10(b) lies in the element of scienter, which the SEC must establish under § 17(a)(1), but not under § 17(a)(2) or §17(a)(3) . . . .").

[38] *Aaron v. SEC*, 446 U.S. 680, 697 (1980); 3 Kevin F. O'Malley, et al., Federal Jury Practice And Instructions §§ 120.02 & 120.10 (5th ed. 2000); *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 32; *SEC v. Heart Tronics, Inc.*, 8:11-cv-01962 (C.D. Cal. 2015), Jury Instructions (Dckt. 303), at 36; *SEC v. Todd*, 03-cv-2230 (C.D. Cal. 2007), Jury Instructions (Dckt. No. 276), at 32-34; *SEC v. Wyly*, 10-cv-5760(SAS) (S.D.N.Y. 2014), Jury Instructions, at 34; *SEC v. Tourre*, 10-cv-3229(KBF) (S.D.N.Y. 2013), Jury Instructions (Dckt. No. 433-3), at 28.

If you find that the defendants' conduct was merely sloppy or ill-calculated – as opposed to conduct that was intentional, deliberate, or with reckless disregard for the truth – you have found that the defendants acted negligently.[39]

---

[39] *SEC v. O'Meally*, 752 F.3d 569, 575 (2d Cir. 2014).

**Plaintiff's Proposed Instruction No. 25**

## *Count Four*: Against Defendant Stifel, Nicolaus & Co., Inc.
### for Violations of Section 15(c)(1)(A) of the Exchange Act

In count four, the SEC has alleged that Stifel violated Section 15(c)(1)(A) of the Exchange Act. Section 15(c)(1)(A) makes it unlawful for a broker – such as Stifel – to effect a transaction, or to induce or attempt to induce a transaction, in any security by means of any manipulative, deceptive, or other fraudulent device or contrivance.

To determine whether Stifel violated Section 15(c)(1)(A), you should use the same analysis as you did under count one, for a violation of Section 10(b) and Rule 10b-5, which I already described in detail.[40] Section 15(c)(1)(A) only differs in that it applies exclusively to brokers and dealers such as Stifel.

---

[40] *SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005) (elements of Section 15(c)(1) violation same as Section 10(b)).

**Plaintiff's Proposed Instruction No. 26**

### *Count Five*: Against Defendant David W. Noack for Aiding and Abetting
### Stifel's Violations of Section 15(c)(1)(A) of the Exchange Act

If you find that the SEC has established that Stifel violated count four, then you must determine in count five whether Noack aided and abetted those violations of the Exchange Act. In this claim, the SEC has a burden of proving each of the following elements by a preponderance of the evidence:

First, that Stifel violated Section 15(c)(1)(A). I have already instructed you on the elements that the SEC must prove to establish a violation of Section 15(c)(1)(A).

Second, that Noack knew that Stifel was violating Section 15(c)(1)(A). Noack may be charged with knowing that Stifel violated Section 15(c)(1)(A), if Noack was generally aware that he played a role in the improper conduct. Noack may also be charged with knowledge if he deliberately closed his eyes to what would have otherwise been obvious to avoid meaningful exposure to information that would have provided him with knowledge of the false or misleading statement or omission.

Third, that Noack provided "substantial assistance" to Stifel in its violation of Section 15(c)(1)(A). "Substantial assistance" is assistance that is a substantial factor in causing the Section 15(c)(1)(A) violation. Noack must have known his actions were aiding Stifel's alleged fraud or been generally aware that his actions played a role in the fraud.

The second element – knowledge – and the third element – substantial assistance – are inversely related. In other words, if you find that there was a minimal level of substantial

41

assistance, a higher level of knowledge is required.  Similarly, if you find that there was a high

level of substantial assistance, then a lower level of knowledge is required.[41]

---

[41] *SEC v. Apuzzo*, 689 F.3d 204, 215 (2d Cir. 2012); *see also SEC v. Capital Solutions Monthly Income Fund, LP*, 10-cv-3995 (D. Minn. 2013), Jury Instructions (Dckt. No. 354), at 19-20 (aiding and abetting Section 10(b) claim); *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 28-29 (aiding and abetting Section 10(b) claim); *SEC v. Ferrone*, 1:11-cv-05223 (N.D. Ill. 2016), Jury Instructions (Dckt. No. 270), at 28 (aiding and abetting Section 13(a) claim).

**Plaintiff's Proposed Instruction No. 27**

### *Seller, Manufacturer or Issuer*

A defendant does not need to be the seller, manufacturer, or issuer of a seller in order to be liable for fraud in connection with the purchase or sale of a security.[42]

---

[42] 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

**Plaintiff's Proposed Instruction No. 28**

### *Duty To Investigate Before Making Recommendations*

Stifel Nicolaus is a broker-dealer. As a broker-dealer, Stifel Nicolaus had a duty to investigate the securities before recommending them to the School Districts. A broker-dealer owes a special duty of fair dealing to its clients to fully investigate the securities it recommends so that it has an adequate basis for its recommendations.[43] A broker-dealer cannot recommend a security unless there is an adequate and reasonable basis for its recommendation.[44]

When recommending specific securities, a broker has a duty to do some independent investigation and cannot rely solely on the materials submitted by the issuer.[45] Here, Stifel had a duty to do an independent investigation about the investments before recommending them to the School Districts, and could not rely solely on the materials from RBC.

---

[43] *See SEC v. Randy*, 38 F. Supp. 2d 657, 670 (N.D. Ill. 1999); *SEC v. Hasho*, 784 F. Supp. 1059, 1107-08 (S.D.N.Y. 1992); *SEC v. Milan Capital Group, Inc.*, 2000 WL 1682761, at *5 (S.D.N.Y. 2000); *SEC v. Current Financial Services, Inc.*, 100 F. Supp. 2d 1, 7 (D.D.C. 2000); *SEC v. Great Lakes Equities Co.*, 1990 WL 260587, at *7 (E.D. Mich. 1990).
[44] *See Hanly v. SEC*, 415 F.2d 589 (2d Cir. 1969) (holding that a broker-dealer "cannot recommend a security unless there is an adequate and reasonable basis for such recommendation").
[45] *Id.*; *see also SEC v. Platinum Inv. Corp.*, 2006 WL 2707319, at *3 (S.D.N.Y. 2006) ("Thus, when recommending specific securities, a broker has a duty to do some independent investigation and cannot rely solely on the materials submitted by the issuer or given to him by his employer.").

44

**Plaintiff's Proposed Instruction No. 29**

*Victims' Negligence*

An investor's negligence is not a defense to fraud. Blame the victim is not a defense.[46]

It is not a defense to argue that the School Districts should have been more diligent, or should have been more careful, or should have made different decisions. You should decide the claims against the defendants without considering whether the School Districts acted negligently.

---

[46] *See Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 573 (7th Cir. 2004) (Posner, J.) ("As countless cases affirm, a victim's negligence is not a defense to an intentional tort, such as fraud."); *see also Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 527, 530 (7th Cir. 1985) (holding that a "lackadaisical investigation" by the victim was not a defense) ("[C]ontributory negligence by an investor is not a bar in securities cases."); *Indosuez Carr Futures, Inc. v. Commodity Futures Trading Commission*, 27 F.3d 1260, 1265 (7th Cir. 1994) (noting than an investor's "failure to exercise due care" is "not a defense in a 10b-5 case"); *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1546 (7th Cir. 1990) ("[S]ecurities fraud is an intentional tort, and [] contributory negligence (failure to investigate independently) is not a defense when the tort is intentional."); *Sundstrand v. Sun Chemical Corp.*, 553 F.2d 1033, 1040 (7th Cir. 1977) (holding that an investor's "failure to exercise due care or diligence" was not a defense under the securities laws); *In re Olympia Brewer Co. Sec. Litig.*, 612 F. Supp. 1367, 1368 (N.D. Ill. 1985) ("The Seventh Circuit has clearly ruled that lack of due diligence is not a defense to a violation of § 10(b)."); *United States v. Catalfo*, 64 F.3d 1070, 1078 (7th Cir. 1995) ("Fraud remains fraud even if the victim should have acted more prudently."); *United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007) ("[T]he perpetrator of a fraud may not defend himself by blaming the victim for being duped."); *United States v. Hartz*, 296 F.3d 595, 600 (7th Cir. 2002) (holding that a defendant was "in no position to blame one of the victims of his scheme for falling prey to his fraud"); *United States v. Coffman*, 94 F.3d 330, 334 (7th Cir. 1996) (Posner, J.) ("It would be very odd for the law to protect only those who, being able to protect themselves, do not need the law's protection.").

45

**Plaintiff's Proposed Instruction No. 30**

*Losses*

The SEC does not have the burden to prove that the School Districts suffered a loss. The SEC also does not have to prove that the defendant caused the School Districts to suffer a loss. It is not a defense to argue that someone else or something else caused the investments to fail. It is also not a defense to argue that the losses were caused by an event that was unforeseeable or unprecedented.[47]

---

[47] *See McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 931 (7th Cir. 2011) ("[T]he SEC can bring an enforcement action for a 'violation' of federal securities laws without anyone having suffered harm, which is to say without anyone having relied on a misrepresentation or misleading omission to his detriment."); *Schellenbach v. SEC*, 989 F.2d 907, 913 (7th Cir. 1993); *SEC v. Cook*, 2015 WL 5022152, at *17 (S.D. Ind. 2015); *SEC v. Ferrone*, 2014 WL 5152367, at *3 (N.D. Ill. 2014) ("Unlike private plaintiffs, the SEC is not required to establish . . . loss causation in a civil enforcement action."); *SEC v. Schooler*, 2015 WL 3491903, at *7 (S.D. Cal. 2015); *SEC v. Constantin*, 939 F. Supp. 2d 288, 303 (S.D.N.Y. 2013) ("Notably, '[t]he SEC does not need to prove investor reliance, loss causation, or damages' to prevail on any of its claims for primary liability under the securities laws.") (citation omitted; brackets in original); *SEC v. BIH Corp.*, 2013 WL 1212769, at *5 (striking affirmative defenses about loss causation); *SEC v. Wyly*, 71 F. Supp. 3d 399, 405 (S.D.N.Y. 2014) ("Unlike private plaintiffs, who must demonstrate that the defendants' misstatements or omissions were a proximate cause of their injury at the liability stage, the SEC has no such burden."); *SEC v. Lee*, 720 F. Supp. 2d 305, 325 (S.D.N.Y. 2010) ("Unlike private litigants, who must comply with the PSLRA, the SEC is not required to prove investor reliance, loss causation, or damages in an action for securities fraud."); *SEC v. Pirate Investor LLC*, 580 F.3d 233, 239 n.10 (4th Cir. 2009) ("Unlike private litigants, the SEC need not prove . . . loss causation."); *SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475, 490-91 (S.D.N.Y. 2002) ("The SEC does not need to prove investor reliance, loss causation, or damages in an action under Section 10(b) of the Exchange Act, Rule 10b-5, or Section 17(a) of the Securities Act."); *see also* 15 U.S.C. § 78u-4(b)(4) (requiring loss causation in any "*private* action") (emphasis added).

**Plaintiff's Proposed Instruction No. 31**

### *Remedies – for the Court, Not the Jury*

In deciding this case, you are to determine only whether the defendants are liable for violating the federal securities laws as I have instructed you.  This is not the kind of case in which the jury decides what legal relief the Plaintiff would be entitled to receive.  That will be my responsibility if you find one or both of the Defendants liable.  Accordingly, in considering whether each of the Defendants is or is not liable, you should not consider the amount of damages, civil penalties, or other relief I might award to the Plaintiff.[48]

[48] *See SEC v. Berrettini*, 10-cv-1614 (N.D. Ill. 2015), Jury Instructions (Dckt. No. 237), at 32; *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 21.

**Plaintiff's Proposed Instruction No. 32**

### *Persons Not On Trial*

You may not draw any inference, favorable or unfavorable, to the SEC or the defendants from the fact that any person has been sued, or has not been sued, by the SEC.[49]

---

[49] *SEC v. Quan*, 11-cv-00723 (D. Minn. 2014), Jury Instructions (Dckt. No. 491), at 22; 3 Edward J. Devitt, Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions Civil* § 71.07 (4th ed. 1987).