# EXHIBIT

# H

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Securities and Exchange Commission,                    Civil No. 10-3995 (DWF/JJK)

               Plaintiff,

v.                                                                      **JURY INSTRUCTIONS**

Capital Solutions Monthly Income Fund, LP,
f/k/a Hennessey Financial Monthly Income
Fund, LP; Transactional Finance Fund
Management, LLC; and Todd A. Duckson,

               Defendants.


MEMBERS OF THE JURY:

Members of the jury, now that you have heard the evidence, it becomes my duty to

give you the instructions of the court as to the law applicable to this case.  The

instructions I gave at the beginning of the trial and during the trial are still in effect.  Now

I am going to give you some additional instructions.  During these instructions, I will

refer to the Securities and Exchange Commission as either "SEC" or "plaintiff," and to

the Defendants Capital Solutions Monthly Income Fund, LP (f/k/a Hennessey Financial

Monthly Income Fund, LP), Transactional Finance Fund Management, LLC, and

Todd A. Duckson collectively as "defendants" or individually as "the Fund," "TFFM,"

and "Mr. Duckson" respectively.

      You have to follow all of my instructions–the ones I gave you earlier, as well as

those I give you now. You will have copies of all the instructions in the jury room.  It is

your duty as jurors to follow the law as I shall state it to you and to apply that law to the

facts as you find them from the evidence in the case.  You are not to single out one
instruction alone as stating the law, but must consider the instructions as a whole.
Neither are you to be concerned with the wisdom of any rule of law stated by me.

The questions that you must decide will be submitted to you in the form of a
special verdict consisting of 12 questions.  You must answer these questions by applying
the facts as you may find them to be.  I shall give to you the rules of law that apply to
these questions and you must apply them in arriving at your answers.  It is the duty of the
court to order judgment according to the law and the answers you have returned.

Counsel have quite properly referred to some of the governing rules of law in their
arguments.  If, however, any difference appears to you between the law as stated by
counsel and that stated by the court in these instructions, you of course are to be governed
by the instructions.

Nothing I say in these instructions is to be taken as an indication that I have any
opinion about the facts of the case, or what that opinion is.  And you must not read into
these instructions, or into anything the court may have said or done, any suggestion from
the court as to what verdict you should reach.  I have not intended during the course of
the trial, by any of my rulings, questions, comments or otherwise, to indicate my opinion
regarding the facts or the outcome of the case.  If during this trial I have said or done
anything which has suggested to you that I am inclined to favor the claims or positions of
either party, you must not allow yourselves to be influenced by any such suggestion.  I
have not expressed, nor intended to express, nor have I intended to imply, any opinion as
to which witnesses are or are not worthy of belief.  If any expression of mine has seemed

2

to indicate an opinion relating to any of these matters, I instruct you to disregard it.  It is not my function to determine the facts, but rather yours.

Deciding questions of fact is your exclusive responsibility.  In doing so, you must consider all of the evidence you have heard and seen in this trial and the reasonable inferences to be drawn from that evidence.  And you must disregard anything you may have heard or seen elsewhere about this case.

You must perform your duties as jurors without bias or prejudice to any party. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your duty and responsibility to evaluate the evidence consistent with my instructions and then reach a fair and just verdict based on the evidence and the law.  It is not your duty or responsibility to send a message to the public at large, companies, corporations, or individuals.  Your duty to the plaintiff and the defendants in this case is to be fair and impartial to those parties because they are the only parties to this case.

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence, regardless of who may have produced them.

Some exhibits received into evidence during the trial and some testimony that was permitted by the court were received or allowed for a limited purpose.  You must follow any limiting instructions that I have given you throughout the trial as they relate to

testimony of a witness or to the receipt of an exhibit into evidence and consider the admitted evidence only for the limited purpose stated by the court and no other.

Some exhibits received into evidence during the trial contain portions that have been redacted. This means that portions have been blocked out and cannot be viewed. You are not to speculate as to what has been redacted or why.

Certain demonstrative exhibits have been shown to you in order to help explain the case. Those demonstrative exhibits are used for convenience. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these demonstrative exhibits and determine the facts from the underlying evidence.

Certain schedules, summaries, or charts have been admitted into evidence. You may use those schedules, summaries, or charts as evidence, even though the underlying documents and records are not here. However, if the accuracy or authenticity of those schedules, summaries, or charts is challenged, it is for you to decide how much weight, if any, you will give to them. In making that decision, you should consider all of the testimony you have heard about the way in which they were prepared.

Any evidence as to which an objection was sustained by the court, and any evidence ordered stricken by the court, must be entirely disregarded. If an objection was overruled, treat that answer like any other. By receiving evidence to which objection was made, I did not intend to indicate the weight to be given such evidence.

If a lawyer asked a witness a question which contained an assertion of fact, you may not consider the assertion as evidence of that fact unless the witness agreed to it. The lawyers' questions and statements are not evidence.

There has been a lot of discussion about the facts and proof by each of the attorneys. I want to talk with you about some of the principles involved, not the facts themselves. How are the facts in a case to be proved or established?

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence—such as the testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of all of the evidence in the case, both direct and circumstantial.

You, as jurors, are the sole judges of the believability of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. You may consider each witness's intelligence, motive and state of mind, and demeanor or manner while on the stand. You may consider the witness's ability to observe the matters as to which the witness has testified

and whether the witness impresses you as having an accurate recollection of these matters.  You may consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony.  Two or more persons witnessing an accident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses which does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence which does produce such belief in your minds.

The testimony of a single witness which produces in your minds belief in the likelihood of truth is sufficient for the proof of any fact and would justify a verdict in accordance with such testimony.

You may, in short, accept or reject the testimony of any witness in whole or in part.

The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence, but which witness, and which evidence appeals to your minds as being most accurate, and otherwise trustworthy.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

You are to consider only the evidence in the case.  But, in your consideration of the evidence, you are not limited to the bald statements of the witnesses.  In other words, you are not limited solely to what you see and hear as the witnesses testify.  You are permitted to draw, from facts which you find have been proven, such reasonable inferences as seem justified in the light of your experience.

Inferences are deductions or conclusions which reason and common sense lead the jury to draw from facts which have been established by the evidence in the case.

A witness may be discredited or impeached by contradictory evidence, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such weight, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all of the testimony of that witness or give it such weight as you may think it deserves.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations and other organizations, stand equal before the law and are to be treated as equals.

Testimony was presented to you in the form of a deposition.  A deposition is the recorded answers a witness made under oath to questions asked by lawyers before trial. The deposition testimony offered was read to you by someone other than the person offering the testimony.  You should consider the deposition testimony, and judge its credibility, as you would that of any witness who testifies here in person.

It is your responsibility to decide whether the plaintiff has proven its claims against the defendants by a preponderance of the evidence.  The burden is on the plaintiff, in a civil action such as this, to prove every essential element of its claim by a preponderance of the evidence.  If the proof should fail to establish any essential element

of a plaintiff's claim by a preponderance of the evidence in the case, the jury should not find for the plaintiff on that claim.

Those of you who have sat on criminal cases will have heard of "proof beyond a reasonable doubt." The standard of proof in a criminal case, however, is a stricter standard, requiring more than a preponderance of the evidence. The reasonable doubt standard does not apply to a civil case and you should put that standard out of your mind.

To "establish by a preponderance of the evidence" means to prove that something is more likely true than not true. In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable. This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proven by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

When I say in these instructions that a party has the burden of proof on any proposition, or use the expression "if you find," or "if you decide," I mean you must be persuaded, considering all of the evidence in the case, that the proposition is more probably true than not true.

9

As I told you earlier, this is a civil lawsuit with one plaintiff:

- The United States Securities and Exchange Commission.  Referred to as "the SEC."

This lawsuit has three defendants:

- Capital Solutions Monthly Income Fund, LP, formerly known as Hennessey Financial Monthly Income Fund, LP.  Referred to as "the Fund."

- Transactional Finance Fund Management, LLC.  Referred to as "TFFM."

- Todd A. Duckson.  Referred to as "Mr. Duckson."

The Fund and TFFM are entities and can act only through their officers, employees, and agents.

The conduct of an officer, employee, or agent acting within the scope of his or her authority is the conduct of the entity.  Similarly, the state of mind of an officer, employee, or agent acting within the scope of his or her authority is the state of mind of the entity.

As you have heard, Timothy R. Redpath; Michael W. Bozora; Capital Solutions Distributors, LLC; Capital Solutions Management, LP; Owen Mark Williams; and True North Finance Corporation are no longer parties in this case.  The effect of their settlements should not concern you or the decisions you are being asked to make.  Any reference by counsel regarding a potential settlement for any of the Defendants should be disregarded by you, and should not be discussed or considered during your deliberations.

As I told you earlier, this is a civil lawsuit brought by the SEC against defendants Capital Solutions Monthly Income Fund, formerly known as Hennessey Financial Monthly Income Fund (which was often referred to during the trial as the Fund),

10

Transactional Finance Fund Management (which was often referred to during the trial as TFFM), and Todd A. Duckson.

The following is a brief summary of this case, but it is only a summary.  The SEC claims that, among other things, after the Fund's sole borrower defaulted and the Fund foreclosed on that borrower's assets, Mr. Duckson, TFFM, and the Fund made representations, or omissions, in connection with the offer or sale of interests in the Fund or Series I Preferred Notes about risks regarding an investment in the Fund, the successfulness of the Fund's business strategy, and the use of new investor funds.  The SEC contends that these representations and omissions were false and materially misleading.  The SEC also contends that Mr. Duckson and TFFM acted intentionally, recklessly, or negligently in connection with those representations and omissions.  The SEC further claims that Mr. Duckson and TFFM knowingly aided and abetted the Fund in connection with the Fund's material misstatements and omissions.

Mr. Duckson denies the SEC's allegations.  Mr. Duckson contends that he never made any misstatements or omissions regarding the Fund in connection with the offer or sale of interests in the Fund or Series I Preferred Notes, and that he did not act intentionally, recklessly, or negligently in connection with any statements he made regarding the Fund.  Mr. Duckson further contends that if he or anyone else made any misstatements or omissions regarding the Fund, any such misstatements or omissions were not material and would not have been viewed by a reasonable investor as having significantly altered the total mix of information available regarding the Fund.

The Fund and TFFM likewise deny the SEC's allegations.  The Fund and TFFM contend that they never made any material misstatements or omissions regarding the Fund in connection with the offer or sale of interests in the Fund or Series I Preferred Notes.  They also claim that they did not act intentionally, recklessly, or negligently in connection with any statements they made regarding the Fund.  Finally, Mr. Duckson and TFFM assert that they never knowingly aided the Fund in connection with the Fund's allegedly material misstatements and omissions.

More specifically, this lawsuit involves three types of claims.  For this case, the claims differ by the relevant time period.  Prior to October 2008 Mr. Duckson was the Fund's lawyer and was not the Fund's investment manager, and TFFM was not involved with the Fund.

- For the period **March 2008 through late October 2008 ("Time Period 1")**, the SEC alleges that:  (1) the Fund violated Section 10(b) and Rule 10b-5 under the securities laws; (2) Mr. Duckson aided and abetted the Fund's violation of these laws; and (3) Mr. Duckson and the Fund violated Section 17(a) of the securities laws.

- For the period **late October 2008 through December 2009 ("Time Period 2")**, the SEC alleges that:  (1) the Fund, Mr. Duckson, and TFFM violated Section 10(b) and Rule 10b-5 under the securities laws, OR Mr. Duckson and/or TFFM aided and abetted the Fund's violation of these laws; and (2) the Fund, Mr. Duckson, and TFFM violated Section 17(a) of the securities laws.

12

The relevant time period will determine which documents and alleged misrepresentations or omissions are applicable for each claim.  The SEC's case alleges that misstatements and omissions were made in:

**For Time Period 1:**

(1) the Fund's offering documents dated March 2008; and

(2) update letters dated May 2008 and October 2008.

**For Time Period 2:**

(1) the Fund's offering documents dated November 2008, February 2009, and November 2009;

(2) update letters to existing investors dated February 24, 2009 and to brokers dated February 10, 2009; and

(3) a February 2009 question and answer sheet to existing investors to offer them the Fund's new offering of "Series I Preferred Notes."

Unless I state otherwise, you should consider each instruction given to apply separately and individually to the plaintiff and to each defendant in the case.

Although there is more than one defendant in this action, it is not necessarily the case that if one defendant is liable, all defendants are liable.  Each defendant is entitled to a fair consideration of the evidence.  No defendant is to be prejudiced should you find against any other.

I will now instruct you on the law that you will apply to the claims in this case.

## Claim I - VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 UNDER SECTION 10(b) AND RULE 10b-5

The SEC claims that during each time period, certain of the Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.  This is referred to as the SEC's "10b-5" claim.

The Securities Exchange Act is a federal statute that allows the SEC to enact rules and regulations that prohibit certain conduct in the purchase or sale of securities.  This claim alleges fraud in connection with the purchase or sale of the Fund's limited partnership interests and Series I Preferred Notes.  I will now instruct you on the 10b-5 claim.

For this case, this claim differs by the relevant time period.  Prior to October 2008 Mr. Duckson was the Fund's lawyer and was not the Fund's investment manager, and TFFM was not involved with the Fund.

**INSTRUCTIONS FOR TIME PERIOD 1:**

For **Time Period 1**, the SEC alleges that:  <u>the Fund</u> violated Section 10(b) and Rule 10b-5 under the securities laws.

To prevail on a 10b-5 claim, the SEC has the burden to prove against the Fund and by a preponderance of the evidence each of the following elements:

<u>**First**</u>, you must find that the Fund did at least one, but not limited to one, of the following:

1.      employed a device, scheme, or artifice to defraud; or

2.      made an untrue statement (also called a misstatement) of material fact; or

3.      omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading; or

4.      engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

For this first element, "a device, scheme, or artifice to defraud" is a plan for the accomplishment of any objective. Fraud is a general term that embraces all ingenious efforts and means that individuals devise to take advantage of others. To prove that the defendants employed a device, scheme, or artifice to defraud, the SEC may prove that the defendant engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of a scheme. It is not enough that a transaction in which the defendant was involved had a deceptive purpose and effect; the defendant's own conduct that contributed to the transaction or overall scheme must have had a deceptive purpose.

A misstatement or untrue statement is a statement that is not true. An omission is a failure to state facts that would be necessary to make other statements by the defendant not misleading. This means a statement may be misleading even if it is literally true if it omits information which is necessary to make it not misleading. A statement is not false or misleading merely because subsequent events prove it to have been false. Whether statements or omissions are false or misleading must be determined as of the time they were made.

A misstatement or omission of fact is "material" if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented or omitted fact

in deciding whether to purchase a security.  Put another way, a misstatement or omission is material if a reasonable investor would view the misstated or omitted fact's disclosure as significantly altering the total mix of available information he or she took into account in deciding whether to buy or sell the security.  Total mix of information means all of the information available to the investors in this case at the time they made their decision regarding whether to purchase a security.  You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.

In terms of this case, a material misstatement or omission is one that a reasonable person would deem important in determining whether or not to purchase interests in the Fund or Series I Preferred Notes.

If a defendant has previously made false or inaccurate statements regarding material facts, for example, information sent to investors, or information in marketing materials, they have a duty to correct those statements if it is discovered later that those statements were not true when made and they remain material to an investor's investment decision.

And, **<u>second</u>**, you must find that the Fund acted knowingly or with reckless disregard.

For this second element, SEC must prove that the Fund acted with scienter—that is, knowingly or with severe recklessness. The term "knowingly" means that a defendant acted with intent to deceive, manipulate, or defraud.

To act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care that a reasonable person would be expected to exercise in the situation, and it presents a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.  Reckless conduct may be defined as involving a highly unreasonable misrepresentation or omission, and it does not involve merely simple or even inexcusable negligence.

A defendant did not act knowingly or with severe recklessness if they acted inadvertently, carelessly, or by mistake.

Facts showing that a defendant had both a motive and an opportunity to make an untrue statement or omit to disclose a material fact may support a conclusion that a defendant acted knowingly or recklessly.

Neither an honest belief by the Fund in the ultimate success of a business venture nor the actual or intended repayment to investors negates intent to defraud if a defendant, in carrying out a business venture, knowingly or recklessly did the acts listed above in the **first** element.  There is also no liability for poor business judgment or failed operations in a business.  It is not a defense in this case that a Defendant relied on an auditor's report.

The SEC does not need to prove that anyone, including any investor in the Fund limited partnership interests or Series I Notes, actually relied on the Fund's alleged fraud. The SEC also does not need to prove that anyone suffered or would suffer any damages or harm as a result of the Fund's alleged fraud.  You should not consider causation,

reliance, or harm in determining whether a defendant committed fraud under the securities laws.

You must find that the SEC has proved all of the elements above by a preponderance of the evidence to find that the Fund violated the securities laws. You must consider each of the defendants separately when doing this analysis. If you find that the SEC has proven each of the above elements with respect to the Fund, your verdict should be for the SEC as to the Fund. If, on the other hand, you find that the SEC has failed to prove any of the above elements with respect to the Fund, then your verdict should be for that Defendant.

## INSTRUCTIONS FOR TIME PERIOD 2:

For **Time Period 2**, the SEC alleges that: <u>the Fund</u>, <u>Mr. Duckson</u>, and <u>TFFM</u> violated Section 10(b) and Rule 10b-5 under the securities laws.

To prevail on its 10b-5 claim for Time Period 2, the SEC has the burden to prove against each defendant, and by a preponderance of the evidence, each of the same elements listed above, concerning the SEC's 10b-5 claim for Time Period 1. In deciding whether the SEC has proven its 10b-5 claim against each defendant for Time Period 2, you should follow the same instructions I previously gave you concerning the SEC's 10b-5 claim for Time Period 1.

## Claim II - AIDING AND ABETTING

In claim two, the SEC has alleged that at varying time periods, Mr. Duckson, TFFM, or both aided and abetted the Fund's misstatements or omissions in alleged

violation of Section 10(b) and Rule 10b-5 of the Exchange Act.  This is referred to as the SEC's "aiding and abetting claim."

Again, for this claim, there are differences depending on the relevant time period.

## INSTRUCTIONS FOR TIME PERIOD 1:

For the period **March 2008 through late October 2008 ("Time Period 1")**, the SEC alleges that <u>Mr. Duckson</u> aided and abetted <u>the Fund's</u> violation of these laws.

On this claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence against Mr. Duckson:

<u>**First**</u>, that **the Fund** violated Section 10(b) and Rule 10b-5 (*See* Claim I, Time Period 1.).

<u>**Second**</u>, that **Mr. Duckson** knew (but, only if you found the Fund liable on Claim I) that the Fund committed any of the acts or omissions resulting in the Fund's violation of Claim I.  A defendant may be charged with knowing that the Fund committed any of the acts or omissions resulting in a violation of Claim I if the defendant was generally aware that he or it played a role in the Fund's alleged improper conduct.  A defendant may also be charged with knowledge if he or it deliberately closed his or its eyes to what would have otherwise been obvious to avoid meaningful exposure to information that would have provided him or it with knowledge of the acts or omissions resulting in the Fund's violation of Claim I.  Negligence on the part of a defendant regarding the Fund's alleged fraudulent conduct does not constitute knowledge.  Also, a "bare inference" that a defendant must have had knowledge of the Fund's alleged

wrongdoing is insufficient to establish knowledge.  The exact level of "knowledge" a defendant must have depends on the facts and circumstances.

**Third**, that Mr. Duckson provided (but, only if you found the Fund liable on Claim I) "substantial assistance" to the Fund in committing any of the acts or omissions resulting in the Fund's violation of Claim I.  "Substantial assistance" is assistance that is a substantial factor in causing the misstatement or omission.  Mr. Duckson provided "substantial assistance" if the Fund's action was the direct or reasonably foreseeable result of his assistance.  Mr. Duckson must have known that his actions were aiding and abetting the Fund at the time those actions were taken, but a general awareness of that role in the wrongful activity may be sufficient to satisfy the requirement that Mr. Duckson knew that his or its actions were providing substantial assistance to the Fund.

You must find that the SEC has proved all of the elements above by a preponderance of the evidence to find that Mr. Duckson violated the securities laws under this provision.  If you find that the SEC has proven each of the above elements, your verdict should be for the SEC.  If, on the other hand, you find that the SEC has failed to prove any of the above elements, then your verdict should be for Mr. Duckson.

**INSTRUCTIONS FOR TIME PERIOD 2:**

For the period **late October 2008 through December 2009 ("Time Period 2")**, the SEC alleges that Mr. Duckson and/or TFFM aided and abetted the Fund's violation of these laws.

On this claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence against the relevant parties:

**First**, that **the Fund** violated Section 10(b) and Rule 10b-5. (*See* Claim I, Time Period 2.)

**Second**, that **Mr. Duckson** knew (but, only if you found the Fund liable on Claim I) **and/or TFFM** knew (but, only if you found the Fund liable on Claim I) that the Fund committed any of the acts or omissions resulting in the Fund's violation of Claim I. A defendant may be charged with knowing that the Fund made committed any of the acts or omissions resulting in a violation of Claim I if the defendant was generally aware that he or it played a role in the Fund's alleged improper conduct. A defendant may also be charged with knowledge if he or it deliberately closed his or its eyes to what would have otherwise been obvious to avoid meaningful exposure to information that would have provided him or it with knowledge of the acts or omissions resulting in the Fund's violation of Claim I. Negligence on the part of a defendant regarding the Fund's alleged fraudulent conduct does not constitute knowledge. Also, a "bare inference" that a defendant must have had knowledge of the Fund's alleged wrongdoing is insufficient to establish knowledge. The exact level of "knowledge" a defendant must have depends on the facts and circumstances.

**Third**, that Mr. Duckson and/or TFFM provided (but, only if you found the Fund liable on Claim I) "substantial assistance" to the Fund in making the materially false or misleading statement or omission. "Substantial assistance" is assistance that is a substantial factor in causing the misstatement or omission. Mr. Duckson and/or TFFM provided "substantial assistance" if the Fund's action was the direct or reasonably foreseeable result of the assistance. A defendant must have known that his actions were

aiding and abetting the Fund at the time those actions were taken, but a general awareness of that role in the wrongful activity may be sufficient to satisfy the requirement that a defendant knew that his or its actions were providing substantial assistance to the Fund.

You must find that the SEC has proved all of the elements above by a preponderance of the evidence to find that Mr. Duckson and/or TFFM violated the securities laws under this provision.  You must consider each of the defendants separately when doing this analysis.  If you find that the SEC has proven each of the above elements with respect to a given Defendant, your verdict should be for the SEC as to that Defendant.  If, on the other hand, you find that the SEC has failed to prove any of the above elements with respect to a given Defendant, then your verdict should be for that Defendant.

### Claim III – VIOLATION OF THE SECURITIES ACT UNDER SECTION 17(A)

In claim three, the SEC alleges that the defendants committed fraud in the offer or sale of the Fund limited partnership interests and Series I Preferred Notes.  This is referred to as the SEC's "17(a) claim."

Again, for this claim, there are differences depending on the relevant time period.

**INSTRUCTIONS FOR TIME PERIOD 1:**

For the period **March 2008 through late October 2008 ("Time Period 1")**, the SEC alleges that the Fund and Mr. Duckson violated this section of the securities laws in accordance with the documents relevant to this time period.

On this claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence against a defendant:

You must find that a Defendant did at least one, but not limited to one, of the following:

1.      Employed any device, scheme, or artifice to defraud; or

2.      Obtained money or property by means of any untrue statement of material fact or by omission of a material fact necessary under the circumstances to keep the statements that were made from being misleading; or

3.      Engaged in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The elements of a violation of Section 17(a) of the Securities Act are substantially the same as those under Section 10(b) of the Exchange Act, which I have already instructed you on.  There are, however, three exceptions that are relevant.

First, while the SEC must establish scienter to prove a violation of subsection (1) of Section 17(a) above, negligence is sufficient to prove a violation of subsections (2) and (3) of Section 17(a) above.  This means that even if you find that a defendant did not violate Section 10(b) or Section 17(a)(1) because they did not act with scienter, you may still find that they acted negligently in violation Section 17(a)(2) and (3).

"Negligence" is the failure to use reasonable care, which is the degree of care that a reasonably careful person would use under like circumstances.  Negligence may consist either of <u>doing</u> something that a reasonably careful person <u>would not do</u> under like circumstances, or in <u>failing</u> to do something that a reasonably careful person <u>would do</u> under like circumstances.

You should be aware that where the claims in subsections (2) and (3) above only require that the defendant acted "negligently," as a minimum, you may still find that a defendant violated the law if you find a defendant acted knowingly or recklessly.

The second difference between Section 10(b) and Section 17(a) is that, although both provisions prohibit fraud in the sale of a security, Section 17(a) also addresses fraud in the offer of a security.  This means that a defendant can violate Section 17(a) by committing fraud in offering securities irrespective of whether any subsequent purchase of securities occurs.

The third difference between Section 10(b) and Section 17(a) is that to prove a violation of subsection (2) of Section 17(a), the SEC must establish that the defendant directly or indirectly obtained money or property by means of the misstatement or omission.

You must find that the SEC has proved all of the elements above by a preponderance of the evidence to find that a defendant violated the securities laws under this provision.  You must consider each of the defendants separately when doing this analysis.  If you find that the SEC has proven each of the above elements with respect to a given Defendant, your verdict should be for the SEC as to that Defendant.  If, on the other hand, you find that the SEC has failed to prove any of the above elements with respect to a given Defendant, then your verdict should be for that Defendant.

**INSTRUCTIONS FOR TIME PERIOD 2:**

For the period **late October 2008 through December 2009 ("Time Period 2")**, the SEC alleges that each of the defendants, the Fund, Mr. Duckson, and TFFM, violated

this section of the securities laws in accordance with the documents relevant to this time period.

To prevail on its Section 17(a) claim for Time Period 2, the SEC has the burden to prove against each defendant and by a preponderance of the evidence each of the same elements listed above, concerning the SEC's 17(a) claim for Time Period 1.  In deciding whether the SEC has proven its Section 17(a) claim against each defendant for Time Period 2, you should follow the same instructions I previously gave you concerning the SEC's Section 17(a) claim for Time Period 1.

Again, upon retiring to the jury room, you will select one of your members to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in court.  A form of special verdict has been prepared for your convenience.  You will take this form to the jury room.

### [Read and explain special verdict form.]

You will note that some of the questions call for a "Yes" or "No" answer. The answer to each question, whether it calls for a "Yes" or "No" answer, must be the unanimous answer of the jury.  Your foreperson will write the unanimous answer of the jury in the space provided under each question.  After you have completed answering the questions, the foreperson will then date and sign the special verdict as so completed, and you will then return with it to the courtroom.

It is my feeling that the attitude and conduct of jurors at the outset of their deliberations is a matter of extreme importance.  It does not appear to me to be prudent for a juror upon entering the jury room to make an emphatic expression as to her opinion

on the case or to announce a determination in advance to stand for a particular verdict. When one does this in the beginning, one's sense of pride becomes involved and one might later hesitate to recede from an announced position even if it is later proven to be in error.  Remember, you are not partisans and you are not advocates in this case, but rather, you are the judges.

You have been allowed to take notes during the course of the trial and you may take those notes with you to the jury room.  You should not consider these notes binding or conclusive, whether they are your notes or those of another juror.  The notes should be used as an aid to your memory and not as a substitute for it.  You should not give greater weight to a particular bit of evidence solely because it has been reduced to writing.  I want to make clear to you that it is your recollection of the evidence that should control, and you should disregard anything contrary to your recollection which may appear from your own notes or those of another juror.

The verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after a full consideration of the evidence with your fellow jurors.  In the course of your deliberations, reexamine your own views and do not hesitate to change your mind if you find that you are mistaken. However, do not surrender your honest conviction as to the weight or effect of evidence

solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The final test of the quality of your service will be in the verdict which you as a jury return to this court.  You will make a definite contribution to the efficient administration of justice if you arrive at a just and proper verdict.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  Do not read or listen to anything touching on this case in any way.  If anyone should try to talk to you about it, bring it to the court's attention promptly.  Do not do any research—in libraries, newspapers, or otherwise—and do not investigate this case on your own.  Also, do not look up any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or me.

You will note from the oath about to be taken by the court security officer that he or she too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

27

Bear in mind also that you are never to reveal to any person–not even to the court–how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

It is proper to add the caution that nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

Now, ladies and gentlemen of the jury, this case is in your hands.  I am sure that you recognize and realize that it deserves your most serious and careful consideration.  Just look at the evidence you heard, consider all of the facts and circumstances shown by this evidence, give it your best judgment and consideration, and conscientiously determine what you think the truth of the matter is and act accordingly.